## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STACY PHILLIPS, LAWRENCE WILLIS, ELI NEGRON III, CHRISTIAN PAPANA, JASON VAN GENDEREN, MARK HOLLINGSWORTH and JEFFREY G. HEINTZ, SR. on behalf of themselves and all others similarly situated, | Case No.: |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | **CLASS ACTION** |
| FCA US LLC and STELLANTIS, N.V., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs, Stacy Phillips ("Phillips"), Lawrence Willis ("Willis"), Eli Negron III ("Negron"), Christian Papana ("Papana"), Jason Van Genderen ("Genderen"), Mark Hollingsworth ("Hollingsworth") and Jeffrey G. Heintz, Sr. ("Heintz") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by their undersigned counsel, allege against Defendants FCA US LLC "FCA US") and Stellantis, N.V. ("Stellantis" or "Defendants" or jointly, the "Company"), the following upon personal knowledge as to their own acts, and upon information and belief, based on the investigation conducted by their counsel, as to all other allegations:

## INTRODUCTION

1.      Plaintiffs bring this class action complaint ("Complaint") on behalf of themselves and all other persons who purchased a model year ("MY") 2021 Dodge Durango Hellcat ("Class Vehicles" or "Hellcat" or "Vehicles" hereinafter), which was publicly advertised by Defendants through their officers, managers and employees, to be a single year run limited edition Vehicle (e.g., the "limited edition run").  In so doing, Defendants sought to capitalize on marketing the Vehicle as a unique, once-in-a-lifetime and exclusive opportunity for large Vehicle (e.g., SUV) enthusiasts.  As a result of the Defendants' hype in this regard, Defendants were able to charge a premium sales price for the Vehicle.  In fact, Defendants' statements about a limited edition run of the Vehicle were false and misleading in that, within a year, Defendants announced that they were producing yet another model year of Hellcat vehicles, contrary to their limited edition run claims. As a result, those consumers who purchased the 2021 limited edition run of the Vehicle paid more than they otherwise would have or, alternatively, if they had known that Defendants were untruthful in making an affirmative misrepresentation about the limited edition run for one year of the Vehicle, would not have purchased the Vehicle at all.

2.      Plaintiffs assert a claim on behalf of a nationwide class of purchasers of the 2021 "limited edition run" of the Hellcat truck.  Alternatively, each Plaintiff asserts claims on behalf of a sub-class consisting of purchasers of the Hellcat Class Vehicles in the 2021 limited edition run, which were sold based upon false and deceptive advertising and marketing by Defendants and their agents, and which were purchased in California, New York, Virginia, Illinois, Texas, New Jersey and Florida respectively.

3.     Plaintiffs and Class Members purchased their 2021 Hellcat Vehicles based upon representations by Stellantis and/or FCA US (e.g., Defendants) that those vehicles would be the only year that it would be sold (e.g., limited edition) and that in order to get in on purchasing this eventual collector's item, Plaintiffs and Class Members, needed to contract to purchase one of these limited edition vehicles quickly.  The representation that it was a limited edition, single year run, was a representation that there would be only a limited number of Hellcat vehicles available for the public to purchase.  This representation turned out to be a classic bait and switch scheme on the part of Defendants.

4.     Defendants' acts, including their false and deceptive marketing and advertising, were directed at consumers, and were part of a warranty made by Defendants to Plaintiffs and Class Members that the Class Vehicles would conform to Defendants' marketing and advertising and representations, and were part of the bargain and agreement made by Defendants with Plaintiffs and Class Members.

## PARTIES

### The Plaintiffs

5.     Plaintiffs bring this action in their individual capacities and on behalf of all others similarly situated, as described herein.

### Plaintiff Stacy Phillips

6.     Plaintiff Stacy Phillips at all relevant times is and was a resident of Chesapeake, Virginia and a citizen of Illinois.  Plaintiff Phillips serves in the United States military in the State of Virginia.  As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Phillips ordered a new 2021 Dodge Durango Hellcat vehicle in

November 2020.   The Class Vehicle was delivered and purchased by Plaintiff Phillips in or about April 2021 from a Dodge dealer, Greenbriar Dodge and Southern Dodge Greenbriar, in the State of Virginia for approximately $93,500.

7.     The purchase made by Phillips was based upon the material representations by Defendants that this Hellcat Vehicle was a limited edition which was produced, and sold for one model year only, to wit 2021.  The fact that it was advertised and represented by the Defendants as a one-year model run only, made the Class Vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle.  As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited edition model was material to Plaintiffs, including Phillips, and Class Members. In fact, Plaintiff had owned a Dodge Durango SRT and traded it in for the MY 2021 Hellcat and, in doing so paid significantly more for the Hellcat vehicle.  Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Lawrence Willis**

8.     Plaintiff Lawrence Willis, at all relevant times is and was a citizen of Driftwood, Texas.  As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Willis purchased a new 2021 Dodge Durango Hellcat Vehicle in or about June, 2021, for $96,875. The Class Vehicle was delivered and purchased by Plaintiff Willis from a Dodge dealer, Bluebonnet Chrysler Dodge in the State of Texas for approximately $93,875.

9.     The purchase made by Willis was based upon the material representations by Defendants that this Hellcat vehicle was a limited edition which was produced, and sold for one model year only, to wit 2021.  The fact that it was advertised and represented by the Defendants as a one-year model run only, made the Class Vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle.  As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited-edition model was material to Plaintiffs, including Willis, and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Eli Negron III**

10.     Plaintiff Eli Negron III, at all relevant times is and was a citizen of Wappingers Falls, New York. As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Negron purchased a new 2021 Dodge Durango Hellcat vehicle in or about March, 2021, for approximately $89,000. The Class Vehicle was purchased by Plaintiff Negron from a Dodge dealer, Eastchester Chrysler Jeep Dodge in the State of New York.

11.     The purchase made by Negron was based upon the material representations by Defendants that this Hellcat Class Vehicle was a limited edition which was produced, and sold for one year only, to wit, 2021. The fact that it was advertised and represented by the Defendants as a one-year model run only, made the vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle. As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited

edition model was material to Plaintiffs, including Negron, and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Jason Van Genderen**

12.     Plaintiff, Jason Van Genderen, at all relevant times is and was a citizen of San Dimas, California.  As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Van Genderen purchased a new 2021 Dodge Durango Hellcat vehicle in or about May, 2021, for approximately $111,578. The Class Vehicle was purchased by Plaintiff Van Genderen from a Dodge dealer, Glendora Dodge, in the State of California.

13.     The purchase made by Van Genderen was based upon the material representations by Defendants that this Hellcat Class Vehicle was a limited edition which was produced, and sold for one year only, to wit, 2021.  The fact that it was advertised and represented by the Defendants as a one-year model run only, made the vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle.  As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited edition model was material to Plaintiffs, including Van Genderen, and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Christian Papana**

14.     Plaintiff, Christian Papana, at all relevant times is and was a citizen of Schiller Park, Illinois.  As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Papana purchased a new 2021 Dodge Durango Hellcat vehicle in or about March, 2021, for approximately $94,450. The Class Vehicle was purchased by Plaintiff Papana from a Dodge dealer, Marino Chrysler Jeep Dodge, located in Chicago, State of Illinois.

15.     The purchase made by Papana was based upon representations by Defendants that this Hellcat vehicle was a limited edition which was produced, and sold for one year only, to wit, 2021. The fact that it was advertised and represented by the Defendants as a one-year model run only, made the Class Vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle. As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited-edition model was material to Plaintiffs, including Plaintiff Papana, and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Mark Hollingsworth**

16.     Plaintiff Mark Hollingsworth at all relevant times is and was a resident of Atlanta Georgia and a citizen of Georgia.  As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Hollingsworth purchased a MY 2021 Dodge Durango Hellcat vehicle in February 2022 directly from a New Jersey car dealership. The

Class Vehicle was delivered and purchased by Plaintiff Hollingsworth in or about February 2022 from 21st Century Auto Group Inc., in Springfield, New Jersey for approximately $114,225.

17.     The purchase made by Hollingsworth was based upon the material representations by Defendants that this Hellcat vehicle was a limited edition which was produced, and sold for one model year only, to wit MY 2021. The fact that it was advertised and represented by the Defendants as a one-year model run only, made the Vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle. As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited edition model was material to Plaintiffs, including Hollingsworth, and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**Plaintiff Heintz**

18.     Plaintiff, Jeffrey G. Heintz, Sr., at all relevant times is and was a citizen of Trinity, Florida. As a result of Defendants' representations that the Hellcat Vehicle would be a one-year limited edition run, Plaintiff Heintz purchased a new 2021 Dodge Durango Hellcat vehicle in or about March, 2021, for approximately $101,217. The Class Vehicle was purchased by Plaintiff Heintz from a Dodge dealer, Jim Browne Chrysler-Jeep-Dodge-Ram of Dade City in Dade City, Florida.

