# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| STACY PHIILLIPS, LAWRENCE WILLIS, ELI NEGRON III, CHRISTIAN PAPANA, JASON VAN GENDEREN, MARK HOLLINGSWORTH and JEFFREY G. HEINTZ, SR. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FCA US LLC and STELLANTIS, N.V.,<br><br>Defendants. | Case No.: 1:23-cv-00251 |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT FCA'S MOTION TO DISMISS PLAINTIFFS' <u>CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION…………………………………………….......................1

II.     BACKGROUND FACTS.....................................................................................1

III.    STANDARD OF REVIEW……………………………….......................4

IV.     ARUGMENT..........................................................................................................4

      A.      PLAINTIFFS PROPERLY PLEAD CONSUMER FRAUD
      CLAIMS……………………………….....................................................4

          i.      Plaintiffs identify actionable misrepresentations…………........................4

          ii.     FCA's statements that the Hellcat would only be produced during
          the 2021 MY constitute fraudulent misrepresentations ............................6

          iii.    Plaintiffs' Consumer Fraud Claims and negligent misrepresentation claim
          satisfy the particularity requirement of Rule 9(b), where applicable……..8

          iv.     Plaintiffs have adequately alleged causation and reliance………………11

              i.      Plaintiffs sufficiently allege causation…………………………...11

              ii.     Plaintiffs sufficiently allege reliance……………………………12

          v.      Pre-sale knowledge, where required, is adequately pled………………...13

          vi.     Plaintiffs adequately pled that they suffered damages…………………...13

      B.      PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIMS ARE NOT
      PRECLUDED BY FCA'S WRITTEN WARRANTY .........................................14

      C.      PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE SUFFICIENTLY
      PLED.........................................................................................................................16

          i.      Plaintiffs' unjust enrichment claim is pled with sufficient specificity…..16

          ii.     Plaintiffs' unjust enrichment claim is not precluded by the warranty…...17

          iii.    Plaintiffs' unjust enrichment claim is not duplicative of other claims…..18

      D.      PLAINTIFFS HAVE STANDING TO ASSERT THE NATIONWIDE CLASS
      ALLEGATIONS…………………………………………………………18

          i.      Plaintiffs have standing to bring claims under the laws of all fifty states..18

ii.      FCA's motion to strike lacks merit……………………………………19

V.     CONCLUSION.................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                      Page(s)

*Adams v. Carnival Corp.*,
   482 F.Supp.3d 1256 (S.D. Fla. Aug. 31, 2020) ........................................ 9

*Adams v. Nissan North America, Inc.*,
   395 F. Supp. 3d 838 (S.D. Tex. 2018) ..................................................... 16

*Baker v. Elam*,
   883 F.Supp.2d 576 ................................................................................ 10

*Bly-Magee v California*,
   236 F.3d 1014 (9th Cir. 2001) ............................................................... 10

*Boddison v. Gen. Motors LLC*,
   2021 WL 2435388 (M.D. Fla. Mar. 19, 2021) ....................................... 16

*Cesare v. Champion Petfoods USA Inc.*,
   429 F.Supp.3d 55 (W.D. Pa. 2019) ........................................................ 17

*Click v. General Motors LLC*,
   2020 WL 3118577 (S.D. Tex. Aug. 18, 2022) ....................................... 10

*Colgate v. JUUL Labs, Inc.*,
   402 F. Supp. 3d 728 (N.D. Cal. 2019) ................................................... 15

*Connick v. Suzuki Motor Co.*,
   174 Ill.2d 482 (1996) ............................................................................ 11

*Dash v. Seagate Tech. (US) Holdings, Inc.*,
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) ..................................................... 11

*Davis v. D.R. Horton, Inc.*,
   2020 WL 6042091 (D. Del., Oct. 13, 2020) ........................................... 19

*Davis v. Powertel, Inc.*,
   776 So.2d 971 (Fla. Dist. Ct. App. 2000) ............................................... 5

*Dimare v. MetLife Ins. Co.*,
   369 Fed.Appx. 324 (3rd. Cir. 2010) ...................................................... 10

*Drake v. Hyundai Rotem USA, Corp.*,
   2013 WL 4551228 (E.D. Pa. Aug. 28, 2013) ......................................... 19

*Durkee v. Ford Motor Co.*,
   2014 WL 4352184 (N.D. Cal. Sep. 2, 2014) ........................................................... 12

*Durso v. Samsung Elecs. Am., Inc.*,
   2013 WL 5947005 (D.N.J. Nov. 6, 2013) ............................................................... 20

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014) ..................................................... 14, 15, 17, 18

*Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC*,
   945 F. Supp. 2d 543 (D.N.J. 2013) ..................................................................... 11

*Figueroa v. Point Park Univ.*,
   553 F. Supp. 3d 259 (W.D. Pa. 2021) ................................................................. 18

*Glaser v. Enzo Biochem, Inc.*,
   126 Fed.Appx. 593 (4th Cir. 2005)(dismissal of fraud claims reversed and remanded ............. 6

*Goldemberg v. Johnson & Johnson Consumer Co.*,
   8 F.Supp.3d 467 (S.D.N.Y. 2014) ....................................................................... 12

*Hill v. Hoover Co.*,
   899 F. Supp. 2d 1259 (N.D. Fla. 2012) ............................................................... 11

*In re Scotts EZ Seed Litig.*,
   2013 WL 2303727 (S.D.N.Y. 2013) ...................................................................... 5

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. Oct. 11, 2012) .................................................... 12

*In re Tobacco II Cases*,
   46 Cal.4th 298 ............................................................................................... 12

*Intl. Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*,
   192 N.J. 372 (2007) .......................................................................................... 4

*Johnson v. Organo Gold Int'l.*,
   2016 U.S. Dist. LEXIS 63361 (D. Del. May 13, 2016) .......................................... 20

*JTH Tax, Inc. v. Whitaker*,
   2007 WL 2821830 (E.D. Va. Sep. 27, 2007) ....................................................... 11

*Kahn v. FCA US LLC*,
   2019 WL 3955386 (C.D. Cal Aug. 2, 2019) ........................................................ 17

*Kantor v. Hiko Energy, LLC*,
   100 F.Supp.3d 421 (E.D. Pa. 2015) ................................................................... 17

*Kavon v. BMW of N. Am., LLC*,
    605 F. Supp. 3d 622 (D.N.J. 2022) ........................................................................ 12

*Koch v. Acher, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ............................................................................................... 4

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ............................................................................................. 13

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
    640 F.3d 72 (3d Cir. 2011) ..................................................................................... 19

*Lerner v. Fleet Bank, N.A*,
    459 F.3d 273 (2d Cir.2006) ...................................................................................... 8

*Loduca v. WellPet LLC*,
    549 F.Supp.3d 391 (E.D. Pa. 2021) ....................................................................... 17

*Lorentzen v. The Kroger Co.*,
    2021 WL 1573719 (C.D. Cal. April 2, 2021) ....................................................... 8, 9