19.     The purchase made by Heintz was based upon representations by Defendants that this Hellcat vehicle was a limited edition which was produced, and sold for one year only, to wit, 2021. The fact that it was advertised and represented by the Defendants as a one-year model run

only, made the Class Vehicle highly attractive to Plaintiff and other purchasers as a suitable investment and affected Plaintiff's decision to purchase the 2021 Hellcat Vehicle.  As there were many other competitive SUVs which Plaintiff could have purchased, the offer of a limited-edition model was material to Plaintiffs, including Plaintiff Heintz and Class Members. Plaintiff would not have paid the price he paid or would not have purchased the vehicle at all if he had known that Defendants were not in fact producing and selling the Hellcat Vehicle as only a one-year, limited edition run vehicle for 2021.

**The Defendants**

20.     Defendant FCA US LLC is a Delaware limited liability company, with its principal place of business located at 1000 Chrysler Dr., Auburn Hills, MI 48326-2766. Defendant designs, manufactures, and sells or distributes vehicles under the Chrysler, Dodge, Jeep®, Ram, FIAT and Alfa Romeo brands.  Defendant distributes the Class Vehicles to consumers through its dealer network throughout the United States.

21.     Stellantis, N.V., is a foreign corporation with its principal place of business in Hoofddorp, the Netherlands.  Stellantis was incorporated as a public limited liability company (e.g., *naamloze vennootschap*) under the laws of the Netherlands on April 1, 2014 (originally under the name Fiat Chrysler Automobiles N.V ("FCA")).   Defendant is a global automotive group engaged in designing, engineering, manufacturing, distributing and selling vehicles, automotive components and production systems worldwide. The Company, *inter alia*, designs, engineers, manufactures, distributes and sells vehicles under various brands, including: Abarth, Alfa Romeo, Chrysler, Citroën, Dodge, DS, Fiat, Fiat Professional, Jeep, Lancia, Opel, Peugeot, Ram and Vauxhall. Among others, the Defendant sells vehicles in the SUV, passenger car, truck and LCV

9

markets. Its SUV portfolio includes the Dodge Durango. Stellantis is the successor through merger

of the FCA US LLC (e.g., Chrysler) brands. It manufactures and distributes and sells vehicles in

the United States, and in and throughout the State of Delaware.[1]  The common shares of Stellantis

trades on the New York Stock Exchange under the symbol "STLA".

## JURISDICTION AND VENUE

22.     This Court may assert diversity jurisdiction of this matter under the Class Action

---

[1] Stellantis is a foreign corporation with its principal place of business in Hoofddorp, the Netherlands.  Stellantis was incorporated as a public limited liability company (e.g., *naamloze vennootschap*) under the laws of the Netherlands on April 1, 2014 (originally under the name Fiat Chrysler Automobiles N.V ("FCA")). Stellantis is a global automotive group engaged in designing, engineering, manufacturing, distributing and selling vehicles, automotive components and production systems worldwide. Stellantis designs, engineers, manufactures, distributes and sells vehicles under various brands, including: Abarth, Alfa Romeo, Chrysler, Citroën, Dodge, DS, Fiat, Fiat Professional, Jeep, Lancia, Opel, Peugeot, Ram and Vauxhall.  Among others, Stellantis sells vehicles in the SUV, passenger car, truck and LCV markets. Its SUV portfolio includes the Dodge Durango.  Stellantis is the successor thorough merger of the FCA US LLC (e.g., Chrysler) brands. It manufactures and distributes and sells vehicles in the United States, and in and throughout the State of Delaware.  In its current configuration, Stellantis is the result of the merger of FCA and Peugeot S.A. ("PSA").  In 2009, FCA US LLC, then known as Chrysler Group LLC ("FCA US"), acquired the principal operating assets of the former Chrysler LLC as part of a government-sponsored restructuring of the North American automotive industry. Between 2009 and 2014, Fiat S.p.A. expanded its initial 20 percent ownership interest to 100 percent of the ownership of FCA US and on October 12, 2014, Fiat S.p.A. completed a corporate reorganization resulting in the establishment of FCA as the parent company of the FCA Group, with its principal executive offices in the United Kingdom.  On December 17, 2019, FCA and Peugeot S.A. ("PSA") entered into a combination agreement (as amended, the "combination agreement") agreeing to merge the two groups. On January 16, 2021, PSA merged with and into FCA, with FCA as the surviving legal entity in the merger. On January 17, 2021, the combined company was renamed "Stellantis," the board of directors was appointed and the Stellantis articles of association became effective. On this date, the Stellantis management and board of directors collectively obtained the power and the ability to control the assets, liabilities and operations of both FCA and PSA.

Fairness Act, 28 U.S.C.S. § 1332(d), in that at least two of the named Plaintiffs are citizens of states different from the Defendants, including one Defendant (e.g., Stellantis) which is a foreign entity, and the aggregate amount in controversy for all Class Members exceeds $5,000,000, exclusive of interest and costs.

23.    This Court has personal jurisdiction over Defendant FCA US because it is incorporated in this district, conducts substantial business in this judicial district, and intentionally and purposefully placed the Class Vehicles into the stream of commerce within this district and throughout the United States.

24.    This Court may exercise personal jurisdiction over Defendant Stellantis pursuant to 28 U.S.C. §1391(c)(3) in that Defendant Stellantis is a non-US resident which may be sued in any judicial district in the United States.  In addition, Defendant intentionally avails itself of the markets within this district for the promotion, sale, marketing, and distribution of its vehicles, including the Class Vehicles, and the claims in this action arise from their availment of such markets in Delaware.  The exercise of jurisdiction would comport with notions of fair play and substantial justice. Further, certain of the acts complained of occurred in the State of Delaware, thus rendering jurisdiction by this Court proper.

25.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant FCA US is incorporated in this district, transacts business in this district and is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

26.    Defendant has also marketed and sold the MY 2021 Hellcat Vehicles in this District, as well as maintained sales and service through its authorized dealers in the District.

### FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

27.     In or about July, 2020, Defendants announced that they would be producing and selling for 2021 only, a one year limited production run of the Dodge Durango Hellcat Vehicle. Dodge Chief Executive Officer, Tim Kuniskis stated in or about July 2, 2020 at the launch of the 2021 model line, that the Dodge Hellcat would be a single year run for the 2021 model year and then will be gone.  In that widely watched and heavily covered promotional press launch on July 2, 2020, to introduce the Dodge 2021 line of vehicles, he touted various features of the Hellcat Vehicle, including that the Hellcat possessed 710 horsepower, was "the most powerful SUV in the world," can carry more, tow more, and go from zero to sixty in 3.5 seconds. He told consumers that Dodge was only producing and selling a single year run of the Hellcat, which would be MY 2021 Hellcat.  Kuniskis represented that "[t]he Hellcat Durango will be a single model year run. When we turn the order books over to the '22 model year, the Durango Hellcat will be gone.  So you've only have one shot [to buy one]."[2]  Official press materials created by the Company made the same or similar statements.

28.     For example, on July 12, 2020, following Kuniskis' video presentation, an article in *The Torque Report* entitled "*2021 Dodge Durango SRT Hellcat production will only last 6 months*" stated "The 2021 Dodge Durango SRT Hellcat officially debuted earlier this month with a whopping 710 horsepower under the hood, but if you want to get one you'll have to act fast. Dodge has revealed that the Durango SRT Hellcat will be a limited-run model with production

---

[2] The video presentation by Kuniskis can be found at https://youtu.be/4l30p8gO77o (*last viewed November 27, 2022).* The introduction to the Hellcat commences at approximately the 15 minute mark.

only lasting six months."  The article quoted Kuniskis from an article in *Muscle Cars & Trucks,* in which he stated that "we're only building them for six months."  The article further noted that "Since Dodge only plans to build the Durango SRT Hellcat for six months **buyers will have to expect huge dealer markups**." (emphasis added)

29.     Similarly, in a January 27, 2021 Press Release, Kuniskis was quoted as representing, "The 2021 Durango Hellcat is only a single model-year run, ensuring that it will be a very special, sought-after performance SUV for years to come."