*Madrigal v. Hint, Inc.*,
    2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ....................................................... 18

*MAN Roland, Inc. v. Quantum Color Corp.*,
    57 F. Supp. 2d 568 (N.D. Ill. 1999) ....................................................................... 16

*Marshall v. Verde Energy USA, Inc.*,
    2020 WL 5905072 (D.N.J. Oct. 5, 2020) ............................................................... 13

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ..................................................................................... 5

*Maugain v. FCA US LLC*,
    2023 U.S. Dist. LEXIS 20172, at *12-13 (D. Del. Feb. 7, 2023) ........................... 19

*Maxwell v. Unilever United States, Inc.*,
    2014 U.S. Dist. LEXIS 121462, at *13 (N.D. Cal. Aug. 28, 2014) ................... 11, 12

*Mladenov v. Wegmans Food Mkts., Inc.*,
    124 F. Supp. 3d 360 (D.N.J. 2015) ........................................................................ 14

*Moore v. Apple, Inc.*,
    73 F. Supp. 3d 1191 (N.D. Cal. 2014) .................................................................... 12

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ............................................................................... 12

*Morrison v. YTB Int'l, Inc.*,
  641 F. Supp. 2d 768 (S.D. Ill. 2009) .................................................................... 11

*Neale v. Volvo Cars of N. Am., LLC*,
  794 F.3d 353 (3d Cir. 2015) ............................................................................... 19

*Partin v. NuWave*, LLC,
  603 F. Supp. 3d 280 (E.D. Va. 2022) .................................................................. 16

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................................ 18

*Poulin v. Ford Motor Co.*,
  147 Vt. 120 (1986)............................................................................................... 14

*PPG Indus. Inc., v. Generon IGS, Inc*,
  760 F.Supp.2d 520 (W.D. Pa. 2011) ................................................................... 17

*Premier Health Assocs., LLC v. Med. Tech. Sols.*,
  2018 U.S. Dist. LEXIS 144274 (D.N.J. Aug. 24, 2018) ..................................... 11

*Presidio  Enterprises Inc. v. Warner Bros. Distributing Corp.*,
  784 F.2d 674 (5th Cir. 1986) ........................................................................... 6, 7

*Rasmussen v. Apple Inc.*,
  27 F.Supp.3d 1027 (N.D. Cal. Mar. 14, 2014) ............................................... 4, 10

*Simpson v. Champion Petfoods USA, Inc.*,
  397 F. Supp. 3d 952 (E.D. Ky. 2019) .................................................................. 12

*Smajlaj, et al. v. Campbell Soup Co.*,
  782 F. Supp. 2d 84 (D.N.J. 2011)........................................................................ 12

*Smith v. Prime Cable of Chicago*,
  267 Ill.App.3d 843 (1995) ..................................................................................... 4

*Snider v. Hostess Brands, LLC*,
  2021 WL 311871 (W.D. Va. Jan. 15, 2021)........................................................... 4

*Sobel v. Eggleston*,
  2013 WL 1344712 (S.D.N.Y. Mar. 28, 2013)........................................................ 7

*Tate v. Colony House Builders, Inc.*,
  257 Va. 78 (Jan. 8, 1999)....................................................................................... 6

*Thom v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ............................................................................... 20

*Thorne v. Pep Boys Manny Moe & Jack Inc.*
   980 F.3d 879 (3d Cir. 2020) .................................................................. 13

*Toca v. Tutco LLC,*
   430 F. Supp.3d 1313 (S.D. Fla. 2020) ................................................. 17

*In re Valsartan Losartan & Irbesartan Prods. Liab. Litig.,*
   2021 U.S. Dist. LEXIS 256073 (D.N.J. Oct. 7, 2021) ......................... 18

*Viking Yacht Co. v. Composites One Ltd. Liab. Co.,*
   496 F. Supp. 2d 462 (D.N.J. 2007)...................................................... 15

*Zieger v. Advance Am.,*
   2014 WL 7388365 (D. Del. Dec. 29, 2014) ......................................... 20

**Rules**

Fed R. Civ. P. 8 .................................................................................. 4, 10

Fed R. Civ. P. 9(b) ........................................................................ 4, 8, 9, 10

Fed R. Civ. P. 23 ............................................................................... 19, 20

**Statutes**

815 ILCS 505/1 ............................................................................................ 4
815 ILCS § 510/2(9), (12) ........................................................................... 4
Cal. Bus. & Prof. Code § 17200 ................................................................. 4
Cal. Civ. Code § 1750 .................................................................................. 4
Fla. Stat. § 501.204(1) .................................................................................. 4
Fla. Stat. §§ 501.201 .................................................................................... 4
N.J. Stat. Ann. § 56:8-2............................................................................ 4, 13
New York Gen. Bus. Law ("NYGBL") §§ 349, 350.............................. 4, 10
Tex. Bus. & Com. Code § 1.201 ............................................................... 15
Tex. Bus. & Com. Code § 17.50(a)(1)(B) ................................................... 4
Tex. Bus. & Com. Code §§ 17.41 ............................................................... 4
Va. Code Ann. §§ 59.1-196 ........................................................................ 4
Va. Code § 59.1-204(A).............................................................................. 4

## I. INTRODUCTION

This action ("Action") is brought on behalf of a putative class ("Class" or "Class Members") of purchasers of the "limited edition run" model year ("MY") 2021 Dodge Durango Hellcat sport utility vehicle  ("Vehicle" or "Hellcat"), which was sold based upon false and deceptive advertising and marketing by FCA US LLC ("FCA") and its agents.  FCA claimed that the Hellcat would only be produced as a limited edition, single year production run for the 2021 MY.  Contrary to FCA's claims that the Vehicle was a unique, once-in-a-lifetime opportunity for large SUV enthusiasts, FCA continued producing the Hellcat for the 2023 MY.  As a result, consumers who purchased the 2021 "limited edition run" of the Hellcat paid more than they otherwise would have, or, alternatively, if they had known that FCA was untruthful in making affirmative representations about the limited edition run for one year of the Vehicle, they would not have purchased the Vehicle at all.

FCA's factual and legal analysis in its motion to dismiss ("Mot.") is fatally defective because it conveniently ignores the myriad allegations that Plaintiffs purchased their Vehicles based upon FCA's unambiguous representations of fact—that the 2021 Hellcat was a special, once in a lifetime opportunity to own a large SUV featuring FCA's premier engine, boasting unrivaled horsepower, acceleration and towing capacity.