30.     In fact, due to the perceived limited edition, exclusivity and uniqueness with which Dodge falsely primed the market, by stating it was a one year limited edition run, Plaintiffs and Class Members were compelled to pay, at minimum, the MSRP (Manufacturers Suggested Retail Price) or higher for the Hellcat vehicles, with very little if any bargaining power due that appearance of uniqueness and exclusivity with which Defendants falsely represented to the market.

31.     As a result of Defendants'' misrepresentations, by January, 2021, the initial MY 2021 Hellcat productions sold out.  An article in *The Drive,* heralded this in its title: "*The 2021 Dodge Durango SRT Hellcat is Already Sold Out*."

The article noted:

> *If you were still hoping to nab one of the one-year-only 2021 Dodge Durango SRT Hellcats, you're simply out of luck.  Dodge announced today that the entire 2,000 truck production run of the Durango SRT Hellcat is sold out*.  Dodge opened orders for the $82,490 Durango SRT Hellcat in November.  While the full production run is not spoken for, you may be able to get lucky later. Dealerships received a small number of allocations for the ultra-truck that will be sold on to customers at a later time. (emphasis added).

32.     Kuniskis was quoted in the article as stating: "Based on anticipated demand, all dealer allocations have already been reserved, but there is still some time to secure an unsold dealer order."  But the article noted that "the competition for those few dealership cars will be fierce,"

33.     An article, dated January 21, 2021, in the online newsletter *motor1.com* also noted that the 2021 Dodger Durango SRT Hellcat was sold out "And Dodge isn't making more for 2022." The article stated "If you want to place an order for the 2021 Dodge Durango SRT Hellcat, then it's too late. The automaker now announces that it is closing customer orders for the high-horsepower SUV."  In a statement the article attributes to Kuniskis, it reiterated that despite the demand "Dodge still intends to build the Durango SRT Hellcat for a single model year."

34.     In fact, Defendants' representations had the desired effect.  Class Members justified the cost based on the claimed exclusivity, potential collectability and uniqueness as represented by Defendants.

35.     Upon information and belief, Defendants produced and sold approximately three thousand (3,000) MY 2021 Hellcat Vehicles through their dealerships.

36.     Despite its representations that the Hellcat was a single year run vehicle for 2021 and that if the consumer wanted one they only "[had]one shot," Defendants shocked the purchasers of the Hellcat MY 2021 limited run, by announcing in or about mid-August 2022 that, although the Hellcat was touted by the Company as a one year limited run, Defendants would be producing and selling the vehicle for MY 2023.

37.     For example, an article dated August 17, 2022 in *The Drive*, announced "*2021 Dodge Durango Hellcat Owners are Super Mad Dodge Is Bringing It Back for 2023*."

38.     Another article, dated August 18, 2022, in *CarBuzz.com*, also discussed the fact that Dodge was releasing another production run of the Hellcat in 2023 and in doing so, reneged on its promise to make it a single year run with "one shot" to purchase.

39.     An article by *Motor Authority*, dated August 22, 2022, entitled "*Interview:  Dodge CEO Tim Kuniskis on the Performance Present and Electric Future*," included an interview with Kuniskis, in which he, ironically, rationalized the decision to renege on the representation and proceed with a 2023 production run, based on the exceedingly strong response to the original announcement of a limited 2021 MY run and further stating "Let's be honest, it's a publicly traded company.  I have an obligation to the shareholders to make as much money as I can.  So how do I look at the shareholders and go 'Yeah I have 3k people willing to spend 85k for an SUV,' and I told them sorry, too bad?"

40.     With that philosophy of abandoning the loyal purchasers in favor of corporate profit, a further article in *The Drive,* dated September 10, 2022, heralded that the "Dodge Durango SRT Hellcat is Returning."  The article noted that "originally the Dodge Durango SRT Hellcat was to be a limited production run that ended its run in June 2021.   But the automaker recently made a shocking revelation of bringing back this mad SUV for another run as a 2023 MY."  It further noted that "this decision has pissed many 2021 Durango SRT Hellcat owners, as they feel that this move will drastically pull down the value of their machines."  The article further noted "The 2023 Durango SRT Hellcat will have the same specs [as the 2021 MY]."

41.     Thus, on or about August 15, 2022, Defendants, in contravention of the representations regarding the single-year production run, announced that it was bringing back the Hellcat Vehicle for sale in 2023, thus reneging on its affirmative representations to Plaintiffs and

the Class Members.  The representation that the 2021 MY Hellcat Vehicle was a one-year limited production run was material to consumers and, in particular, to purchasers of the 2021 Hellcat Vehicles.

42.     As alleged herein, Plaintiffs and Class Members were sold the MY 2021 Hellcat Vehicles based upon the representation that the Vehicles were the product of a one-year run thereby justifying the premium price paid based upon Defendants' intentional promotion of a sense of urgency and exclusivity by the consuming public.

43.     In fact, had each Plaintiff and Class Members known of the bait and switch that was to occur, they would not have purchased the MY 2021 Hellcat Vehicle for the price paid or, alternatively, would not have purchased the Vehicle altogether.

44.      Defendants' announcement regarding the sale of the Hellcat Vehicle for 2023 was met with shock and anger on the part of purchasers of the Vehicle as a result of the Company's betrayal in instituting a bait and switch with regard to the so-called one-year limited run.

45.     Ironically, given the backlash among loyal Hellcat purchasers of the 2021 MY, the Company offered the excuse that the model sold so well during the 2021 "exclusive" run that it decided to re-offer the Vehicle despite the fact that this meant going back on their public pledge to those purchasers of the Vehicle.  Defendants were well aware that sale in a subsequent year, particularly one so close to the "one-year" limited edition promise it made, would be looked upon as a fraud perpetrated on the purchased of the MY 2021 Hellcat Vehicles, but went forward with the subsequent year(s) sale regardless, in the interest of capitalizing on the success and in the interests of making yet further sales.

## CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of a class consisting of:  All United States citizens who purchased a new MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers prior to the date Defendants publicly revealed in August 2022 that they were producing and would sell another year run of the Hellcat vehicles in 2023. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.[3]

47.     In the alternative, Plaintiffs assert that they respectively are bringing this action on behalf of the following Sub-classes:

**A New York Subclass: By Plaintiff Eli Negron**

> All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from
>
> one of the Defendants' authorized dealers located in the State of New York, prior
>
> to the date Defendants publicly revealed they were producing and selling another

---

[3] Excluded from the Class and each Sub-class set forth herein are: any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased a Class Vehicle for resale (*i.e.*, as a dealer) from Defendants, or any entity related to or affiliated with Defendants, or any person who has an action for damages for personal injury or death or property damage against Defendants arising from a Class Vehicle.

year run of the Hellcat Vehicles in 2023.   The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

**A California Subclass: By Plaintiff Van Genderen:**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of California, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat Vehicles in 2023.   The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

**An Illinois Subclass:  By Plaintiff Papana**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of Illinois, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat vehicles in 2023.   The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole

18

proprietorships, associations, firm, trust and other business and governmental entities.

**A Texas Subclass: By Plaintiff Lawrence Willis**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of Texas, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat Vehicles in 2023. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

**A Virginia Subclass: By Plaintiff Phillips**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of Virginia, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat Vehicles in 2023. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

**A New Jersey Subclass: By Plaintiff Hollingsworth**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of New Jersey, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat Vehicles in 2023. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

**A Florida Subclass: By Plaintiff Heintz**

All persons who purchased a MY 2021 Dodge Durango Hellcat Vehicle from one of the Defendants' authorized dealers located in the State of Florida, prior to the date Defendants publicly revealed they were producing and selling another year run of the Hellcat Vehicles in 2023. The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

## NUMEROSITY

48.     The members of the Class are so numerous that joinder of all members is impracticable. The Class is made up of thousands of members. The precise number of Class Members can only be ascertained through discovery, which includes Defendants' sales, service,

maintenance and complaint records, and Defendants' registration records.  The disposition of Class Members' claims through a class action will benefit the parties and the Court.

## COMMON QUESTIONS OF LAW AND FACT

49.     There is a well-defined community of interests in the questions of law and fact affecting the Plaintiffs and Class Members.