## II. BACKGROUND FACTS

In July 2020, FCA announced that it would be producing and selling for 2021 only, a one-year, limited production run of the Dodge Durango Hellcat.  Compl. ¶ 27.  During a widely watched and heavily covered promotional video produced for the launch of Dodge's 2021 model year lineup, Dodge CEO Tim Kuniskis ("Kuniskis") stated on July 2, 2020 that the Hellcat would be a single-year run for the 2021 MY and then will be gone.  *Id.*  Kuniskis touted the features of the Hellcat, including that it possessed 710 horsepower, was "the most powerful SUV in the world," can carry more, tow more, and go from zero to sixty in 3.5 seconds.  *Id.*  Kuniskis

represented that "[t]he Hellcat Durango will be a single model year run.  When we turn the order books over to the '22 model year, the Durango Hellcat will be gone.  So you've only got one shot [to buy one]."  *Id.* [1] As Kuniskis made these statements in the promotional video, large graphics appeared on-screen behind Kuniskis to emphasize his message of the 2021 Hellcat's exclusivity and uniqueness, and displayed an image of the 2021 Hellcat with the headlines: "*A SINGLE YEAR RUN*" and "*DON'T WAIT*".  *Id.*  Official press materials created by FCA made the same or similar statements.  *Id.* ¶ 28-29.  Due to the 2021 Hellcat's promoted limited edition exclusivity and uniqueness, Plaintiffs and Class Members were compelled to pay, at minimum, the Manufacturer's Suggested Retail Price ("MSRP"), or higher, for the Hellcat, with very little bargaining power.  *Id.* ¶ 30.  Plaintiffs paid between $89,000 and $111,578 for their Vehicles.  *Id.* ¶¶ 6-19.  Class Members justified the cost based on exclusivity, potential collectability, and uniqueness as represented by FCA.  *Id.* ¶¶ 6-19, 34.  As a result of FCA's representations regarding the 2021 Hellcat's limited production run, by January 2021, the 2021 Hellcat sold out.  *Id.* ¶ 31-33.

Despite FCA's representations that the Hellcat was a single-year production run for MY 2021, FCA shocked the purchasers of the 2021 Hellcat by announcing in or about mid-August 2022 that FCA had been producing and would be selling the Vehicle for MY 2023.  *Id.* ¶¶ 36, 37 (identifying an article dated August 17, 2022 in *The Drive* headlined "*2021 Dodge Durango Hellcat Owners are Super Mad Dodge Is Bringing It Back for 2023*"), 38, 40, 41.  During an August 22, 2022 interview, Kuniskis tacitly acknowledged that FCA had sold Plaintiffs and Class Members out by extending the Hellcat production run into MY 2023 in order to maximize its profits, stating, "Let's be honest, it's a publicly traded company.  I have an obligation to the shareholders to make as much money as I can.  So how do I look at the shareholders and go 'Yeah

---

[1] FCAs' promotional video containing Kuniskis' statements can currently be viewed at: https://moparinsiders.com/in-case-you-missed-it-2021-dodge-performance-lineup-debut/ (*last viewed* July 18, 2023).

I have 3k people willing to spend 85k for an SUV,' and I told them sorry, too bad?'" *Id.* 39.  Given the backlash among 2021 Hellcat purchasers, FCA offered the excuse that the model sold so well during the 2021 "exclusive" run that it decided to re-offer the Vehicle despite the fact that this meant going back on their public pledge to those purchasers of the Vehicle.  *Id.* ¶ 45.  However, given that the ramp up for production is at least a year or more, planning for production of the 2023 vehicle would have commenced much earlier than the announcemenrt and while FCA was selling the "one year limited" 2021 model.

Had each Plaintiff and Class Member known of the bait and switch concerning the purported single-year limited production run for the Vehicle, they would not have purchased the MY 2021 Hellcat for the premium price they paid, or alternatively, would not have purchased the Vehicle at all.  *Id.* ¶¶ 6-19, 43.  FCA also made a uniform material omission:  had it informed the Class that FCA reserved the right to reverse course and produce further year Vehicles, they would not have paid the price they did for the Vehicles.

Plaintiffs assert claims on behalf of a nationwide class of purchasers of the 2021 "limited edition run" Hellcat that were sold based upon false and deceptive advertising and marketing by FCA and their agents, which claimed that the 2021 Hellcat would be a limited edition, one-year production run with limited availability, and that in order to get in on purchasing this eventual collector's item, Plaintiffs and Class Members needed to contract to purchase one of these limited edition Vehicles quickly.  Compl. ¶ 2, 3.[2]  FCA's false and deceptive marketing and advertising, which turned out to be a classic bait and switch scheme, was directed at consumers, and was part of the warranty offered by FCA that the Vehicles would be limited to the 2021 MY, and were part

---

[2] Alternatively, each Plaintiff asserts claims on behalf of sub-classes consisting of 2021 Hellcat purchasers in: California (Van Genderen)(Compl. ¶¶ 12-13); New York (Negron III)(*Id.* ¶¶ 10-11);, Virginia (Phelps)(*Id.* ¶¶ 6-7); Illinois (Papana)(*Id.* ¶¶ 14-15); Texas (Willis) (*Id.* ¶¶ 8-9); New Jersey (Hollingsworth)(*Id.* ¶¶ 16-17);  and, Florida (Heintz)(*Id.* ¶¶ 18-19).  *Id.* ¶ 2.

of the bargain and agreement made by FCA with Plaintiffs and Class Members.  *Id.* ¶¶ 3-4.

## III. STANDARD OF REVIEW[3]

## IV. ARGUMENT

### A.  PLAINTIFFS PROPERLY PLEAD CONSUMER FRAUD CLAIMS

#### i.   Plaintiffs identify actionable misrepresentations

Plaintiffs bring claims under the consumer fraud statues of the states in which they
purchased their respective Class Vehicles.[4]  The Consumer Fraud Statutes generally proscribe:
"unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or
practices in the conduct of any trade or commerce" (Fla. Stat. § 501.204(1)): "advertis[ing] goods
or services with intent not to sell them as advertised" or "creates a likelihood of confusion or
misunderstanding" (815 ILCS § 510/2(9), (12)); and, "[u]sing any other deception, fraud, false
pretense, false promise, or misrepresentation in connection with a consumer transaction."  Va.
Code § 59.1-204(A); *see generally,* The Consumer Fraud Statutes.  Only California, Texas and
Virginia require pleading reliance on the part of plaintiff.[5]    The elements common among the

---

[3] The Standard of Review for Fed. R. Civ. P. 8 and 9(b) pleading are well known and need not be
addressed here.

[4] *See,* New York Gen. Bus. Law ("NYGBL") §§ 349, 350; Illinois Consumer Fraud and
Deceptive Trade Practice Act (815 ILCS 505/1, *et seq.*); Texas Deceptive Trade Practices—
Consumer Protection Act  ("TDTPA") (Tex. Bus. & Com. Code §§ 17.41, *et seq.*); Virginia
Consumer Protection Act ("VCPA") (Va. Code Ann. §§ 59.1-196, *et seq.*); New Jersey
Consumer Fraud Act (N.J. Stat. Ann. § 56:8-2 *et seq.*) ; California Unfair Competition Law
("UCL") and California Consumer Legal Remedies Act ("CLRA") (Cal. Bus. & Prof. Code §
17200, *et seq.* and Cal. Civ. Code § 1750, *et seq.*); and, the Florida Deceptive and Unfair Trade
Practices Act ("FDUTRA") (Fla. Stat. §§ 501.201, *et seq.*) (collectively, the "Consumer Fraud
Statutes"); *see* Compl. ¶¶ 60-180 (Counts I-IX) (collectively, the "Consumer Fraud Claims").