50.     The questions of law and fact common to the Class predominate over questions which may affect individual members, and include the following:

(a) Whether Defendants, directly, and/or indirectly deceived Class Members and/or disseminated false advertising and uniform marketing materials relating to the Class Vehicles, which Defendants knew or should have known was false and deceptive;

(b) Whether Defendants, directly, and/or indirectly made material representations which constituted an unfair or unconscionable business practice;

(c)  Whether Defendants engaged in a "bait and switch" with respect to the sale of the MY 2021 Hellcat Vehicles sold to Plaintiffs and the Class Members;

(d)   Whether Defendants, directly or through their agents, violated New York's General Business Law § 349;

(e)   Whether Defendants, directly or through their agents, violated New York's General Business Law § 350;

(f)   Whether Defendants, directly or through their agents, violated Virginia's Consumer Protection Act (Va. Code Ann. §§59.1-196, *et seq*.);

(g) Whether Defendants, directly or through their agents, violated Illinois' Consumer Fraud and Deceptive Trade Practice Act (815 I.L.C.S. 505/1, *et seq.*);

(h) Whether Defendants, directly or through their agents, violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

(i) Whether Defendants, directly or through their agents, violated California's Consumer Legal Remedies Act (Cal. Civ. Code §1750, *et seq.*);

(j) Whether Defendants, directly or through their agents, violated Texas' Deceptive Trade Practices and Consumer Protection Act (Tex. Bus. & Com. Code, §§14.41, *et seq.*);

(k) Whether Defendants, directly or through their agents, violated Florida's Deceptive Trade Practices and Consumer Protection Act (Tex. Bus. & Com. Code, §§14.41, *et seq.*);

(l) Whether Defendants were unjustly enriched;

(m) Whether the Defendants breached their express warranties that Class Vehicles would be limited to a one-year production run only;

(n) Whether the Defendants breached their implied warranties in that Class would be limited to a one-year production run only, thereby stating or implying it was an exclusive purchase and would be considered a collector's item;

(o) Whether the Defendants intentionally or negligently misrepresented material facts concerning the fact that the 2021 Hellcat would be a limited one-year production run only Vehicle;

(p) Whether Class Members were damaged, and if so, the appropriate amount thereof.

## **TYPICALITY**

51.     Plaintiffs' claims and defenses are typical of the claims and defenses of the Class because Defendants' material misrepresentation and false affirmative statement of fact caused Plaintiffs and Class Members to purchase and/or leased new MY 2021 Hellcat Vehicles in the bait and switch engineered by Defendants. Plaintiffs, like all Class Members, purchased their Class Vehicles, based upon Defendants' misrepresentations and deceptive advertising indicating that Class Vehicles were a single-year production run limited edition Hellcat Vehicle, thereby causing Plaintiffs and Class Members damage when they purchased their Class Vehicles. Each Plaintiff is also typical of the respective Sub-class that he/she seeks to represent.

## **ADEQUACY OF REPRESENTATION**

52.     Plaintiffs will fairly and adequately assert and protect the interests of the Class as:

       (a)     Plaintiffs have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and

       (b)     Plaintiffs have no conflicts of interest that will interfere with the maintenance of this class action.

## **PREDOMINANCE**

53.     With respect to the Class or, in the alternative, the Sub-classes, questions common to the Class predominate over those which only affect individual owners. This case involves one year vehicle, the 2021 MY Hellcat Vehicle purchased based upon the same uniform material deceptive and false advertising.  Liability will primarily be predicated upon the jury's evaluation of Defendants' affirmative misstatements and/or advertisements regarding the single-year

production run limited edition Vehicle, the materiality of the feature to the reasonable consumer, and the reduced value of a vehicle based upon the misrepresentation.

## **SUPERIORITY**

54.     A class action provides a fair and efficient method for the adjudication of controversy for the following reasons:

55.     The common questions of law and fact set forth above predominate over any questions affecting only individual Class Members;

56.     The Class is so numerous as to make joinder impracticable. The Class, however, is not so numerous as to create manageability problems. There are no unusual legal or factual issues which would create manageability problems;

57.     Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

58.     The claims of the individual Class Members are small in relation to the expenses of litigation, making a class action the only procedure in which Class Members can, as a practical matter, recover; and

59.     A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

## **COUNT I**

### **VIOLATION OF NEW YORK GENERAL BUSINESS LAW §349:**
### **CONSUMER PROTECTION LAW**
### **(Brought by Plaintiff Negron on behalf of the New York Sub-class)**

60.     Plaintiff Negron hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

61.     Plaintiff Negron asserts this cause of action on behalf of the New York Sub-class.

62.     Defendants' practices, acts, policies and courses of conduct, including their affirmative misstatements which were material to the reasonable consumer acting reasonably under the circumstances, that Defendants were selling only a one year limited edition run of the Hellcat Vehicles and that the MY 2021 Hellcat would be the only year production run of the Vehicle were deceptive and misleading. Said misrepresentations were aimed at consumers, were consumer oriented, and intended to cause, and did cause, Plaintiff Negron and members of the New York Sub-class to purchase and/or lease Class Vehicles.

63.     Defendants manufactured and, through their agents, sold the Class Vehicles by misrepresenting materials facts and by claiming the Class Vehicles would be a one-year limited edition production run.

64.     Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)     Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class Members at the time of purchase that the Hellcat Vehicles sold in the United States would be a limited edition, one year run, limited to the MY 2021 Hellcat when in fact Defendants subsequently announced they were going to produce and, in fact, are producing for sale MY 2023 Hellcats.

(b)     Defendants, either directly or through agents, failed to disclose to the Class Members and to consumers who purchased MY 2021 Hellcat Vehicles, that they were not a single year limited edition run despite the fact that Defendants, either directly or through agents, were aware that the 2021 Hellcat Vehicles would not be a limited edition single year run that was limited to the MY 2021 Hellcat or, alternatively, concealed from Class Members that, as a hidden

caveat to those representations, they were secretly reserving the right to renege on the promise to produce and sell MY 2021 Hellcat Vehicles as a single year, limited edition run.

(c)     Defendants' actions, representations, advertisements and/or omissions caused Plaintiff and the Sub-class Members to expend additional sums of money at their dealerships and elsewhere to purchase Class Vehicles believing that they were obtaining a vehicle which was, as represented, a limited edition, single year run and thus a vehicle with greater uniqueness, exclusivity and resale value, thereby causing them damage.

(d)     Defendants' marketing, advertising and promotion of the Class Vehicles, either directly or through their agents, was deceptive.

65.     Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, either directly or through their agents, by the use of false or deceptive statements and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of Class Vehicles.

66.     In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants, either directly or through their agents, misrepresented and/or knowingly and intentionally omitted material facts.

67.     Plaintiffs and members of the public were deceived by Defendants' affirmative misrepresentations and failures to properly disclose the material fact that Class Vehicles was not a limited edition, single year run.

68.     Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Vehicle for the reasons stated

above.  Said deceptive acts and practices aforementioned are material.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer protection statute, General Business Law § 349.

69.    Plaintiff and the Subclass have been damaged in that they would not have purchased the MY 2021 Hellcat Vehicle or, alternatively, would not have purchased it at the premium price paid, had they known that Defendants were not, in fact, producing and selling the Hellcat 2021 Vehicle as only a single year limited edition run vehicle for 2021 as represented.

70.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Negron and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.  In addition, or alternatively, Plaintiff and the Sub-Class seek to recover the diminution of value of their Class Vehicles as a result of the Defendants' violation of GBL § 350.

71.    Moreover, the Class Vehicles, not being an exclusive one year run as touted by Defendants, are of lesser value than if they had included this feature and Plaintiff Negron and Sub-class members have lost the benefit of their bargain by Defendants' failure to adhere to their promise with regard to the Vehicles.

72.    Plaintiff Negron and the Sub-class members also seek restitution and/or disgorgement of revenues that Defendants received as a result of selling Class Vehicles to Plaintiff and Sub-class members. In addition, Plaintiff seeks punitive damages, statutory damages and reasonable attorneys' fees.

<u>**COUNT II**</u>

**VIOLATION OF GENERAL BUSINESS LAW §350: FALSE ADVERTISING**
**(Brought by Plaintiff Negron on behalf of the New York Subclass)**

73.     Plaintiff Negron hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

74.     Plaintiff Negron asserts this cause of action on behalf of himself and the New York Sub-class.

75.     Defendants' practices, acts, policies and courses of conduct, knowingly advertised in a manner that misled consumers into believing that the Vehicles which they were purchasing were going to be a one year limited edition run of the Hellcat Vehicles and that the MY 2021 Hellcat would be the only year production run of the Vehicle were deceptive and misleading. Said misrepresentations were aimed at consumers, were consumer oriented, and intended to cause, and did cause, Plaintiff Negron and members of the New York Sub-class to purchase Class Vehicles.

76.     Defendants manufactured and, through their agents, sold the Class Vehicles by misrepresenting materials facts and by claiming the Class Vehicles, specifically, Class Members and members of the New York Sub-class, were misled into the false belief that the 2021 Hellcat Vehicles they purchased would be a one-year limited edition production run and thus a vehicle with unique qualities, exclusivity and greater resale value, thereby causing them damage.