[5] *See, Koch v. Acher, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (2012); *Smith v. Prime Cable of
Chicago,* 267 Ill.App.3d 843, 856-57 (1995); Tex. Bus. & Com. Code § 17.50(a)(1)(B)
(requiring reliance); Va Code § 59.1-204(A); *Snider v. Hostess Brands, LLC,* 2021 WL 311871,
at *2 (W.D. Va. Jan. 15, 2021)(reliance required); *Intl. Union of Operating Eng'rs Local No. 68
Welfare Fund v. Merck & Co.,* 192 N.J. 372, 389 (2007); *Rasmussen v. Apple Inc.,* 27 F.Supp.3d
1027, 1044-45 (N.D. Cal. Mar. 14, 2014)(alleged statements from national advertising and

Consumer Fraud Statues to state a claim are: (1) FCA's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and, (3) plaintiffs have been injured as a result. *See, e.g., In re Scotts EZ Seed Litig.,* 2013 WL 2303727, at \*10 (S.D.N.Y. 2013)(internal quotation marks omitted). The deceptive acts referenced in the Consumer Fraud Statute are analyzed under the "reasonable consumer" standard. *See, e.g., Maurizio v. Goldsmith,* 230 F.3d 518, 522 (2d Cir. 2000); *Powertel, Inc.,* 776 So.2d, at 974 (objective standard); *see* Compl. ¶¶ 62, 68, 77, 89, 102, 121, 131, 137, 163.

Despite the "reasonable consumer" standard, FCA makes the highly nuanced argument that it never represented that the Vehicle would not be manufactured in another MY. Mot. 6. But in the July 2020 article "*2021 Dodge Durango SRT Hellcat production will only last 6 months*"[6], Kuniskis repeatedly represents that the 2021 Hellcat will be a unique offering. However, Kuniskis further comments that "we're only building them [Durango SRT Hellcats] for six months" and that he expects that less than 2,000 Hellcats will be built, depending upon "customer demand and how much we can build in that six-month period." Mot. Exhibit A at 2. Kuniskis further unambiguously states "it's a one year cycle [for Durango Hellcat]." *Id.* at 3 (brackets in original); Compl. ¶ 28.

Importantly, in none of Kuniskis' public comments alleged in the Complaint, or the marketing pieces referenced therein, does he condition his statements about the Hellcat's single-year production run to suggest that robust consumer demand, or that FCA's ability to overcome COVID restrictions or compliance with changing evaporative standards, might influence FCA to increase the number of Hellcat's produced, or that FCA would consider bringing the Hellcat back for subsequent MY production under the right set of circumstances. To the contrary, Kuniskis'

---

promotional videos sufficiently demonstrated reliance under Rule 9 for CLRA and UCL); *Davis v. Powertel, Inc.,* 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000)
[6] *See* Compl. ¶ 28 and Mot. Exhibit A.

message to the market was absolute: "When we turn the order books over to the '22 model year, the Durango Hellcat will be gone.  So you've only got one shot [to buy one]."  Compl. ¶ 27.  FCA engaged in a classic bait and switch.

The Complaint plausibly alleges that Plaintiffs reasonably relied upon FCA's representations that the 2021 Hellcat was to be a single-year production run that would not be built in subsequent MYs.

### ii. FCA's statements that the Hellcat would only be produced during the 2021 MY constitute fraudulent misrepresentations

FCA's representations that consumers only had "one shot" to purchase the 2021 Hellcat were not vague and indefinite predictions about anticipated future performance, or merely loose exaggerations constituting puffery upon which no reasonable person would rely.  Rather, FCA's statements asserting the 2021 Hellcat was a single-year production limited to no more than 2,000 Vehicles was a message calculated to increase consumer demand based upon the reasonable belief that there was a very limited and fleeting opportunity to purchase the Hellcat, which would not be available after the 2021 MY.  *Castrol Inc. v. Pennzoil Co.,* 987 F.2d 939, 945-46 (3d Cir. 1993) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language … Here, the claim is both specific and measurable. . .").  Thus, the cases FCA cites concerning unactionable statements of expected future performance are plainly distinguishable.[7] *E.g., see,  Presidio  Enterprises Inc. v. Warner Bros. Distributing Corp.,* 784 F.2d 674, 676 (5th Cir. 1986) (holding defendant's marketing statements proclaiming their upcoming horror movie would be "the most want-to-see movie of the year" were nonactionable puffery that would not be

---

[7] *See, Tate v. Colony House Builders, Inc.,* 257 Va. 78 (Jan. 8, 1999)(defendant's representations about the excellent build quality of its home construction were opinions that were "merely loose, conjectural or exaggerated" rather than representations of existing facts);  *cf. Glaser v. Enzo Biochem, Inc.,* 126 Fed.Appx. 593, 600-01 (4th Cir. 2005)(dismissal of fraud claims reversed and remanded where defendant's statements about its clinical trials held to be material and plaintiff's reliance was not unreasonable as a matter of law.)

taken seriously).  *Id.,* at 681.  Here, however, the Complaint does not allege that Plaintiffs relied upon FCA's loose opinions or statements concerning future performance.  Rather, FCA made concrete representations to specific facts concerning the Hellcat's 2021 MY production run, which was stated to last no more than six months and 2,000 Vehicles at most—full stop.  Contrary to *Presidio* (at 682), FCA's statements were not mere "sales talk" or "loose general statements."

FCA relies heavily upon *Sobel v. Eggleston,* 2013 WL 1344712 (S.D.N.Y. Mar. 28, 2013) (Mot. 7), for the proposition that "limited edition" products can be subsequently reproduced as "subsequent editions."  In *Sobel,* the plaintiff purchased photographic prints *that plaintiff presumed* were "limited editions" due to the fractions printed on the photographs, where the numerator indicated the specific image in the limited edition and the denominator indicated the maximum number of such images in the particular limited edition run.  *Id.,* at *1.  After the defendant subsequently reproduced the photographs (albeit in larger sizes and using different methods), the plaintiff's only allegation of fraud was that the fractions on the limited edition were "statements" which expressly and impliedly represented that the photographs were limited edition works (*Id.,* at *4), and that subsequent reprints of the photographs substantially diminished their monetary value.

The allegations in the Complaint differ from *Sobel* because here, Kuniskis made explicit representations during the 2021 MY launch event and video (and print articles referenced in the Complaint), complete with on-screen graphics for added emphasis, that the 2021 Hellcat would be a single-year production run that would be unavailable in MY 2022, and that "you've only got one shot [to buy one]." Compl. ¶ 27.  By contrast, the *Sobel* court held the mere use of fractions were not "a promise not to produce any subsequent editions" of the images.  *Id.,* at *5.