77.     Such advertisements and marketing practices by Defendants were materially misleading and likely to mislead a reasonable consumer purchasing the vehicle.  The sale and distribution in New York of the Class Vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law § 350.

78.     Plaintiff and the Subclass have been damaged in that they would not have purchased the MY 2021 Hellcat Vehicle or, alternatively, would not have purchased it at the premium price paid, had they known that Defendants were not, in fact, producing and selling the Hellcat 2021 Vehicle as only a single year limited edition run vehicle for 2021 as represented.

79.     As a direct and proximate result of the misleading advertisements, promotion and marketing materials, and/or the concealment of the true and accurate facts in the deceptive materials disseminated, Plaintiff Negron and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.  In addition, or alternatively, Plaintiff and the Sub-Class seek to recover the diminution of value of their Class Vehicles as a result of the Defendants' violation of GBL § 350.

80.     In addition, Plaintiff seeks punitive damages, statutory damages and reasonable attorneys' fees for himself and the Sub-Class.

## COUNT III

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 505/1 (on behalf of Plaintiff Papana and the Illinois subclass)

81.     Plaintiff Papana hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

82.     Plaintiff Papana asserts this cause of action on behalf of himself and the Illinois Sub-class.

83.     Papana and members of the Illinois subclass are persons within the context of the Illinois Consumer Fraud and Deceptive Trade Practices Act (hereinafter "ICFA"), 815 ILCS 505/1.

29

84. Papana and members of the Illinois subclass purchased Class Vehicles for personal, family or household use.

85. Defendants are persons within the context of the ICFA, 815 ILCS 505/1 and are engaged in consumer transactions in Illinois within the context of ICFA, 815 ILCS 505/1.

86. Defendants are and were at all relevant times engaged in unfair, abusive and deceptive acts and practices within the context of ICFA, 815 ILCS 505/1 as described in this complaint.

87. Defendants committed deceptive and unconscionable acts in the course of consumer transactions within the context of ICFA, 815 ILCS 505/1 as described in this complaint.

88. Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning practices, acts, policies and courses of conduct, by advertising and promoting in a manner that misled consumers into believing that the MY 2021 Hellcat Vehicles which they were purchasing were going to be a one year limited edition run of the Hellcat Vehicles and that the MY 2021 Hellcat would be the only year production run of the Vehicle. Said misrepresentations were aimed at consumers, were made with intent that Papana and members of the Illinois Subclass would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

89. Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances including Papana and members of the Illinois subclass who were caused to expend sums of money in purchasing their Class Vehicles which they would not have done at the premium price paid or, alternatively, would not have purchased the MY 2021

Hellcat Vehicles at all if not for the material misrepresentations.  Any reasonable consumer under the circumstances would have relied on the representations of the Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, or lack thereof.

90.     Alternatively, Defendants violated the ICFA by deceptively omitting to reveal they were, as a hidden caveat, reserving the right to renege on their promise to produce and sell the MY 2021 Hellcat Vehicles as a single year limited edition run.

91.     Defendants acted unconscionably in ignoring and/or nakedly discarding their well-documented promise to the purchasers of the MY 2021 Hellcat Vehicles and, Class Members, by worshipping instead at the alter of corporate profits.

92.     As a proximate and direct result of the Defendants' conduct including their unfair and deceptive trade practices, Plaintiff Panana and members of the Illinois Subclass purchased the MY 2021 Hellcat Vehicles and sustained an ascertainable loss and financial harm.

93.     The conduct of the Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners who (were unable to have reasonably avoided the injury due to no fault of their own) and who paid a premium for the Vehicles as a result of Defendants' representation.

94.     Plaintiff Papana and members of the Illinois Subclass demand judgment against the Defendants including multiple damages, interest, restitution, costs and attorneys' fees.

## COUNT IV

**VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER
PROTECTION ACT,
Texas Bus. & Com. Code §§ 17.41,** *et seq.*
**(on behalf of Plaintiff Willis and the Texas Subclass)**

95.     The Texas Plaintiff, Willis, individually and on behalf of the Texas Subclass, hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

96.     This claim is set forth herein merely as a placeholder and not as a current claim in order to provide notice to Defendants that a claim under the Texas consumer protection act will be asserted in the event the remedies requested in a pre-suit notice served upon Defendants are not provided to Plaintiff and the Texas subclass within sixty (60) days of such notice being provided to Defendants.

97.     Defendants are a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

98.     Plaintiffs and the Texas Subclass members are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

99.     Defendants advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

100.     Defendants engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including: representing that goods or services have sponsorship, approval, characteristics, qualities, benefits or quantities that they do not have; representing that goods or services are of a particular standard or quality, if they are of another; and advertising goods or services with intent not to sell them as advertised.

101.    Defendants intended to mislead Plaintiff and Texas Subclass members and induce them to rely on their misrepresentations and omissions.

102.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

103.    Had Defendants disclosed to Plaintiff and Subclass members that was not going to produce a single year run of Hellcat Vehicles with the MY 2021 Hellcat and concealed material information regarding the hidden caveat, that they would reserve the right to continue producing further year Hellcat Vehicles in the interest of corporate profits and was otherwise engaged in deceptive, common business practices, Plaintiff and the Texas Subclass would not have purchased their MY 2021 Hellcat Vehicles for the premium price they did or, alternatively, would not have purchased the MY 2021 Hellcat Vehicles at all.

104.    Plaintiff and the Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

105.    Defendants engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3).  Defendants engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

106.    Consumers, including Plaintiffs and Texas Subclass members, lacked knowledge about the above business practices, omissions, and misrepresentations because this information was known exclusively by Defendants.

107.    Defendants intended to, and did, take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness

33

that would result. The unfairness resulting from Defendants' conduct is glaringly noticeable, flagrant, complete, and unmitigated. Defendants acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff and Texas Subclass members' rights.

108.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Class Vehicles and diminution of value.

109.    Defendants' violations present a continuing risk to Plaintiffs and Texas Subclass members as well as to the general public because Defendants can, at any time, in the interest of corporate profits, produce and sell yet another year of Hellcat Vehicles.

110.    Defendants received notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 concerning their wrongful conduct as alleged herein by Plaintiff and Texas Subclass members and, in fact, on or about January 25, 2023, Plaintiff sent to Defendants, on behalf of himself and the Texas Subclass, a pre-suit notice.  In the event sixty (60) days have elapsed since service thereof and no remedy requested therein is provided to Plaintiff and the Texas Subclass members, Plaintiff will seek to amend the Complaint to assert claims for compensatory and monetary damages under the Texas Bus. & Com. Code herein.

111.    Defendants' actions constitute uniform business practices across the Class, so that all actions

112.    Defendants took with respect to Class Members satisfy the "commonality" prong of Fed. R. Civ. P. 23. No individualized issues concerning Defendants' business practices predominate so as to render class treatment inappropriate.

113.    Plaintiff and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages, damages for mental anguish, treble damages for each act committed intentionally or knowingly, court costs, reasonably and necessary attorneys' fees, injunctive relief, and any other relief which the court deems proper.

## COUNT V

**VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT,**
**Va. Code Ann. §§ 59.1-196, *et seq.***
**(on behalf of Plaintiff Phillips and the Virginia Subclass)**

114.    The Virginia Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Virginia Subclass, hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

115.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

116.    Defendants are "person(s)" as defined by Va. Code Ann. § 59.1-198.

117.    Defendants are a "supplier," as defined by Va. Code Ann. § 59.1-198.

118.    Defendants engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.

Defendants advertised, offered, or sold goods or services used primarily for personal, family or household purposes.

119.    Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, described herein.

120.    Defendants intended to mislead Plaintiff and Virginia Subclass members and induce them to rely on its misrepresentations and omissions.

121.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

122.    Had Defendants disclosed to Plaintiff and Subclass members that they were not going to produce a single year run of Hellcat Vehicles with the MY 2021 Hellcat and concealed material information regarding the hidden caveat, that they would reserve the right to continue producing further year Hellcat Vehicles in the interest of corporate profits and were otherwise engaged in deceptive, common business practices, Plaintiff and the Virginia Subclass would not have purchased their MY 2021 Hellcat Vehicles for the premium price they did or, alternatively, would not have purchased the MY 2021 Hellcat Vehicles at all. Plaintiff and the Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

123.    Defendants had a duty to disclose these facts due to the circumstances of this case due to their exclusive knowledge of the fact that the MY 2021 Hellcat was not a single year, limited edition run vehicle and that Defendants would produce further year Hellcat Vehicles or at minimum that they believed they were reserving the right to renege on their promise.