Moreover, the *Sobel* court noted that the purported limited editions and subsequent edition reprints were "markedly different" in both the manner and medium in which they were created

7

(e.g. dye transfer process from photo negatives or slides versus inkjet printer prints from digital files), and their size, leading the court to conclude that the "difference in medium and size makes clear that the Reprints are part of a Subsequent Edition, rather than new multiples in the… Limited Edition." *Id.* Here, press reports state "[t]he 2023 Durango SRT Hellcat will have the same specs [as the 2021 MY]." Compl. ¶ 40. Thus, the 2023 Durango SRT Hellcat was not a subsequent edition, but a continuation of 2021 Hellcat. This is, in any event, a question of fact.

### iii. Plaintiffs' Consumer Fraud Claims and negligent misrepresentation claim satisfy the particularity requirement of Rule 9(b), where applicable

The Complaint alleges each element of Plaintiffs' Consumer Fraud Claims and negligent misrepresentation claim with sufficient particularity. Where Rule 9(b) applies,[8] Plaintiffs have satisfied Rule 9(b)'s requirement that they plead the misrepresentation with "particularity" because they have alleged the "who, what, when, where and how" of the alleged fraud. *Lorentzen v. Kroger Co.,* 2010 WL 1573719, at *2 (C.D. Cal. April 2, 2021); *Lerner v. Fleet Bank, N.A .,* 459 F.3d 273, 291 (2d Cir.2006). Plaintiffs' claims are premised on FCAs' numerous misrepresentations, disseminated through their national advertising and public comments of their executives, aimed at consumers, that the 2021 Hellcat was a single-year production run that was not going to be produced in subsequent model years. *See*, Compl. ¶¶ 1-4, 27-29, 31-33, 36-42, 45, 62,. Plaintiffs' decision to purchase their Vehicles was based on FCAs' material representations regarding the Hellcat's exclusivity as being a one-year model run. *Id.,* ¶¶ 7, 9, 11, 13, 15, 17, 19, 41, 51, 53, 62, 63, 66-68, 76. In reliance upon FCAs' misleading advertisements and public

---

[8] *Millenium Labs., Inc. v. Universal Oral Fluid Labs., Ltd. Liab. Co*., 2012 U.S. Dist. LEXIS 191035, at *30-31 (M.D. Fla. Apr. 25, 2012)("As to the deceptive and unfair trade practices claims, . . . Rule 9(b)'s requirement does not apply to FDUTPA claims not predicated on allegations of fraud."); *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1333 (S.D. Fla. 2016)(" The particularity requirements of Rule 9(b) do not apply to FDUTPA claims."); *Powell v. Subaru of Am., Inc.,* 502 F. Supp. 3d 856, 887 (D.N.J. 2020) (finding 9(b) inapplicable to FDUPTA claims alleging unfair or deceptive conduct—which Plaintiffs alleged here). Plaintiffs allege deceptive conduct. Compl. ¶¶172(e),174-76.

statements that the Hellcat would be a one-year production run, Plaintiffs purchased their respective Vehicles rather than other competitor SUVs  *Id.,* ¶¶ 6-19.  FCA had a duty to disclose their exclusive knowledge that the 2021 MY Hellcat was not a single year production run, and that FCA would produce subsequent MY Hellcats, or at minimum, that FCA believed they were reserving the right to renege on their single-year production promise.  *Id.* ¶ 123. As a direct and proximate result of FCAs' unfair, deceptive and unconscionable commercial practices, Plaintiffs and Class Members have been injured in that they would not have purchased the 2021 Hellcat, or alternatively, would not have paid a price premium, had they known that FCA was not, in fact, producing and selling the 2021 Hellcat as a single year production run as represented.  Plaintiffs' damages include diminution of their Vehicles' value and benefit of their bargain loss.  *Id.,* ¶¶ 69 70, 71, 108, 126, 139.

Thus, Plaintiffs identify FCA and Kuniskis as the perpetrator of the fraud ("who*")(Id.,* ¶¶ 27-29, 32-33, 39); the specific false statements FCA made about the 2021 Hellcat's single-year production run ("what*")(Id.,* ¶¶ 1-4, 27-29, 31-33, 36-42, 45, 62, 64, 75, 76, 88, 103, 122, 131, 146, 157, 172); the precise dates from July 2020 through 2021 of the statements ("when*")(Id.,* ¶¶ 27-29, 32-33, 39); Plaintiffs' places of purchase ("where") *(Id.,* ¶¶ 6, 8, 10, 12, 14, 16, 18); and detail the "how" of FCAs' fraudulent scheme of inducing purchases of class Vehicles for price premiums by misrepresenting the number of class Vehicles that FCA intended to produce *(Id.,* ¶¶ 2, 3, 6-19, 43.). These detailed allegations of FCA's alleged fraud satisfy Rule 9(b)'s requirements. *See, Kroger,* 2021 WL 1573719, at *5; *Adams v. Carnival Corp.,* 482 F.Supp.3d 1256, 1264 (S.D. Fla. Aug. 31, 2020).

Contrary to FCA's assertions, Plaintiffs' allegations are sufficiently particularized to

satisfy Rule 9(b) where applicable.[9]  Without citing any caselaw, FCA argues that the Consumer

Fraud Claims and negligent misrepresentation claim fail because they do no allege whether any

Plaintiffs heard or read the alleged misrepresentations.  To the contrary, the Complaint alleges that

each Plaintiff purchased their Vehicle "[a]s a result of FCAs' representations that the Hellcat

Vehicle would be a one-year limited edition run"[10], and identifies specific dates and content of

FCA's misrepresentations upon which Plaintiffs relied.  Compl. ¶¶ 27-33.  Plaintiffs are not

required to allege which particular advertisements or representations they were exposed to.  "[I]t

would be unfair to require plaintiffs to recall and specify precisely which of the many

advertisements they…saw [and] relied upon.  Rather, it suffices for plaintiffs to plead examples of

advertisements similar to those they saw as long as all the advertisements convey the core allegedly

fraudulent message." *Rasmussen,* 27 F.Supp.3d at 1044 (internal quotation marks and citations

omitted).  "[E]ven under the heightened pleading standard of Rule 9(b), the ultimate question is

whether the allegations of fraud are 'specific enough to give defendants notice of the particular

misconduct which is alleged to constitute the fraud they charged so that they can defend against

the charge and not just deny that they have done anything wrong.'" *Id.* quoting *Bly-Magee v*

*California,* 236 F.3d 1014, 1019 (9th Cir. 2001)(citation and internal quotation marks omitted);

*Dimare v. MetLife Ins. Co.,* 369 Fed.Appx. 324, 329 (3rd. Cir. 2010); *Click v. General Motors*

*LLC,* 2020 WL 3118577 at * 6 (S.D. Tex. Aug. 18, 2022) ("Thus, Defendant's argument that

Plaintiff must demonstrate which particular advertisement induced him to purchase the [vehicle]

is premature at the pleading stage.").  Plaintiffs' Consumer Fraud Claims and negligent

misrepresentation claim satisfy Rule 9(b)[11].