124.    The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A): misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that goods or services are of or possess a particular standard, quality or grade, or model; and advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised.

125.    Defendants acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff and Virginia Subclass members' rights.

126.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the MY 2021 Hellcat Vehicles, and diminution of value.

127.    Defendants' violations present a continuing risk to Plaintiffs and Virginia Subclass members as well as to the general public.

128.    Plaintiff and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## COUNT VI

**NEW JERSEY CONSUMER FRAUD ACT**
**(Brought by Plaintiff Hollingsworth on behalf of the National Class or, alternatively, on behalf of the New Jersey Sub-class)**

129.   Plaintiff Hollingsworth hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

130.   Plaintiff Hollingsworth asserts this cause of action on behalf of the New Jersey Sub-class.

131.   Defendants' practices, acts, policies and courses of conduct, including their affirmative misstatements which were material to the reasonable consumer acting reasonably under the circumstances, that Defendants were selling only a one year limited edition run of the Hellcat Vehicles and that the MY 2021 Hellcat would be the only year production run of the Vehicle were deceptive and misleading. Said misrepresentations were aimed at consumers, were consumer oriented, and intended to cause, and did cause, Plaintiff Hollingsworth and members of the New Jersey Sub-class to purchase Class Vehicles.

132.   Defendants manufactured and, through their agents, sold the Class Vehicles by misrepresenting materials facts and by claiming the Class Vehicles would be a one year limited edition production run.

133.   Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)      Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase that the Hellcat Vehicles sold in the United States would be a limited edition, one year run, limited to the

MY 2021 Hellcat when in fact Defendants subsequently announced they were going to produce and, in fact, are producing for sale MY 2023 Hellcats.

      (b)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased MY 2021 Hellcat Vehicles, that it was not a single year limited edition run even though despite the fact that Defendants, either directly or through agents, were aware that the 2021 Hellcat Vehicles would not be a limited edition single year run that was limited to the MY 2021 Hellcat or, alternatively concealed from Class Members the material information, that as a hidden caveat to those representations it was secretly reserving the right to renege on the promise to produce and sell MY 2021 Hellcat Vehicles as a single year, limited edition run.

      (c)    Defendants' actions, representations, advertisements and/or omissions caused Plaintiff and the Sub-class members to expend additional sums of money at their dealerships and elsewhere to purchase Class Vehicles believing that they were obtaining a vehicle which was, as represented, a limited edition, single year run and thus a vehicle with greater uniqueness, exclusivity and resale value, thereby causing them damage.

      (d)    Defendants' marketing, advertising and promotion of the Class Vehicles, either directly or through their agents, was deceptive.

134.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, either directly or through their agents, by the use of false or deceptive statements and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of Class Vehicles.

135.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants, either directly or through their agents, misrepresented and/or knowingly and intentionally omitted material facts.

136.    Plaintiffs and members of the public were deceived by Defendants' affirmative misrepresentations and failures to properly disclose the material fact that Class Vehicles was not a limited edition, single year run.

137.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle for the reasons stated above. Said deceptive acts and practices aforementioned are material.

138.    Plaintiff and the Subclass have been damaged in that they would not have purchased the MY 2021 Hellcat Vehicle or, alternatively, would not have purchased it at the premium price paid, had they known that Defendants were not, in fact, producing and selling the Hellcat 2021 Vehicle as only a single year limited edition run vehicle for 2021 as represented.  In the case of Plaintiff Hollingsworth, he purchased the vehicle in New Jersey in a manner which would protect consumers, including Plaintiff Hollingsworth, from unconscionable and/or misrepresentations and/or false statements and/or material omissions in connection with their New Jersey consumer related purchases.

139.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Hollingsworth and the Sub-class members have suffered an ascertainable loss in the form of paying a premium price (e.g., at the MSRP or greater) and suffering diminution of value and as a result have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent

permitted by law, including class action rules, in an amount to be proven at trial.  In addition, or alternatively, Plaintiff and the Sub-Class seek to recover the diminution of value of their Class Vehicles as a result of the Defendants' violation of the NJCFA.

140.    Moreover, the Class Vehicles, not being an exclusive one year run as touted by Defendants, are of lesser value than if they had included this feature and Plaintiff Hollingsworth and Sub-class members have lost the benefit of their bargain by Defendants' failure to adhere to their promise with regard to the Vehicles.

141.    In addition, Defendants' actions and conduct in making material representations that the Vehicle was to be a single year, limited edition run with "one shot" to purchase such Vehicles and then, after selling out by January 2021, reneging on the promise for the sake of corporate profits, and then announcing they would produce and sell at least one further year Hellcat vehicle, constituting outrageous and unconscionable conduct in violation of the NJCFA.

142.    In addition, Plaintiff and the Sub-class members were caused ascertainable losses based upon representations made by Defendants, including that the MY 2021 Hellcat was a single year limited edition run. Notwithstanding its representations, Defendants was not in fact going to produce a single year run and, alternatively, Defendants concealed from Plaintiff and the Class Members that, as a hidden caveat to those representations, it was reserving the right to renege on the promise to produce and sell the 2021 Hellcat Vehicles as a single year limited edition run.

143.    Plaintiff Hollingsworth and the Sub-class members also seek restitution and/or disgorgement of revenues that Defendants received as a result of selling Class Vehicles to Plaintiff

and Sub-class members. In addition, Plaintiff seeks punitive damages, statutory damages and reasonable attorneys' fees.

## COUNT VII

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code 17200, *et seq*.)**
**(Brought by Plaintiff Genderen on behalf of the California Sub-class)**

144.     Plaintiff Genderen hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

145.     Plaintiff Genderen asserts this cause of action on behalf of himself, and the California Sub-class.

146.     California's Unfair Competition Law ("UCL") prohibits and makes actionable any unlawful, unfair, or deceptive business practice.  Defendants' actions, as alleged herein, in selling and marketing the Class Vehicles through deceptive marketing that misrepresented that they were producing a single year run of Hellcat Vehicles with the MY 2021 Hellcat and omitted material information regarding the intent to (or the fact that they were reserving the right to continue) producing further year Hellcat Vehicles in the interest of corporate profits and was otherwise engaged in deceptive, common business practices, Plaintiff and the Nationwide or California Subclass would not have purchased their 2021 Hellcat Vehicles for the premium price they did or, alternatively, would not have purchased the MY 2021 Hellcat Vehicles at all.  Plaintiff and the Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions constitute an unlawful and deceptive business practice and a violation of the UCL.

147.     As set forth in prior Counts, and as alleged previously in this Complaint, Defendants' actions, whether taken directly or indirectly, constitute an unlawful business

practice in which Defendants breached their express warranty in violation of Section 2313 of California's Commercial Code.

148.    Specifically, the statements, set forth above, were deceptive in that Defendants were not in fact going to produce a single year run or, alternatively, concealed that it secretly had a hidden caveat to those representations, that they were reserving the right to renege on the promise to produce and sell the 2021 Hellcat Vehicles as a single year limited edition run. However, because of the deceptive statements, Class and Sub-class members were misled into believing that the Class Vehicles which they had purchased were, in fact, a single year limited edition run Vehicle, as represented to them by Defendants.

149.    To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Defendants' representations alleged herein were not as so represented.

150.    The conduct was deceptive because it was intended to and did materially mislead and deceive Plaintiff Genderen and National and/or California Sub-class members.  Had Defendants not misrepresented to Plaintiff Genderen that the Class Vehicles were a single year limited edition run for only the MY 2021 Hellcat, he would not have purchased his vehicle or would have insisted upon a significantly lower purchase price.

151.    As a direct, proximate, and foreseeable result of Defendants' unlawful and/or deceptive business practice, Plaintiff Genderen and putative National Class or California Sub-class members have sustained an ascertainable loss and actual damages, in that they received Class Vehicles of lesser value and quality then they intended to purchase and that they were led to believe they were purchasing and/or leasing.

152.     Plaintiff Genderen and the National Class and/or California Sub-class members are entitled to and do seek an order of restitution and disgorgement requiring Defendants to restore to them the additional benefits and monies that Defendants received in connection with the sale of the Class Vehicles at a greater sales price than that which would have been paid for Class Vehicles had Plaintiff Genderen and National and California Sub-class members known that the Vehicles were not going to be sold only in a one year limited edition run for MY 2021 and no other. Plaintiff Genderen and the National Class and/or California Sub-class members are also entitled to and do seek an injunction enjoining Defendants and the entities and brands affiliated with Defendants from producing or selling any further MY Hellcat editions, as well as penalties for any such subsequent violations, and for such additional relief authorized under the law.