---

[9] FCA's Motion (at n. 8) concedes that claims pursuant to NYGBL §§ 349 and 350 must only
satisfy Rule 8 pleading standards. *See also Powell,* 502 F.Supp.3d at 887; n. 8 supra.
[10] *See* Compl. ¶¶ 8-19.
[11] Plaintiffs concede that Virginia does not recognize the tort of negligent misrepresentation. *Baker*

#### iv.   Plaintiffs have adequately alleged causation and reliance.

##### i.  *Plaintiffs sufficiently alleged causation*

FCA claims that Plaintiffs fail to sufficiently plead causation and reliance. Not so. The Complaint alleges: 1) specific misrepresentations; 2) that Plaintiffs' purchases were based on FCAs' misrepresentations, which made the Class Vehicles highly attractive; and 3) but for FCAs' misrepresentations, Plaintiffs would not have purchased the Class Vehicles—or would have paid significantly less for them. Compl. ¶¶ 1, 7, 9, 11, 13, 15, 17, 21.

These allegations are sufficient to show causation.  *See, e.g., Morrison v. YTB Int'l, Inc.*, 641 F. Supp. 2d 768, 775 (S.D. Ill. 2009) ("At the pleading stage, all that is necessary to allege proximate causation is to assert, as Plaintiffs do, that after the alleged misrepresentations were made, Plaintiffs enrolled in FCAs' unlawful scheme").[12]

The adequacy of Plaintiffs' pleadings is further reinforced by one of the cases cited by FCA. In *Francis E. Parker Mem'l Home, Inc. v. Ga.-Pacific LLC*, (Mot. 9), the court rejected "specificity just for specificity's sake" and declined to dismiss the case where, as here, the plaintiffs alleged "what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain

---

*v. Elam,* 883 F.Supp.2d 576, 580.  However, "Virginia courts have recognized constructive fraud as having the same elements as a claim for negligent misrepresentation and that such a claim is recognized in Virginia." *JTH Tax, Inc. v. Whitaker,* 2007 WL 2821830 at *3 (E.D. Va. Sep. 27, 2007).  Thus, Plaintiffs request leave to amend their Complaint to reflect this allegation.

[12] *See also, Connick v. Suzuki Motor Co.,* 174 Ill.2d 482 (1996) (allegations that consumers purchased the vehicles after the auto manufacturer suppressed material facts about the vehicles' safety were sufficient for proximate causation under the ICFA); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1264 (N.D. Fla. 2012); *Premier Health Assocs., LLC v. Med. Tech. Sols*., 2018 U.S. Dist. LEXIS 144274, at *15-16 (D.N.J. Aug. 24, 2018)(finding "but-for" allegation sufficient for causation under the NJCFA); *Maxwell v. Unilever United States, Inc.*, 2014 U.S. Dist. LEXIS 121462, at *13 (N.D. Cal. Aug. 28, 2014)(finding "but-for" allegations sufficient under the UCL); *Dash v. Seagate Tech. (US) Holdings, Inc.*, 27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014)(causation sufficiently pled where plaintiff saw the misleading statements on product package and, as a result of such, purchased the product at issue.).

an ascertainable loss." 945 F. Supp. 2d 543, 558 (D.N.J. 2013)(quoting *Smajlaj, et al. v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011)).

### ii. *Plaintiffs sufficiently allege reliance*

Plaintiffs' allegations referenced in the preceding causation section are also sufficient to meet the reliance standard under Texas, Virginia, and California law.  FCA attempts to manufacture a heightened reliance standard and ignores that similar, or less detailed complaints have survived the motion to dismiss stage under all three states' laws. *See, e.g., Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021-22 (9th Cir. 2020) (holding that reliance is inferred where there is an alleged misrepresentation of a material fact and that "[w]hether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage."); *Maxwell v. Unilever United States, Inc.*, 2014 U.S. Dist. LEXIS 121462, at *13 (N.D. Cal. Aug. 28, 2014); *In re Tobacco II Cases*, 46 Cal.4[th] 298, 324-29, 38-41 (2009)(reliance can be established by a showing that the misrepresentation was a substantial factor in the purchasing decision); *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 964 (E.D. Ky. 2019)(reliance adequately alleged in VCPA claim even where the Virginia plaintiff did not allege to have seen a specific advertisement); *Kavon v. BMW of N. Am., LLC*, 605 F. Supp. 3d 622, 644 (D.N.J. 2022)(declining to dismiss Texas and California consumer claims because plaintiffs plausibly alleged they would not have purchased their PHEVs if they had known of the battery defect).

FCA's authorities actually support Plaintiffs' allegations of reliance or are inapposite. *Goldemberg v. Johnson & Johnson Consumer Co*., 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014) endorsed allegations of deceptive misrepresentations similar to those here.  *Durkee v. Ford Motor Co*. 2014 WL 4352184, at *3 (N.D. Cal. Sep. 2, 2014); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 903 F. Supp. 2d 942, 969–70 (S.D. Cal. Oct. 11, 2012); and *Moore v.*

*Apple, Inc.,* 73 F. Supp. 3d 1191, 1200-01 (N.D. Cal. 2014) are distinguishable as they all involve allegedly deceptive representations that *followed* the purchases at issue.

### v.   Pre-Sale knowledge, where required, is adequately pled

FCA next claims that Plaintiffs fail to sufficiently plead pre-sale knowledge under Illinois, Texas, Virginia, and New Jersey law. First, FCA is incorrect in claiming that, under New Jersey law, knowledge requirements apply to affirmative misrepresentation claims.[15] FCA's other authorities (Mot. 12) are each distinguishable in that they involve hidden defects in a product, the existence of which at or prior to sale was not clearly known by the respective defendant. Conversely, knowledge on the part of FCA can be fairly presumed here because the deception lies in a marketing ploy which took the form of artificial scarcity created exclusively by FCA.

Moreover, as FCA acknowledges, while promising that the Vehicles would only be produced for a single year, FCA directed company engineers to reconfigure its operations to comply with changing emissions standards. Mot. 7.  This effort clearly confirms that FCA, despite their representations to the contrary, intended to sell the Vehicles in future years and started the ramp up for the 2023 models while representing a single-year production run.

### vi.   Plaintiffs adequately pled that they suffered damages

FCA argues that Plaintiffs have inadequately pled damages. Not so. Plaintiffs were damaged because they were fraudulently induced into a transaction in which they paid a premium for the Class Vehicles. *See e.g.*, Compl, ¶¶ 10, 78, 151; *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 329-30 (2011) ("[T]he consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately.").