153.     As a direct, proximate and foreseeable result of Defendants' unlawful, unfair and deceptive business practices, Genderen and California Sub-class members seek equitable relief in the form of restitution and/or diminution of value. The relief requested herein is not duplicative of the damages that will be sought under the CLRA claim asserted herein.  Because of the undisclosed facts at the time of purchase and the material misrepresentations Plaintiff Genderen and California Subclass members sustained a loss and/or diminution in the value of their vehicles.

## COUNT VIII
**(Violation of California's Consumers Legal Remedies Act ("CLRA"))**
**(Cal. Civ. Code 1750, *et seq*.)**
**(By Plaintiff Genderen on behalf of the California Sub-class)**

154.     Plaintiff Genderen hereby incorporates by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

155.    Plaintiff Genderen asserts this cause of action on behalf of himself and the California Sub-class.

156.    Defendants directly, and through their wholly owned agents, violated the following provisions of Cal. Civ. Code §1750 *et. seq*.:

(a)    Cal. Civ. Code §1770(a)(5): by representing that their goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

(b)    Cal. Civ. Code §1770(a)(7): by representing that their goods or services are of a particular standard, quality, or grade, if they are of another;

(c)    Cal. Civ. Code §1770(a)(9):  by advertising goods and services with the intent not to sell them as advertised;

157.    Defendants, directly, and through their wholly owned agents, undertook the previously alleged acts and practices in transactions intended to result, or which did result, in the sale of the MY 2021 Hellcat Vehicles to customers for personal, family, or household use. Plaintiff Genderen and the National or California Sub-class members relied upon Defendants' representations regarding that Defendants were selling only a one  year limited edition run of the Hellcat Vehicles and that the MY 2021 Hellcat would be the only year production run of the Vehicle. Said misrepresentations were aimed at consumers, were consumer oriented, and intended to cause, and did cause, Plaintiff Genderen and members of the California Sub-class to purchase Class Vehicles.

158.    Defendants manufactured and, through their agents, sold the Class Vehicles by misrepresenting materials facts and by claiming the Class Vehicles would be a one-year limited edition production run.

159.    Defendants' practices, acts, policies and course of conduct are actionable in that:

(a)    Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase that the Hellcat Vehicles sold in the United States would be a limited edition, one year run limited to the MY 2021 Hellcat when in fact Defendants subsequently announced they were going to produce and, in fact, are producing for sale MY 2023 Hellcats.

(b)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased MY 2021 Hellcat Vehicles, that they were not a single year limited edition run even though despite the fact that Defendants, either directly or through agents, were aware that the MY 2021 Hellcat Vehicles would not be a limited edition single year run that was limited to the MY 2021 Hellcat;

(c)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased MY 2021 Hellcat Vehicles, that they were secretly reserving the right to disregard its representations and to, in fact, renege on their representations that the MY 2021 Hellcat Vehicles were a single year limited edition run and that they could and would engage in production and sale of subsequent year;

(d)    Defendants' actions, representations, advertisements and/or omissions caused Plaintiff and the Sub-class members to expend additional sums of money at their dealerships and elsewhere to purchase Class Vehicles believing that they were obtaining a Class Vehicle which

was, as represented, a limited edition, single year run and thus a vehicle with greater uniqueness, exclusivity and resale value, thereby causing them damage.

(e)     Defendants' marketing, advertising and promotion of the Class Vehicles, either directly or through their agents, was deceptive.

160.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, either directly or through their agents, by the use of false or deceptive statements and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of Class Vehicles.

161.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendants, either directly or through their agents, misrepresented and/or knowingly and intentionally omitted material facts.

162.    Plaintiffs and members of the public were deceived by Defendants' affirmative misrepresentations and failures to properly disclose the material fact that Class Vehicles was not a limited edition, single year run.

163.    Such acts by Defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle for the reasons stated above.  Said deceptive acts and practices aforementioned were material to Plaintiffs and Class members as reasonable consumers acting reasonably.

164.    Plaintiff and the Subclass have been damaged in that they would not have purchased the MY 2021 Hellcat Vehicle or, alternatively, would not have purchased it at the

premium price paid, had they known that Defendants were not, in fact, producing and selling the Hellcat 2021 Vehicle as only a single year limited edition run vehicle for 2021 as represented.

165.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Genderen and the Sub-class members have been injured as alleged herein, and are entitled to recover actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial. In addition, or alternatively, Plaintiff and the Sub-Class seek to recover the diminution of value of their Class Vehicles as a result of the Defendants' violation of the CLRA.

166.    Moreover, the Class Vehicles, not being an exclusive one year run as touted by Defendants, are of lesser value than if they had included this feature and Plaintiff Genderen and Sub-class members have lost the benefit of their bargain by DefendantsDefendants' failure to adhere to their promise with regard to the Vehicles.

167.    Defendants, directly, and through their agents, have therefore violated the Consumers Legal Remedies Act, and Plaintiff Genderen prays for compensatory equitable and injunctive relief authorized by that Act, and for such additional relief as is set forth below. Plaintiff Genderen currently still owns his Class Vehicle.

168.    Pursuant to Cal. Civ. Code §1782, in conjunction with the filing of this action, Plaintiff Genderen's counsel notified Defendants by separate letter of the particular violations of the CLRA and demanded that Defendants provide the compensatory relief and/or agree to the requested injunctive remedy for the violations described herein.  In the event Defendants have failed to do so, and after thirty (30) days have passed, Plaintiff Genderen will seek to amend this

Complaint to ass a claim for compensatory and monetary damages to which Plaintiff and the California Subclass are entitled.

**COUNT IX**

**(Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq. (By Plaintiff Heintz on behalf of the Nationwide Class and/or the Florida Subclass)**

169.    Plaintiff Heintz hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

170.    Plaintiff Heintz asserts this cause of action on behalf of himself, and the Florida Sub-class.

171.    Plaintiffs and class members who purchased the Class Vehicles are "consumers" under the FDUTPA.

172.    Defendants' practices, acts, policies and course of conduct violated FDUTPA in that:

(a)    Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase that the Hellcat Vehicles sold in the United States would be a limited edition, one year run limited to the MY 2021 Hellcat when in fact Defendants subsequently announced they were going to produce and, in fact, are producing for sale MY 2023 Hellcats.

(b)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased MY 2021 Hellcat Vehicles, that it was not a single year limited edition run even though despite the fact that Defendants, either directly or through

49

agents, were aware that the MY 2021 Hellcat Vehicles would not be a limited edition single year run that was limited to the MY 2021 Hellcat;

(c)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased MY 2021 Hellcat Vehicles, that they were secretly reserving the right to disregard its representations and to, in fact, renege on it representations that the MY 2021 Hellcat Vehicles were a single year limited edition run and that they could and would engage in production and sale of subsequent year;

(d)    Defendants' actions, representations, advertisements and/or omissions caused Plaintiff and the Sub-class members to expend additional sums of money at their dealerships and elsewhere to purchase Class Vehicles believing that they were obtaining a Class Vehicle which was, as represented, a limited edition, single year run and thus a vehicle with greater uniqueness, exclusivity and resale value, thereby causing them damage.

(e)    Defendants' marketing, advertising and promotion of the Class Vehicles, either directly or through their agents, was deceptive.

173.    Each and all of the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes an unconscionable commercial practice in that Defendants have, either directly or through their agents, by the use of false or deceptive statements and/or knowing intentional material omissions, circulated false and deceptive advertising and misrepresented and/or omitted the true nature of Class Vehicles.

174.    Defendants manufacturers' and retailers' acts and material omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

175.    Plaintiffs and putative class members relied upon Defendants manufacturers' and retailers' deceptive acts and material omissions in connection with their purchase of the subject product.

176.    To date, Defendants manufacturers and retailers have and continue to knowingly accept the benefits of their deception and improper conduct in the form of profits from the increased sale of the subject product.

177.    As a proximate result of the FDUTPA violations described herein, Plaintiffs and class members: (a) purchased and consumed the subject product when they would not otherwise have purchased and consumed; (b) suffered economic losses consisting of the purchase price of the subject product or, alternatively, the price premium they paid for the Class Vehicles; and (c) suffered and will suffer the loss of diminished value caused by Defendants' acts and conduct.