*Thorne v. Pep Boys Manny Moe & Jack, Inc.*, 980 F.3d 879, 886 (3d Cir. 2020) (Mot. 13-14) is distinguishable because the plaintiff's economic injury was "mere conjecture" where they

---

[15] *Marshall v. Verde Energy USA, Inc.*, 2020 WL 5905072, at *7 (D.N.J. Oct. 5, 2020)(consumer fraud claim based on affirmative acts do not require intent); N.J. Stat. § 56:8-2.

purchased tires that were merely unregistered with the manufacturer as opposed to registered. Here, basic supply and demand theory dictates that the Hellcat's value depreciated when its production run went from a single year collectible to a readily available mass manufactuered SUV. Thus, FCA engaged in a classic bait and switch scheme when they flooded the market with Hellcats to maximize profits. Compl. ¶ 39; *See e.g. Poulin v. Ford Motor Co.*, 147 Vt. 120, 127 (1986) (upholding a jury award for damages in a strikingly similar consumer protection act case in which the auto manufacturer flooded the market after promising a limited run).

## B. PLAINTIFFS' BREACH OF EXPRESS WARRANTY CLAIMS ARE NOT PRECLUDED BY FCA'S WRITTEN WARRANTY

Despite directly and knowingly providing affirmative misrepresentations that the Class Vehicles would be a limited to MY 2021, FCA argues that it is somehow immune from the express warranty claims brought by Plaintiff. FCA is wrong.

FCA falsely claims that the Complaint fails to identify the express warranty made by FCA. Mot. 15-16. Yet, the Complaint properly alleges that FCA, either directly or through agents, made affirmations of fact or promises that the Class Vehicles sold or leased in the United States would be a limited year edition. Compl ¶ 183. It is well settled that such affirmations become part of the basis of the bargain and create an express warranty. *See, e.g., Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 324 (D.N.J. 2014) ("A statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'"); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 378 (D.N.J. 2015) ("a breach of express warranty claim requires a plaintiff to allege that she bought a product based on a particular promise regarding that product, which ultimately proved false"). As detailed in the Complaint, FCA did not conform to their promises. Compl. ¶ 39.

Next, FCA argues that their limited warranty precludes Plaintiffs' express warranty claims. Not so. The non-binding authority relied upon by FCA, *Colgate v. JUUL Labs, Inc*., 402 F. Supp. 3d 728 (N.D. Cal. 2019), is inapplicable. The limited warranty in *Colgate* specifically pertained to potential defects that may arise in JUUL's products—and the claims plaintiffs brought also pertained to product defects. *Id.* at 755. Here, the Action does not involve component warranties but affirmations of fact made. Thus FCA's limited warranty includes no language remotely related to production, or future production, of the Vehicle.

Additionally, FCA's limited warranty cannot preclude Plaintiffs' express warranty claims because it was not sufficiently conspicuous. "A disclaimer of an express warranty must be 'clear and conspicuous.'" *Dzielak*, 26 F. Supp. 3d 304 at 326. A disclaimer is conspicuous if a reasonable person should have noticed it. *Viking Yacht Co. v. Composites One Ltd. Liab. Co.*, 496 F. Supp. 2d 462, 470 (D.N.J. 2007); Tex. Bus. & Com. Code § 1.201 ("[T]he test [for whether a term is conspicuous] is whether attention can reasonably be expected to be called to it"). Here, again, the written warranty as to the Vehicle's parts and performance have nothing to do with the representations concerning the promise that it would be a limited edition.  There was no claimed right to produce further year Hellcats made with the promise and, as such, no disclaimer was present and FCA can point to none.

Even if FCA had made its warranty clear and conspicuous, the warranty "may nevertheless be deemed inoperable if 'unreasonably inconsistent' with the express warranties given." *Viking Yacht Co.*, 496 F. Supp. 2d at 470. Representations are presumed "part of the basis of the bargain" once buyers learn of the representation. *Id.* at 469 (D.N.J. 2007). In *Viking*, the Court held that defendant's disclaimer was invalid because it was inconsistent with its product bulletin, which assured "improved flexibility and weathering characteristics" of its newer product, and plaintiffs were entitled to rely on those representations. *Id.* at 467, 470. Here, FCA made representations,

which Plaintiffs relied upon in purchasing the Vehicles at a premium price, that the Vehicles would only be produced in 2021.

FCA relies on the non-binding authority of *Boddison v. Gen. Motors LLC*, 2021 WL 2435388, at *4-5 (M.D. Fla. Mar. 19, 2021), where express warranty claims were dismissed because the complaint concerned a software issue, when the express warranty explicitly disclaimed "software." *Id.* at *12. Here, however, as explained above, Plaintiffs' allegations do not relate to anything disclaimed in FCA's warranty.

In *MAN Roland, Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 572-73 (N.D. Ill. 1999), the express warranty claims were dismissed where a contract was the final expression of the parties. *Id*. This analysis is inapplicable here because, as explained above, FCA's affirmations of fact and promise, and not a contract alone, formed the basis of bargain between the parties.

Finally, FCA's authorities *Adams v. Nissan North America, Inc*., 395 F. Supp. 3d 838, 855 (S.D. Tex. 2018) and *Partin v. NuWave*, LLC, 603 F. Supp. 3d 280, 283 (E.D. Va. 2022), are distinguishable because both cases hinge on breach of implied warranty and not express warranty claims. *Adams,* at 853; *Partin,* at 282. To the extent that the cases speak of disclaimers of warranty, both cases hold that disclaimers are effective only if sufficiently conspicuous. *Id.*; *Partin* at 283. As explained above, FCA's warranty was not conspicuous. Plaintiffs' breach of warranty claims will therefore not be precluded by FCA's written warranty.

## C. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS ARE SUFFICIENTLY PLED

FCA argues that Plaintiffs' unjust enrichment claim should be dismissed on the grounds that it lacks sufficient factual allegations, is duplicative of other claims, and is precluded by the warranty. Mot. 16. FCA's arguments fail.

### i. Plaintiffs' unjust enrichment claim is pled with sufficient specificity

Plaintiffs' allegations put FCA on notice of the misconduct with which it is charged, and match or surpass those asserted in cases where the Third Circuit has found unjust enrichment to

be sufficiently pled. *Dzielak*, 26 F.Supp.3d at 331 (sustaining claim where FAC alleged plaintiffs paid retail defendants a price premium due to mislabeling of the washing machines and that defendants were unjustly enriched by retaining the revenues derived from plaintiffs' purchases); *Cesare v. Champion Petfoods USA Inc.*, 429 F.Supp.3d 55, 65 (W.D. Pa. 2019) (unjust enrichment claim sufficiently pled when it alleged consumers paid premium price for inferior pet food that did not conform to representations on defendant's labels, website); *Loduca v. WellPet LLC*, 549 F.Supp.3d 391, 406-07 (E.D. Pa. 2021) (unjust enrichment claim based in fraud sufficiently pled defendants unjustly enriched by revenues derived from misrepresentations and/or omissions on product label).