178.    As a direct and proximate result of these deceptive commercial practices, Plaintiffs and the members of the putative Classes have been injured and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

179.    Plaintiffs and putative class members seek actual damages, restitution of purchase costs, and civil penalties permitted by Fla. Stat. §§ 501.2075.

180.    Plaintiffs and putative class members also seek appropriate equitable relief, including an order requiring Defendants manufacturers and retailers to adequately disclose and/or remediate the false statements concerning the one year sale of the Hellcat vehicles. Plaintiffs and class members also seek attorneys' fees and any other just and proper relief available under FDUTPA.

## COUNT X

### BREACH OF EXPRESS WARRANTY
**(Brought by Plaintiffs on behalf of the National Class, or, alternatively, on behalf of the State Sub-class)**

181.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

182.    Plaintiffs assert this cause of action on behalf of themselves and the National Class. Alternatively, this cause of action is asserted by Plaintiffs on behalf of the respective breach of warranty statutes governing the claim of breach of warranty under the laws of California, New York, New Jersey, Texas, Virginia, Illinois and Florida (including, California Cal. Com. Code §2313 and New York Uniform Commercial Code, § 2–313, among others).

183.    Defendants directly and/or indirectly through their wholly owned brand, provided uniform affirmative misrepresentations about the Class Vehicles in misleading advertising and statements, including the misleading claim that:

(a)    Defendants, either directly or through agents, actively, knowingly and deceptively misrepresented to Plaintiff and the Sub-class members at the time of purchase or lease that the Hellcat Vehicles sold or leased in the United States would be a limited edition, one year run limited to the MY 2021 Hellcat when in fact Defendants subsequently announced they were going to produce and, in fact, are producing for sale MY 2023 Hellcats.

(b)    Defendants, either directly or through agents, failed to disclose to the Class members and to consumers who purchased or leased MY 2021 Hellcat Vehicles, that it was not a single year limited edition run even though despite the fact that Defendants, either directly

or through agents, were aware that the 2021 Hellcat Vehicles would not be a limited edition single year run that was limited to the MY 2021 Hellcat;

(c)     Defendants' actions, representations, advertisements and/or omissions caused Plaintiff and the Sub-class members to expend additional sums of money at their dealerships and elsewhere to purchase Class Vehicles believing that they were obtaining a vehicle which was, as represented, a limited edition, single year run and thus a vehicle with greater uniqueness, exclusivity and resale value, thereby causing them damage.

184.    This uniform affirmative representation was made part of the basis of the bargain and thereby created an express warranty that the Class Vehicles conformed to the representation pursuant to the UCC express warranty provisions adopted by each state.

185.    Plaintiffs and each Class Member in the Nationwide Class (or alternatively, California, New York, New Jersey, Virginia, Texas, Illinois and Florida Sub-class members) thereby relied upon, or is presumed to have relied upon, such warranty.

186.    To the extent Defendants claim there was any disclaimer, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Defendants' representations alleged herein were false, untrue and not as represented.

187.    Despite the uniform affirmative misrepresentation, in or about August 2022, Defendants breached its express warranty to produce a single year production run, stating that it would sell another year of the Hellcat for MY 2023 in the interests of creating corporate profits over the warranty made to Class Members, who were loyal purchasers of the MY 2021 Hellcat Vehicles.

188.    As a result of the foregoing, Plaintiffs and the National Class, or alternatively, the Sub-class members, are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendants acted in a manner contrary to public purpose.

## COUNT XI
### (Unjust Enrichment)
### (By Plaintiffs on behalf of the National Class, or multi-state subclasses)

189.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding and subsequent paragraphs of this Complaint as though set forth fully herein.

190.    Starting in or about mid-August 2020, Defendants began touting the MY 2021 Hellcat Vehicles as a single year, limited edition run in which Plaintiffs and Class Members had "one shot" to purchase and only that one shot.  Defendants continued on this tack throughout the sales period for the MY 2021 Hellcat until all Vehicles had been sold out, which, because of the sales pitch as to limited edition and exclusivity, occurred very soon in the sales cycle for 2021 vehicles.  By January 2021, Defendants announced that the MY 2021 Hellcat Vehicles were "sold out."

191.    Defendants placed the Class Vehicles into the stream of commerce nationally, and in California, New York, New Jersey, Virginia, Texas, Illinois and Florida, with the knowledge that these vehicles would be purchased or leased by consumers for the MSRP or higher as a result of Defendants' material representation as to the Class Vehicles being a single year, limited edition run.

192.    Defendants received the funds for the sale of the Class Vehicles which were sold by Defendants based on Defendants' representations as to the single year limited edition

production run, and Defendants sold the Class Vehicles with the intention of receiving and keeping such funds and revenues from the sale of the Class Vehicles.

193.    Defendants received an economic benefit at the expense of the Class and Subclass members, who received Class Vehicles of lesser value than as represented at the time of sale and/or lease and under circumstances which made it unconscionable for Defendants to retain such funds.

194.    In these circumstances, principles of equity and good conscience make it unjust for Defendants, or their agents, to retain the benefits conferred on it by the Class and Subclass members and should be required to compensate Plaintiffs and Class and Sub-class members for these benefits.

## **COUNT XII**

### **NEGLIGENT MISREPRESENTATION**
### **(on behalf of all Plaintiffs and Subclass Members)**

195.    Plaintiffs and proposed class representatives together with Class Members in California, New York, New Jersey, Illinois, Virginia, Texas and Florida incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

196.    The Defendants negligently and recklessly misrepresented to the Plaintiffs and Class Members the characteristics of Class Vehicles with respect to the value, qualities, exclusivity.  The Defendants negligently and recklessly made material misrepresentations about the Class Vehicles set forth hereinabove.

197.    Plaintiffs and Class Members reasonably and justifiably relied upon representations made by Defendants including that the MY 2021 Hellcat was a single year limited edition run. Notwithstanding its representations, Defendants were not in fact going to

produce a single year run or, alternatively, Defendants concealed from Plaintiff and the Class

Members that, as a hidden caveat to those representations, they were reserving the right to renege

on the promise to produce and sell the 2021 Hellcat Vehicles as a single year limited edition run.

However, because of the deceptive statements, Class and Subclass members were misled into

believing that the Class Vehicles which they had purchased were, in fact, a single year limited

edition run Vehicle, as negligently or recklessly represented to them by Defendants.

198.   Defendants' specific and ambiguous partial disclosures and statements created a

special relationship between Defendants on one hand, and Plaintiffs and members of the Class on

the other, particularly in light of Defendants' exclusive and superior knowledge concerning

Plaintiffs representation and interactions.

199.   As a proximate and direct result of the Plaintiffs and Class Members' reasonable

reliance on the Defendants' negligent and reckless misrepresentations, the Plaintiffs and Class

Members sustained monetary damages as described in this complaint.

200.   Wherefore, the Plaintiffs and Class Members demand judgment against Defendants

including compensatory damages, punitive damages, interest, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray

for a judgment against Defendants as follows:

A.   For an order certifying the Class and/or Sub-classes, appointing Plaintiffs as

representatives of the Class or their respective Sub-classes, and appointing the law firms

representing Plaintiffs as counsel for the Class and Sub-classes;

B.   For compensatory damages sustained by Plaintiffs and Class and/or Sub-class

members;

C.    For an injunction preventing Defendants from continuing to produce and sell further MY Hellcat Vehicles;

E.    For compensatory damages and/or the restitution or refund of all funds acquired by Defendants from Plaintiffs and Class or Sub-class members as a result of Defendants' unlawful, unfair, fraudulent, deceptive and unconscionable practices described above under the Consumer Protection Statutes of the various states asserted herein, including actual and/or statutory and/or punitive damages and/or trebled damages to the extent permitted by law, including class action rules, in an amount to be proven at trial;

F.    Trebling of damages suffered by the Class and/or appropriate Sub-class, or other punitive damages;

G.    Payment of costs and expenses of suit herein incurred;

H.    Both pre-and post-judgment interest on any amounts awarded;

I.    Payment of reasonable attorneys' fees and expert fees; and

J.    Such other and further relief as the Court may deem proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  March 8, 2023

DELEEUW LAW LLC

*/s/ P. Bradford deLeeuw*_____
By:  P. Bradford deLeeuw (Del. Bar # 3569)
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

57

**OF COUNSEL:**

**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Melissa R. Emert, Esq.
16 Squadron Boulevard, Suite 106
New City, New York 10956
Tel: (845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com

Nicholas A. Migliaccio (P29077)
Jason S. Rathod (P18424)
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
(202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

***Attorneys for Plaintiffs***