### ii.    Plaintiffs' Unjust Enrichment claim is not precluded by the warranty

FCA incorrectly argues that Plaintiffs' unjust enrichment claim must be dismissed because the Vehicles were sold with the warranty. Mot. 7. FCA relies on the non-binding and unpersuasive authority *Van Zeeland v. Rand McNally,* which was not decided in the Third Circuit, where the well-established approach is to allow unjust enrichment claims at the pleading stage even where an express warranty exists. F.Supp.3d 557, 573-74 (N.D. Ill. 2021); *see PPG Indus. Inc., v. Generon IGS, Inc*, 760 F.Supp.2d 520, 526 (W.D. Pa. 2011); *Kantor v. Hiko Energy, LLC*, 100 F.Supp.3d 421, 430 (E.D. Pa. 2015) (same). Both *Kahn v. FCA US LLC*, 2019 WL 3955386, (C.D. Cal Aug. 2, 2019) and *Toca v. Tutco LLC,* 430 F. Supp.3d 1313 (S.D. Fla. 2020) (Mot. 17) are distinguishable as the complaints in those actions, unlike here, lacked factual allegations to establish that defendant was unjustly enriched at the expense of plaintiff. Notably, *Kahn* acknowledged that plaintiffs may be permitted to assert inconsistent, alternative claims such as unjust enrichment and breach of contract. *Kahn,* 2019 WL 3955386, at *8. The Court should follow the well-reasoned approach of other courts in this Circuit and allow Plaintiffs' unjust enrichment claim to proceed.

### iii.    Plaintiffs' unjust enrichment claim is not duplicative of other claims

Finally, FCA argues that Plaintiffs' unjust enrichment claim must be dismissed on the grounds that it is duplicative of other claims in the Complaint.  Courts regularly allows unjust enrichment and breach of contract claims to proceed at the pleading stage.  *Dzielak*, 26 F.Supp.3d at 331 ("at this [pleading] stage, it would be premature to dismiss an unjust enrichment claim simply because it may later be eclipsed by some other cause of action."); *Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259, 275 (W.D. Pa. 2021)("[A]s there are sometime inadequacies in contractual remedies at law, it is widely accepted practice to pursue unjust enrichment in the alternative at the pleading stage.").

Whereas the unjust enrichment claim in *Madrigal v. Hint, Inc.,* 2017 WL 6940534, at *4-5 (C.D. Cal. Dec. 14, 2017) (Mot. 18) rose and fell with the breach of warranty claims and was consequently dismissed, here, Plaintiffs' unjust enrichment claim is an alternative remedy, as the warranty is inconsistent with FCA's representations about the Hellcat's  production run.

Thus, FCA's non-binding authority is inapposite, as Plaintiffs' claim for unjust enrichment is a true alternative to their breach of warranty claims. For these reasons, the Court should adopt the approach of other courts in the Third Circuit in finding that it would be premature to dismiss Plaintiffs' unjust enrichment claim as duplicative at the pleading stage.

### D.  PLAINTIFFS HAVE STANDING TO ASSERT THE NATIONWIDE CLASS ALLEGATIONS

### i. Plaintiffs have standing to bring claims under the laws of all fifty states

Plaintiffs have standing to assert claims on behalf of putative Class Members from other states, regardless of whether claims are brought under those states' laws. Indeed, numerous courts in multi-state class actions have found that named plaintiffs can be suitable representatives of class members from different states. *See, e.g., In re Valsartan Losartan & Irbesartan Prods. Liab. Litig*., 2021 U.S. Dist. LEXIS 256073, at *120-21 (D.N.J. Oct. 7, 2021) (citing *Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 816 (1985)) ("[I]n a multistate class action, like this one, a particular state's law may be applied where it does not conflict with the law of the state where members of the class resided.").

In the Third Circuit, "the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 364 (3d Cir. 2015) (internal citations omitted). FCA ignores the differing opinions within this District concerning the question of Article III standing and its application to unnamed putative class representatives. *Id.* In *Maugain*, a case involving legal claims against FCA, Judge Williams recognized the split in the District, but reasoned that *Neale* is not inflexible and that courts' analysis of raising claims under other states laws is appropriate at the class certification stage. *See Maugain v. FCA US LLC,* 2023 U.S. Dist. LEXIS 20172, at *12-13 (D. Del. Feb. 7, 2023). Accordingly, FCA's arguments regarding the applicability, if any, of differing common law doctrine should be addressed at class certification.

### ii. FCAs' motion to strike lacks merit

Motions to strike class allegations are disfavored in this District and FCAs' motion is premature. *See, e.g., Davis v. D.R. Horton, Inc.,* 2020 WL 6042091, at *2 (D. Del., Oct. 13, 2020); *Drake v. Hyundai Rotem USA, Corp*., 2013 WL 4551228, at *6 (E.D. Pa. Aug. 28, 2013). Only in the rarest of cases, "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," may a court strike class allegations absent the conducting of discovery in order to rigorously evaluate the requirements of Rule 23. *See Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 93 (3d Cir. 2011) (vacating dismissal where district court prematurely decided class certification issues on motion to dismiss prior to discovery).

Undaunted by precedent hostile to their position, FCA reaches for wholly inapplicable cases.[18]

When considering a motion to strike, "[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing," or has yet to begin. *Durso v. Samsung Elecs. Am., Inc.*, 2013 WL 5947005, at *3 (D.N.J. Nov. 6, 2013). Plaintiffs' allegations satisfy a *prima facie* showing that the elements of Rule 23 elements are met (Comp. ¶¶ 46-59).

## IV. CONCLUSION

Plaintiffs respectfully request that this Court deny FCA's Motion in its entirety. In the event the motion is granted, Plaintiffs respectfully request leave to replead.

DATED: July 28, 2023

Respectfully submitted,

DeLEEUW LAW LLC

/s/ *P. Bradford deLeeuw*
By: P. Bradford deLeeuw (De. Bar  #3569)
1301 Walnut Green Road Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

---

[18] *Johnson v. Organo Gold Int'l.*,  2016 U.S. Dist. LEXIS 63361, at *21 (D. Del. May 13, 2016)(Striking the class where the proposed class representative experienced serious physical injuries that made him "markedly different from the class as a whole[.]"); *Zieger v. Advance Am.*, 2014 U.S. Dist. LEXIS 177524, at *19 (D. Del. Dec. 29, 2014)(striking an alleged "class of one" on numerosity grounds but also granting leave for the plaintiff to amend to show that there were more class members); *Thom v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 327 (4th Cir. 2006)(upholding a denial of certification rather than a 12(f) motion to strike.) .

**OF COUNSEL:**

**KANTROWITZ, GOLDHAMER**
**& GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
Melissa R. Emert, Esq.
Daniel C. Edelman, Esq.
16 Squadron Blvd., Suite 106
New City, New York 10956
(845) 356-2570
ggraifman@kgglaw.com
memert@kgglaw.com
dedelman@kgglaw.com

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio (P29077)
Jason S. Rathod (P18424)
412 H St. NE, Suite 302
Washington, D.C. 20002
(202) 470-3520
mmigliaccio@classlawdc.com
jrathod@classlawdc.com

*Attorneys for Plaintiffs*