1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILLIPS, et al.,      )
                       )
        Plaintiffs,    )    C.A. No. 23-251-JLH
                       )
v.                     )
                       )
FCA US LLC, et al.,    )
                       )
        Defendants.    )


                    Monday, September 23, 2024
                    3:30 p.m.
                    Courtroom 6D


                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE JENNIFER L. HALL
         United States District Court Judge


APPEARANCES:


        DE LEEUW LAW, LLC
        BY:  BRAD DE LEEUW, ESQ

        -and-

        KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
        BY:  GARY S. GRAIFMAN, ESQ.

                        Counsel for the Plaintiffs

---

2

1    APPEARANCES CONTINUED:

2

3        CLARK HILL, P.A.
         BY:  MARGARET M. DiBIANCA, ESQ.
         BY:  DANIEL T. GRAHAM, ESQ.
4        BY:  JONATHAN ROFFE, ESQ.

5                    Counsel for the Defendants

6

7        ----------------------------
8
9
10           COURT CLERK:  All rise.  Court is now in
11   session.  The Honorable Jennifer L. Hall presiding.
12           THE COURT:  Good afternoon, everyone.  Please be
13   seated.  We're here on a motion to dismiss.  This is
14   Phillips, et al., v. FCA US.  It's civil action number
15   23-251.
16           Let's go ahead and put our appearances on the
17   record.
18           MR. DE LEEUW:  Good afternoon, Your Honor.  Brad
19   DeLeeuw of DeLeeuw Law, LLC on behalf of plaintiffs.
20   Pleased to appear before Your Honor for the first time.  And
21   at counsel table with me today is Gary Graifman of
22   Kantrowitz, Goldhamer & Graifman.  Mr. Graifman has been
23   admitted pro hac vice and will handle the presentation on
24   behalf of plaintiffs today.
25           MR. GRAIFMAN:  Good afternoon, Your Honor.

---

3

1           MS. DI BIANCA:  Good afternoon, Your Honor.  I'm
2    Molly DiBianca from Clark Hill.  And I will not be making
3    the presentation today, but I am joined at counsel table by
4    my colleagues from Clark Hill as well, Daniel Graham from
5    our Chicago office and Jonathan Roffe, whose name I did
6    pronounce correctly, for the first time ever, he says.  And
7    Jonathan  -- Mr. Roffe will be making the argument today if
8    it please the Court.
9           THE COURT:  That's fine.  Welcome, everybody.
10   Let me pull up my notes.  Okay.  I can tell you
11   I've read the papers.  Got a lot of different state law
12   claims involved, so I might need to get into the details
13   about how the different states' laws differ, but I'm anxious
14   to hear your argument.
15          Let's start with the defendant.
16          MR. ROFFE:  Good afternoon, Your Honor.
17          THE COURT:  Good afternoon.
18          MR. ROFFE:  First off, I just want to thank you
19   for agreeing to move today's hearing.  It's much
20   appreciated.
21          THE COURT:  Oh, absolutely.
22          MR. ROFFE:  Your Honor, seven plaintiffs bring
23   claims under nine different state consumer fraud claims
24   stemming from alleged false statements made concerning
25   future production of the 2021 Dodge Durango SRT Hellcat.  I

---

4

1    might refer to it today just as the vehicle just for the
2    sake of ease.
3           THE COURT:  That's fine.
4           MR. ROFFE:  More specifically, plaintiffs assert
5    that FCA mislead consumers when it allegedly marketed the
6    vehicle as a limited edition vehicle and that it wouldn't be
7    produced again after 2021.
8           Plaintiffs also bring a claim against FCA for
9    alleged negligent misrepresentation, unjust enrichment and
10   breach of express warranty.
11          And they also seek certification of a nationwide
12   class of purchasers of the vehicle.
13          Plaintiffs' claim should be dismissed for five
14   main reasons.
15          First, plaintiffs failed to fill their pleading
16   obligations under Rule 9B.  They failed to provide the
17   necessary who saw what, when did they see it, and how were
18   they damaged.  Instead they provide a puzzle pleading for
19   FCA and the Court to connect the dots and that's not
20   sufficient under Rule 9B.
21          Second, Your Honor, even presuming plaintiffs
22   properly pled such information, FCA's statements, if you
23   actually look at the underlying articles in the video, the
24   statements made don't actually qualify as actionable
25   fraudulent misrepresentation.  The very publications they

5

15:37:06 1 cite provide context surrounding the comments made therein
15:37:10 2 and about future limited availability of the 2021 model year
15:37:14 3 vehicle. And therefore, the statements made cannot be
15:37:16 4 deemed fraudulent. Additionally, they were statements about
15:37:18 5 the future, and as the Court is well aware, statements about
15:37:21 6 the future can't be considered fraudulent statements unless
15:37:24 7 they meet some type of exception. They don't hear.
15:37:29 8          Third point, Your Honor, plaintiffs' class claim
15:37:31 9 should be stricken because the complaint demonstrates that
15:37:33 10 the requirements for maintaining a class action here cannot
15:37:37 11 be met. There are far too many individualized inquiries
15:37:41 12 concerning the proposed class members and the elements of
15:37:44 13 the underlying claims, which effects the ability to meet
15:37:47 14 typicality, commonality and predominance under Rule 23. And
15:37:50 15 because it's abundantly clear at this stage of the
15:37:53 16 proceeding that the individual facts and legal issues will
15:37:56 17 predominate over any common proof sufficient to certify a
15:37:59 18 class, the class claim should be discussed.
15:38:02 19          Fourth, Your Honor, plaintiffs lack Article III
15:38:04 20 standing.
15:38:05 21          And lastly, plaintiffs other claims should be
15:38:08 22 dismissed because they're barred by the terms of the
15:38:10 23 parties' express warranty. With respect to that first
15:38:17 24 factor, Your Honor, plaintiffs state consumer fraud and
15:38:17 25 unjust enrichment claim should be dismissed because they do

6

15:38:21 1 not sufficiently meet the pleading standards of Rule 9B.
15:38:25 2 They failed to provide the who, what, when, where, how, why.
15:38:28 3 And they don't connect the dots and they simply provide a
15:38:33 4 puzzle pleading of sorts.
15:38:34 5          And just to be clear, the complaint does have a
15:38:36 6 lot of information in it. They provide the names of the
15:38:39 7 plaintiffs, information concerning the purchase of the
15:38:41 8 vehicle and references to certain statements FCA made about
15:38:45 9 the vehicle, but the plaintiffs' pleading fails to provide
15:38:48 10 sufficient detail connecting the statements made by FCA to
15:38:52 11 their actual purchase of the vehicles and the resulting
15:38:54 12 damages, if any.
15:38:56 13          THE COURT: Just to make sure I understand, you
15:38:58 14 agree that Rule 9B applies to all of the state Consumer
15:39:09 15 Protection Act claims. There's a dispute about Florida and
15:39:13 16 there's no dispute that it doesn't apply to New York, is
15:39:17 17 that right?
15:39:17 18          MR. ROFFE: Your Honor, with respect to New
15:39:19 19 York, there are -- although Rule 9B does not apply
15:39:23 20 necessarily, there are requirements such as reliance and
15:39:27 21 causation that are applicable for that state and therefore
15:39:32 22 the case law does support the same analysis that I'm going
15:39:33 23 to be providing with respect to the rest of these cases,
15:39:37 24 Your Honor.
15:39:37 25          THE COURT: Okay.

7

15:39:38 1          MR. ROFFE: With respect to plaintiffs' claims,
15:39:44 2 they don't provide what specific statements they saw relied
15:39:48 3 upon, when they saw such statements and how they were
15:39:52 4 injured, in fact. Rather they provide conclusory statements
15:39:56 5 that FCA made certain statements and they purchased the
15:40:00 6 vehicle. They don't connect the two. We saw this and then
15:40:04 7 we bought it. In fact, they don't say they saw any specific
15:40:08 8 advertisement, they just refer to an amorphous advertising
15:40:13 9 campaign. And as Your Honor is likely well aware,
15:40:15 10 plaintiffs are obligated to provide specificity in their
15:40:18 11 pleading as to statements they saw and relied upon to make
15:40:21 12 their purchase.
15:40:22 13          And, Your Honor, just for the sake of clarity,
15:40:25 14 the what and when required under Rule 9B is especially
15:40:29 15 important here because a fraud claim can't survive if the
15:40:32 16 plaintiffs failed to say they ever saw it before they
15:40:34 17 purchased it. They can't say that they were damaged if they
15:40:38 18 never actually were caused to purchase it as a result. It
15:40:45 19 flies in the face of Rule 9B requirements and here all the
15:40:49 20 relevant state consumer fraud claims require sufficient
15:40:52 21 pleading of causation and/or reliance to survive dismissal.
15:40:56 22 Causation is required for five states. Reliance is required
15:40:59 23 for three. And the plaintiffs fail to allege anywhere that
15:41:03 24 they saw any of the specific false statements referenced in
15:41:06 25 the complaint before purchasing their vehicle. Cases

8

15:41:09 1 throughout each of the states made clear that such claims
15:41:13 2 should be dismissed when this occurs. And I'll refer Your
15:41:17 3 Honor to a District of New Jersey 2011 case, *Lieberson v.*
15:41:21 4 *Johnson & Johnson* where the Court found plaintiff didn't
15:41:24 5 satisfy Rule 9B where the plaintiff didn't identify whether
15:41:27 6 and when the plaintiff viewed the statements made by
15:41:30 7 defendant. The same holding applies for *In re: Toshiba*
15:41:34 8 *America* when the plaintiffs failed to allege when they were
15:41:37 9 exposed to the misrepresentations. For Texas, *Sharifan v.*
15:41:44 10 *NeoGenis Labs*, Southern District of Texas 2022, the Court is
15:41:45 11 quoted saying, "plaintiff cannot simply refer to an
15:41:49 12 amorphous advertising campaign and then claim that an
15:41:52 13 unspecified advertisement which he viewed at an unspecified
15:41:55 14 time convinced him to purchase the product. This flies in
15:42:00 15 the face of the Rule 9B heightened pleading standards."
15:42:03 16          I'm not going to go through each one of these
15:42:04 17 cases, Your Honor, but we make references to every
15:42:07 18 jurisdiction where a case applies. And I invite Your Honor
15:42:11 19 to review those cases or I can go into more detail about
15:42:15 20 them if you would like.
15:42:16 21          But the case law that plaintiffs rely on is
15:42:18 22 really limited to California and Texas, about not needing
15:42:23 23 such level of specificity with respect to reliance and that
15:42:27 24 conflicts with the majority of the case law in those states.
15:42:32 25 Again, I refer Your Honor to *Sharifan* in Texas and in

9

15:42:36 1 California, *Mehta v. Robinhood, Garlough v. FCA*.

15:42:43 2          Moving on, Your Honor, with respect to the

15:42:45 3 pleadings, with respect to damages, there is no injury in

15:42:50 4 fact alleged to have occurred here. "The complaint must

15:42:53 5 allege facts that permit a factfinder to value the purported

15:42:58 6 injury without resorting to mere conjecture or

15:43:02 7 hypothetical." And that's *Lujan v. Defenders of Wildlife*,

15:43:02 8 U.S. Supreme Court 1992. And here the alleged damages

15:43:06 9 relate to plaintiffs' alleged investment value in the

15:43:09 10 vehicle, but no plaintiffs allege that they actually sold

15:43:12 11 the vehicle or suffered any loss on that sale. There's

15:43:15 12 nothing here. It's all hypothetical, well, we might have

15:43:18 13 lost an investment value of the vehicle and that's not

15:43:21 14 sufficient.

15:43:21 15          THE COURT: Isn't there -- I mean, investment,

15:43:26 16 one thing, put that aside, but cars have resale value,

15:43:27 17 people buy cars with an idea that they'll be able to drive

15:43:32 18 them for some period of time, these rarer sports and luxury

15:43:37 19 cars, and then get a good resale value. I mean, isn't it

15:43:41 20 plausible that the resale value tanks when there's going to

15:43:45 21 be a lot more of them on the market?

15:43:47 22          MR. ROFFE: Your Honor, although that might be

15:43:49 23 true for certain collector cars like a GT, a 1965, I don't

15:43:54 24 know, Mustang or something like that. That isn't the case

15:43:57 25 for a Dodge Durango 2021. And regardless of that, the car

10

15:44:04 1 still remains a limited edition vehicle. It was released

15:44:08 2 for one model year. No cars that followed it are exactly

15:44:13 3 the same. It still remains a limited edition vehicle in

15:44:17 4 this case it's actually very similar to the *Sobel* case that

15:44:22 5 we referred to.

15:44:23 6          And also, Your Honor, with respect to diminution

15:44:27 7 in value, on a pleading standard, and I refer you to the

15:44:30 8 case *Yost v. General Motors*, District of New Jersey 1986,

15:44:34 9 the Court held that allegations of diminution in value are

15:44:37 10 unsupported where the plaintiff, and I quote, "has not

15:44:38 11 apparently attempted to sell his car in the used car market

15:44:42 12 and simply asserts the bald conclusion that its value in the

15:44:45 13 market has decreased." That's exactly what the plaintiffs

15:44:48 14 are doing here, and for those exact same reasons, it's all

15:44:52 15 hypothetical and conjecture with respect to their pleadings

15:44:55 16 of damages. In fact, the only cases that plaintiffs cite to

15:44:59 17 that support their diminution in value are *Poulin v. Ford*

15:45:04 18 *Motor Company*, which was a Vermont State Court case related

15:45:07 19 to the Vermont Consumer Fraud Act claim. Again, there's no

15:45:11 20 Vermont class representative here. There is no Vermont

15:45:15 21 consumer fraud claim here. Even there the facts were

15:45:19 22 substantially different. That was a 101 discussion between

15:45:23 23 Ford and the plaintiff in that case, and there was -- at the

15:45:26 24 time that the statements were made, it was proven one month

15:45:30 25 later that they were false. This is not the same situation.

11

15:45:32 1 This is a general amorphous advertising campaign that

15:45:36 2 they're referring to that went out to the general public and

15:45:39 3 two years later they're now claiming it was incorrect.

15:45:43 4          And then with respect to the other case that

15:45:45 5 they cite, *Quickset Corp v. Superior Court*, it's a

15:45:49 6 California State Court case stemming from UCL -- and it was

15:45:53 7 limited to UCL interpretation, not like any of the other

15:45:57 8 claims asserted here. Even there the Court held plaintiff

15:46:00 9 still must show that it's consistent with Article III that

15:46:04 10 they suffered distinct and palpable injury as a result and

15:46:07 11 plaintiffs have not done so here. Rather, they allege

15:46:11 12 potential injury and that's not sufficient under the Ninth

15:46:16 13 Circuit. And I refer Your Honor to *Birdsong v. Apple* where

15:46:16 14 the Court held potential injury is not sufficient.

15:46:23 15          More fundamentally, Your Honor, moving on to the

15:46:25 16 second reason why this complaint should be dismissed, even

15:46:30 17 if they could amend at such -- they could amend and add such

15:46:36 18 facts, the very video and articles that they cite to in

15:46:40 19 their complaint don't support their claim that FCA would

15:46:42 20 never build another Hellcat vehicle as plaintiffs allege.

15:46:45 21 There's no such statement in the articles or video that say

15:46:47 22 that. The *Torque Report* article dated July 12, 2020, which

15:46:53 23 is referenced in the complaint but it's not attached to it,

15:46:55 24 but it's incorporated by reference by the plaintiffs, we

15:46:58 25 attach it as Exhibit A to our motion, ECF 12.1, page ID 115

12

15:47:04 1 through 117, specifically includes the following statements

15:47:07 2 from FCA's representatives. The vehicle, and I quote, "is

15:47:11 3 not limited, not serialized like what we do with," and they

15:47:16 4 refer to another vehicle where they specifically did that.

15:47:19 5          And FCA also provided context that it believed

15:47:23 6 it could only produce six months' worth of vehicles because,

15:47:26 7 A, new emission requirements went into effect in 2022, and

15:47:31 8 there were questions that existed surrounding customer

15:47:34 9 demand and COVID at the time. And I want to read these into

15:47:39 10 the record, Your Honor, because I think they're pretty

15:47:39 11 importing. I'm quoting from the *Torque Report* article.

15:47:41 12 FCA's representative said, with respect to emission

15:47:45 13 requirements, "when we switched to the 2022 model year,

15:47:48 14 there's new evaporative emission requirements that come in

15:47:51 15 in that Hellcat engine does not meet in that platform. And

15:47:55 16 with the change of platforms for the next generation WL Jeep

15:48:00 17 Grand Cherokee, it's a one-year cycle."

15:48:03 18          Then with respect to consumer demand and COVID,

15:48:05 19 FCA is quoted as saying, "with all the changes we made in

15:48:09 20 the plant to come back up post COVID with the sequencing and

15:48:13 21 spacing in the plant, it changes the number we can build.

15:48:16 22 It will be determined by customer demand and how much we can

15:48:20 23 build."

15:48:20 24          Your Honor, clearly such statements about the

15:48:22 25 future, which were unknown at the time, like consumer

13

15:48:25 1 demand, various issues that were going on in the world at
15:48:29 2 large with respect to COVID -- I remind Your Honor these
15:48:32 3 statements were in July 2020. This is only a few months
15:48:36 4 after COVID kind of hit the country. At that point in time
15:48:38 5 no one really knew what the future of production was going
15:48:41 6 to be within the country. Everything was shut down, there
15:48:44 7 was legitimate concerns about manufacturing moving forward
15:48:47 8 in the country from the car companies. And it's very
15:48:51 9 understandable to anyone that would read this article, which
15:48:56 10 they refer to in their complaint and they rely upon, that
15:49:00 11 these are not definitive statements, these are statements
15:49:03 12 that were made because there was a lot of unknown looking
15:49:06 13 into the future. And each of these statements were made
15:49:09 14 before plaintiffs purchased their vehicle. Plaintiffs seem
15:49:12 15 to ignore these quotes referenced in the same article that
15:49:14 16 they cite to, but they fail to acknowledge whether they even
15:49:17 17 ever read the specific article. But they seek to use
15:49:20 18 partially quoted portions of it to their benefit and that
15:49:24 19 shouldn't be permissible. This is in part why the what
15:49:27 20 plaintiffs read and saw really matters, because if they
15:49:30 21 relied upon the *Torque Report* article, which they
15:49:33 22 referenced, but they don't necessarily say whether they saw
15:49:36 23 it or not or relied on it, the Court would have good basis
15:49:40 24 to dismiss the claims, because the rest of the articles
15:49:42 25 provide context concerning why it originally thought it

14

15:49:44 1 would produce six months' worth of vehicles.
15:49:46 2      And, Your Honor, I want to refer back to
15:49:51 3 *Sharifan v. NeoGenis Labs*, Southern District of Texas case,
15:49:53 4 because this quote alone, it provides pretty good
15:49:56 5 understanding for the argument here. The court is quoting
15:50:00 6 as saying, "A fraud-based claim is all but eviscerated when
15:50:04 7 the plaintiffs' complaint provides examples of supposed
15:50:07 8 misrepresentations," parenthesis, "(e.g. advertisements),
15:50:10 9 and those examples flat out contradict
15:50:13 10 complaints/allegations of fraud." Here that is to a T what
15:50:17 11 occurred here.
15:50:18 12      THE COURT: Let me ask you about the video,
15:50:20 13 though. The video doesn't have that context. It says "the
15:50:23 14 Hellcat Durango will be a single model year run. When we
15:50:28 15 turn the order books over to the '22 model year, the Durango
15:50:32 16 Hellcat will be gone, so you only got one shot." What's
15:50:36 17 ambiguous about that?
15:50:38 18      MR. ROFFE: Your Honor, with respect to the
15:50:39 19 video, where they say "when we turn the books over to the
15:50:42 20 '22 model year, the Durango Hellcat will be gone," I want to
15:50:47 21 remind the Court the Durango was not built in '22.
15:50:51 22 Furthermore, with respect to the rest of the statements that
15:50:54 23 were made in that, I guess, two sentences, you have to
15:50:58 24 understand the context of what that video is. That video
15:51:01 25 was a 36-, 40-minute video, approximately, announcing

15

15:51:03 1 various vehicles hitting the market. There were -- if you
15:51:06 2 look at it, there's fancy graphics, there's a fancy stage
15:51:10 3 that makes a lot of, you know, buzz-worthy stuff that goes
15:51:15 4 on. There's graphics saying don't wait. It's clearly
15:51:18 5 salesman puffery with respect to the statements that are
15:51:21 6 made therein. And anyone that says -- anyone that's relying
15:51:27 7 on that as the sole basis of their purchase, that's not how
15:51:32 8 car purchasing works. People don't look at the video and
15:51:36 9 say, oh, they said they're never to going to sell it again,
15:51:40 10 so I'm going to buy this today. People do their research,
15:51:43 11 people do the work with respect to purchasing of a vehicle.
15:51:43 12      THE COURT: People also pay more money for a
15:51:50 13 vehicle if they think it's going to be rare, though, don't
15:51:50 14 they?
15:51:50 15      MR. ROFFE: Your Honor, they will pay for a lot
15:51:52 16 of reasons. There's a lot of reasons why people purchase a
15:51:56 17 car. It's one of the unique purchases in the world. I
15:52:00 18 didn't buy my first car until three or four years ago and I
15:52:04 19 had no idea what I was doing, and I think a lot of people
15:52:05 20 feel the same, but I knew what I wanted. I wanted something
15:52:09 21 that would get me from point A to point B, I wanted
15:52:12 22 something that would fit my family in it, I wanted something
15:52:14 23 that looked cool for my friends. There's a lot of reasons
15:52:19 24 that go into it.
15:52:20 25      THE COURT: And I don't want to beat a dead

16

15:52:22 1 horse. There's a lot of people in this courtroom that have
15:52:25 2 had a lot of cars, some of which --
15:52:29 3      MR. ROFFE: Probably more than me.
15:52:29 4      THE COURT: -- but some of which were bought
15:52:30 5 with the idea that they'd be able to be driven and sold at a
15:52:36 6 higher value to buy your next expensive rare car. I'm not
15:52:40 7 saying anybody in my family would ever do that, but I am
15:52:44 8 saying that. So I guess -- so isn't that plausible?
15:52:49 9      MR. ROFFE: Well, Your Honor, what we also have
15:52:53 10 to remember here is these statements that were made in the
15:52:55 11 video, these are statements of the future, they are
15:52:58 12 predicting --
15:52:59 13      THE COURT: That's really what I think your best
15:53:02 14 argument is, so maybe we should focus on that. So I guess
15:53:07 15 the question is, I didn't see from them any case that --
15:53:18 16 where the Court said that it made a consumer fraud claim for
15:53:23 17 an advertiser to make a statement about something -- or for
15:53:28 18 a manufacturer to make a statement about something that they
15:53:32 19 intend to do in the future, right?
15:53:35 20      MR. ROFFE: Your Honor, you're completely
15:53:38 21 correct and the reason they didn't is because there is no
15:53:42 22 case that says that.
15:53:43 23      THE COURT: Right.
15:53:44 24      MR. ROFFE: The only case that they really cite
15:53:45 25 to is *Castrol v. Pennzoil*, and that case isn't applicable at

17

15:53:48 1 all, because it's focused upon ascertainable statements have
15:53:51 2 product quality that be be determined by scientific testing
15:53:54 3 at the time it was made. That's not the case here. It
15:53:57 4 wasn't relying upon opinion about future availability of a
15:54:01 5 product. It was based upon availability of a product based
15:54:05 6 on present conditions such as COVID ravaging the world and
15:54:10 7 unknown consumer demand. It's totally inapplicable to the
15:54:15 8 current circumstances, Your Honor.
15:54:15 9       THE COURT: Let me just ask you this. The
15:54:18 10 reason why they're saying that the statements that were made
15:54:23 11 in 2020 were misleading is because of things that didn't
15:54:29 12 happen until 2022. The statements -- do you see any
15:54:33 13 allegation in their complaint that your client actually
15:54:41 14 believed they were going to make more cars when they made
15:54:44 15 those statements in 2020?
15:54:46 16       MR. ROFFE: I'm sorry, Your Honor, are you
15:54:48 17 asking --
15:54:48 18       THE COURT: I'm asking you -- they have not
15:54:50 19 alleged, do you agree with me -- this is a softball -- that
15:54:56 20 the CEO made the statement saying this is going to be a
15:55:00 21 limited run, but he actually knew it wasn't going to be a
15:55:03 22 limited run?
15:55:04 23       MR. ROFFE: No, Your Honor.
15:55:05 24       THE COURT: There's no evidence like that?
15:55:07 25       MR. ROFFE: No, Your Honor. And for that reason

18

15:55:09 1 alone they've failed to meet their pleading standards under
15:55:13 2 Rule 9B.
15:55:14 3       Your Honor, if I may, with respect to FCA's
15:55:24 4 motion to strike, FCA moved to strike the class allegations
15:55:29 5 from the complaint. As Your Honor knows, Rule 12F provides
15:55:33 6 that a Court may strike from a pleading an insufficient
15:55:37 7 defense or any redundant, immaterial, impertinent or
15:55:40 8 scandalous matter. And Rule 23 C(1)(a) provides a court
15:55:44 9 with authority to strike allegations from a complaint before
15:55:46 10 a motion for class certification is filed "when the
15:55:50 11 complaint demonstrates that the requirements for maintaining
15:55:52 12 a class action cannot be met." Rule 23A, as the Court
15:55:57 13 likely knows, has four requirements; numerosity,
15:56:01 14 commonality, typicality and adequacy. And with respect to
15:56:04 15 that typicality requirement, Your Honor, a class
15:56:07 16 representative's claims must be, and I quote, "generally the
15:56:09 17 same as those of other class members in terms of both the
15:56:13 18 legal theory advanced and the factual circumstances
15:56:16 19 underlying that theory." That's from *Johnson v. Organo*
15:56:20 20 *Gold*, District of Delaware 2016.
21       And with respect Rule 23(b)(3), predominance
15:56:25 22 inquiry, that tests whether proposed classes are
15:56:27 23 sufficiently cohesive to warrant adjudication by
15:56:31 24 representation. Common questions predominate within the
15:56:36 25 meaning of 23(b)(3) predominance element, when the substance

19

15:56:37 1 of and quantity of evidence necessary to prove the class
15:56:41 2 claim won't vary significantly from one plaintiff to
15:56:45 3 another. "Common issue is one that will be likely to prove
15:56:49 4 using same evidence for all class members whereas an
15:56:52 5 individualized issue, by contrast, is one that will likely
15:56:55 6 be proved by the evidence that varies from member to
15:56:58 7 member." So to assess predominance, the Court must
15:57:03 8 determine whether issues in class action subject to
15:57:06 9 generalized proof predominate over those issues subject to
15:57:08 10 individualized proof. And here, Your Honor, it's plain from
15:57:12 11 the pleading that plaintiffs cannot fulfill that requirement
15:57:15 12 from maintaining a class action. There's far too many
15:57:17 13 individualized factual and legal inquiries concerning the
15:57:19 14 proposed class members which effects the ability to meet the
15:57:23 15 typicality and predominance requirements under Rule 23.
15:57:26 16 Those individualized questions will swamp any common
15:57:30 17 questions that exist for proposed class members. For
15:57:31 18 example, why did the plaintiffs purchase the -- why did the
15:57:36 19 class purchase the vehicle? Plaintiffs allege that it --
15:57:40 20 everyone bought it for the investment purposes. But again,
15:57:44 21 we're kind of treading over a road I just went over.
15:57:47 22 There's a lot of reasons people purchase a car. In fact, in
15:57:52 23 plaintiffs' own complaint they make reference to a lot of
15:57:55 24 those reasons. And I'm quoting complaint paragraph 27, the
15:57:58 25 Hellcat's possessed 710HP was the, quote, "most powerful SUV

20

15:58:04 1 in the world, can carry more, tow more and go from zero to
15:58:08 2 60 in 3.5 seconds." And the complaint also makes reference
15:58:11 3 to how it's a muscle car in the body of a family SUV. There
15:58:17 4 are a million reasons why people in this class likely bought
15:58:21 5 this car and it's not limited to investment purposes.
15:58:25 6       And that kind of goes to the typicality argument
15:58:28 7 here, Your Honor, are the plaintiffs in this case, the class
15:58:33 8 representatives, claim that they are typical of the class
15:58:36 9 and they say they bought it for investment purposes. It's
15:58:39 10 highly unlikely that everyone in the class bought it for
15:58:43 11 that reasons. There was a litany of other reason why they
15:58:47 12 likely bought it. And these are individualized issues of
15:58:50 13 reliance which we're going to need to figure out for the
15:58:53 14 class members.
15:58:54 15       Next, Your Honor, with respect to how each class
15:58:57 16 member used or preserved the vehicle, if at all, that
15:59:00 17 matters for the damages analysis here. Did the plaintiffs,
15:59:06 18 the class members maintain their vehicle in the garage under
15:59:09 19 a tarp and never drive it? They drive it every day to work?
15:59:12 20 Did they take cross country trips with the family? Did they
15:59:16 21 beat it all for all intents and purposes? Those are going
15:59:20 22 to be very different factual inquiries that we're going to
15:59:24 23 need to delve into that are going to make it next to
15:59:27 24 impossible for the predominance issue here.
15:59:30 25       And then with respect to price differentials at

21

15:59:33    1    purchase, plaintiffs note in their complaint that they
15:59:35    2    bought the vehicle ranging from anywhere from 80,000 to
15:59:40    3    110,000.  And anyone that's ever bought a car knows there's
15:59:43    4    a lot that goes into that.  Did you get the same interior?
15:59:48    5    Where did you buy it?  Where in the country did you buy it
15:59:51    6    geographically?  Did you buy it in Kansas or New York City?
15:59:54    7    Did you go to the expensive dealership in town or did you go
15:59:57    8    to the cheaper one?  Did you try to negotiate or did you
16:00:00    9    just accept the price that they put in front of you?  These
16:00:03   10    are going to be questions that we're going to have to delve
16:00:07   11    into with respect to each of the individuals in order to
16:00:09   12    determine reliance and damages with respect to the claims
16:00:12   13    that are brought forth.  So it's not difficult, even at this
16:00:16   14    stage of the proceedings, to understand that the individual
16:00:18   15    facts and legal issues will predominate over any common
16:00:22   16    proof sufficient to certify a class.
16:00:24   17             And Your Honor, plaintiffs' only opposition to
16:00:27   18    this argument, they don't even necessarily disagree with
16:00:29   19    that article, they just say it's premature to do that, to
16:00:33   20    have that analysis right now and should wait for class
16:00:36   21    certification.  And while striking allegations is not
16:00:38   22    necessarily common at this stage, it does occur when it's
16:00:42   23    clear that individual fact issues of reliance and the
16:00:44   24    idiosyncratic reasons for purchasing a vehicle and what each
16:00:47   25    purchaser actually did with their vehicle will predominate

22

16:00:51    1    over any commonality of proof.  And here those circumstances
16:00:54    2    exist.  Again, typicality and commonality.  Aside from the
16:00:57    3    fact that they all purchased the same vehicles, the named
16:01:00    4    plaintiffs are not expected to be the same as most of the
16:01:03    5    people in this class.  Plaintiffs here allege they were
16:01:06    6    motivated to purchase the vehicle as an investment.  Most
16:01:08    7    people in the class, though, were likely motivated by
16:01:11    8    various other reasons such as it's a family SUV, a muscle
16:01:14    9    car, the quote I used earlier, the specific statements that
16:01:17   10    they made in complaint paragraph 27.  And determining what's
16:01:21   11    common between each individual in the class is a hopeless
16:01:24   12    endeavor that plaintiffs want the Court to overlook.
16:01:30   13             And with respect to predominance, Your Honor,
16:01:33   14    here, again, there's no -- first off, there's no uniform
16:01:37   15    misrepresentation, no single ad that everyone pleads that
16:01:41   16    they saw.  Plaintiffs cite to a handful of statements by
16:01:44   17    FCA, but don't tie a single plaintiff to any of them.  And
16:01:46   18    whether and how any other class members saw the statements,
16:01:49   19    which ones and how it impacted their decision to purchase
16:01:52   20    the vehicle, is a very idiosyncratic and not appropriate --
16:01:57   21    idiosyncratic methodology for determining all this and not
16:02:01   22    appropriate for a class action.
16:02:03   23             Additionally, plaintiffs are seeking money
16:02:05   24    damages.  Therefore, the differences in prices paid and the
16:02:07   25    context surrounding why they paid as much as they did, such

23

16:02:11    1    as geographical considerations, dealer negotiations, will
16:02:15    2    become issues that will be different for each of the
16:02:17    3    perspective class members.  And what is more, no plaintiff
16:02:20    4    has alleged to have sold the vehicle or what diminution in
16:02:24    5    value they suffered when FCA manufactured the '23 model year
16:02:29    6    Hellcat.  Determining what, if any, damages resulted for
16:02:33    7    each customer further reflects why plaintiffs' class claims
16:02:36    8    are hopeless.  And from these various issues that exist, it
16:02:38    9    will be impossible for the plaintiffs to maintain any class
16:02:40   10    claims and therefore the class claims should be dismissed
16:02:44   11    now.
16:02:45   12             Moving onto the Article III standing.
16:02:49   13    Plaintiffs lack Article III standing to sue purchasers in
16:02:52   14    states they are not residents of.  Specifically for their
16:02:58   15    nationwide claims regarding breach of express warranty,
16:03:02   16    unjust enrichment, negligent misrepresentation and New
16:03:07   17    Jersey, Florida consumer fraud claims.  The Third Circuit
16:03:10   18    has held that standing requires a party seeking federal
16:03:14   19    jurisdiction to demonstrate standing for each claim.  That's
16:03:19   20    from *Neale v. Volvo*, Third Circuit 2015, and *DaimlerChrysler*
16:03:21   21    *v. Cuno*, U.S. Supreme Court 2006.  And this is required in
16:03:24   22    the class action context as well.  *In re Horizon Healthcare*,
16:03:28   23    Third Circuit 2017, and *In re Sensipar*, District of Delaware
16:03:32   24    2022, where the Court dismissed complaint for nationwide
16:03:35   25    class claims brought outside the 15 states where class

24

16:03:38    1    representatives resided, because class representatives must
16:03:42    2    show actual personal injury.  Where they failed to
16:03:45    3    demonstrate that, the nationwide class claims must be
16:03:48    4    dismissed.
16:03:49    5             Plaintiffs' point to Third Circuit split
16:03:51    6    concerning the proper analysis of raising these claims under
16:03:53    7    other state laws and whether it's appropriate to have such
16:03:57    8    arguments until class certification stage, the Court is not
16:04:01    9    mandated to wait until class certification stage and courts
16:04:02   10    have held that it should only make a ruling to standing if
16:04:04   11    plaintiff can show present redressable injury and here
16:04:08   12    there's just no redressable injury that exists.
16:04:14   13             Your Honor, I'd also like to refer to *Tijerina*
16:04:19   14    *v. Volkswagen Group of America*.  We didn't cite this in our
16:04:20   15    pleadings, but this has actually been decided since we filed
16:04:22   16    last year.  District of New Jersey, October 2023, where the
16:04:27   17    Court used *In re Sensipar* to support the finding that
16:04:31   18    plaintiffs lack standing to bring state specific claims
16:04:32   19    outside the 11 states they represented and that the
16:04:35   20    purported nationwide claims premised on the laws of
16:04:38   21    unrepresented states do not present a valid case or
16:04:42   22    controversy under Article III.
16:04:46   23             Your Honor, with respect to the remainder of our
16:04:49   24    arguments, these are much faster.
16:04:52   25             THE COURT:  Well, let me just ask you before you

25

16:04:54 1 move on from that.

16:04:56 2        MR. ROFFE:  Sure.

16:04:57 3        THE COURT:  So they're not trying to bring --

16:05:01 4 Count 1 is violation in the New York law.  They're only

16:05:04 5 bringing that on behalf of the New York subclass, and so on

16:05:08 6 through the state laws.  The only one where they want a

16:05:13 7 nationwide class action is breach of warranty, and that's an

16:05:23 8 allegation that's got -- that's a claim in every state,

16:05:26 9 right, in the country, breach of warranty?

16:05:31 10        MR. ROFFE:  I believe, so, Your Honor, yes.

16:05:33 11        THE COURT:  Okay.  So are these ones you're

16:05:35 12 talking about really applicable?

16:05:36 13        MR. ROFFE:  Well, Your Honor, the Third Circuit

16:05:38 14 has deemed that Article III standing can be decided at this

16:05:41 15 point in time.  Again, I refer to Your Honor to *Neale v.*

16:05:46 16 *Volvo, In re Horizon Healthcare, In re Sansipar,* where they

16:05:50 17 made this exact determination.

16:05:51 18        THE COURT:  Well, in those cases -- gosh, I

16:05:53 19 haven't looked at some of them in a while, but they were

16:05:57 20 claims brought under individual state law statutes, and the

16:06:02 21 Court said you can't have a plaintiff from Texas represent

16:06:08 22 somebody who is bringing a claim under a Virginia statute.

16:06:12 23 But that's not what we're talking about here.  They're

16:06:15 24 trying to bring the nationwide class action claim as a

16:06:18 25 breach of contract.  That's just a choice of law issue,

26

16:06:22 1 right, not an issue about standing?

16:06:24 2        MR. ROFFE:  Well, Your Honor, I believe they go

16:06:26 3 hand in hand.  They -- my understanding is they brought

16:06:31 4 these -- they lacked standing with respect to the breach of

16:06:34 5 express warranty.  The nationwide claims include the breach

16:06:39 6 of express warranty, the unjust enrichment, negligent

16:06:41 7 misrepresentation, and the New Jersey and Florida consumer

16:06:43 8 fraud claims.  And here, Your Honor, the breach of express

16:06:48 9 warranty, you're right, that is -- they are trying to

16:06:53 10 represent representatives in states that are not anywhere

16:06:56 11 near here.  They do not stand in their shoes with respect to

16:06:59 12 these claims.  Also, I'm going to get into the breach of

16:07:04 13 express warranty, unjust enrichment, negligent

16:07:04 14 misrepresentation claims.

16:07:05 15        THE COURT:  Okay.

16:07:05 16        MR. ROFFE:  And if those claims, they don't

16:07:07 17 satisfy those here, they can't possibly have nationwide

16:07:10 18 status.

16:07:12 19        Moving on to that, Your Honor, I guess I will

16:07:15 20 start at breach of express warranty claim.  The oral

16:07:22 21 affirmations -- plaintiffs say that oral affirmations made

16:07:24 22 in the articles and the video qualify as oral affirmations

16:07:28 23 of express warranty between the parties.  But oral

16:07:33 24 affirmations here are expressly precluded by the terms of

16:07:37 25 FCA's written warranty, which is attached as Exhibit D to

27

16:07:37 1 FCA's motion.  The -- and I'm going to read -- the first

16:07:42 2 line from that warranty says exactly this:  "The warranties

16:07:46 3 contained in this booklet are the only express warranties

16:07:48 4 that FCA US, LLC, makes for your vehicle.  Each relevant

16:07:53 5 statement here holds that such limiting language is

16:07:55 6 enforceable."  And because the written warranty here does

16:07:58 7 not say that no model other than the 2021 vehicle will be

16:08:02 8 produced, the claim that an additional express warranty was

16:08:05 9 created must be dismissed.

16:08:08 10        With respect to plaintiffs' negligent

16:08:11 11 misrepresentation claim Count 7, first, the claim is not

16:08:16 12 recognized in Virginia, Your Honor, and plaintiffs

16:08:18 13 acknowledge -- concede that in their opposition, so that

16:08:22 14 claim can be dismissed.  But with respect to all other

16:08:25 15 states, they require a pleading with particularity.  Fraud

16:08:29 16 by hindsight is insufficient.  And here all the allegations

16:08:32 17 on this topic, as we've covered, are conclusory assertions.

16:08:37 18 There's no mention made of specific statements that were

16:08:39 19 made, when they heard or saw them, and where it was, whether

16:08:42 20 it was before the purchase of the vehicle or whether such

16:08:46 21 specific statement caused the reliance.  The opposition

16:08:50 22 simply points to their state consumer fraud claims as

16:08:56 23 providing sufficient particularity.  But the negligent

16:08:56 24 misrepresentation claim is not identical to those claims.

16:09:00 25 There are different factors that are involved.  States have

28

16:09:03 1 different elements that need to be pled, such as does

16:09:07 2 defendant have a duty to act with care, no reasonable ground

16:09:12 3 for believing the statement to be true, and that plaintiffs

16:09:14 4 reasonably relied upon statements.  Plaintiff doesn't seek

16:09:18 5 to address any of these differences and nor do they

16:09:18 6 demonstrate how their pleading fulfill such requirements.

16:09:22 7 So on that basis alone, that should be dismissed.

16:09:24 8        And moving on to the unjust enrichment claim,

16:09:27 9 Your Honor, Count 11, it's also not properly pled.  It is

16:09:31 10 governed by fraud pleading standard Rule 9B as well, and for

16:09:34 11 the reasons already covered, plaintiffs failed to plead

16:09:37 12 sufficient details.  But putting that to the side, quasi

16:09:40 13 contract claims are not permissible when a written contract

16:09:44 14 exists.  Here the express warranty is a written contract

16:09:47 15 that controls.  Additionally, this claim is duplicative of

16:09:50 16 the other claims already raised, fraud, breach of warranty,

16:09:53 17 consumer protection claims.  An inequitable claim is not

16:09:59 18 actionable when the plaintiff bases it on the same facts as

16:10:02 19 breach of warranty, fraud, and consumer state protection

16:10:05 20 claims.

16:10:05 21        And, Your Honor, I also just want to point out,

16:10:07 22 in support of the sufficiently pled argument for unjust

16:10:16 23 enrichment, plaintiffs assert that the New Jersey federal

16:10:16 24 court case, *Dzielak v. Whirlpool,* District of New Jersey

16:10:17 25 case 2024, supports their position that it is a sufficiently

29

16:10:21 1    pled claim.  But plaintiffs also failed to note that in that
16:10:24 2    case the Court dismissed unjust enrichment cause of action
16:10:29 3    against the manufacturer Whirlpool, and only allowed it to
16:10:32 4    survive against Third Party retailers.  The Court stated in
16:10:35 5    its decision, "When consumers purchase a product from a
16:10:38 6    third party, they confer a benefit on that third party, not
16:10:41 7    on the manufacturer.  And each plaintiff paid the purchase
16:10:43 8    price to one of the retailer defendants, not to Whirlpool.
16:10:46 9    They did not confer a sufficiently direct benefit on
16:10:49 10   Whirlpool to support an unjust enrichment claim."
16:10:53 11          For that reason, Your Honor, the unjust
16:10:53 12   enrichment claim should be dismissed as well.
16:10:56 13          THE COURT:  All right.  Thank you very much.
16:10:59 14          MR. ROFFE:  Thank you, Your Honor.
16:11:10 15          MR. GRAIFMAN:  Good afternoon, Your Honor.  Gary
16:11:13 16   Graifman from Kantrowitz, Goldhamer & Graifman.
16:11:16 17          I'm going to mix my argument up a little,
16:11:19 18   because I'm going to start with the class allegation section
16:11:23 19   that my colleague had been talking about about, even though
16:11:30 20   originally I wasn't going to do that, just to try to get
16:11:32 21   that straight.
16:11:32 22          Okay.  So the claims that we bring with regard
16:11:36 23   to the consumer fraud or consumer protection statutes, those
16:11:40 24   statutes were designed to allow consumers to sue for
16:11:45 25   deceptive or unconscionable conduct that occurs without

30

16:11:50 1    having to meet the standard of a common law fraud claim,
16:11:54 2    which would require intent, reliance.  Virtually all of
16:12:01 3    these consumer fraud claims, including the New York GBL, the
16:12:07 4    New Jersey consumer fraud statute, the Florida productive
16:12:10 5    statute and the CRA all use an objective reasonable person
16:12:14 6    standard.  That is, that if a reasonable consumer would deem
16:12:17 7    the statement or conduct deceptive, that is a violation of
16:12:21 8    the act.  So the argument that we have look at each person
16:12:28 9    in a subjective reason that they may have purchased a car,
16:12:32 10   maybe they liked the color, the interior, the horsepower,
16:12:36 11   those are not issues in a statutory consumer fraud case.
16:12:40 12   They may be issues in a common law consumer fraud case.  But
16:12:43 13   if that were the case, you would never have a consumer
16:12:48 14   protection act claim certified, it just wouldn't happen, but
16:12:52 15   they are commonly certified because we use an objective
16:12:55 16   reasonable consumer standard.  So that's one thing I want to
16:13:00 17   make clear.
16:13:00 18          The other thing is with regard to damages on a
16:13:03 19   class wide basis, what my colleague is saying, well, you
16:13:07 20   need to determine how much each person bought the car, what
16:13:10 21   did they do it, did they run it into the ground, did they
16:13:14 22   take care of it, et cetera, et cetera.  The damages in these
16:13:17 23   cases are price premiums that are paid by people because of
16:13:21 24   the deception that is put out into the marketplace to induce
16:13:24 25   them to buy the car.  That is the damage.  The case is very

31

16:13:27 1    clear that price premium is a cause of damage.  And more to
16:13:31 2    the point, it's a damage that occurs at the point of
16:13:34 3    purchase.
16:13:34 4          THE COURT:  That's a good -- as long as we're on
16:13:37 5    that then.  So when that case -- this defendant is not an
16:13:41 6    appropriate defendant for your unjust enrichment claims
16:13:47 7    since the price premium went to the dealership, right, not
16:13:51 8    the manufacturer?
16:13:53 9          MR. GRAIFMAN:  In California you can sue the
16:13:53 10   manufacturer because the manufacturer is ultimately the
16:13:54 11   beneficiary of the purchase price.  In New York, and I
16:14:00 12   believe in Florida, I know -- I don't think that the
16:14:02 13   manufacturer would be suable on the unjust enrichment claim.
16:14:07 14          THE COURT:  I thought you were alleging people
16:14:09 15   were paying over sticker --
16:14:11 16          MR. GRAIFMAN:  Yeah, they were.
16:14:12 17          THE COURT:  Yea, but that goes to a dealership,
16:14:14 18   right, not to a car manufacturer?
16:14:17 19          MR. GRAIFMAN:  Well, the manufacturer gets paid
16:14:19 20   more because of the price premium.
16:14:21 21          THE COURT:  Is that true?  I don't know that to
16:14:24 22   be true.
16:14:25 23          MR. ROFFE:  That's the allegation.
16:14:27 24          THE COURT:  Does it have any basis in reality?
16:14:29 25          MR. GRAIFMAN:  In California you can do it.

32

16:14:31 1          THE COURT:  Well, no, in California a car
16:14:35 2    manufacturer, the dealerships send the extra money they get
16:14:37 3    to the car manufacturer?
16:14:39 4          MR. GRAIFMAN:  No, I'm saying you can bring a
16:14:41 5    claim against the manufacturer.
16:14:42 6          THE COURT:  Right.  That's if the manufacturer
16:14:43 7    is making more money due to the premium.  Here you're
16:14:47 8    alleging that they're paying more -- the context of this is
16:14:49 9    cars on a lot at a dealership.
16:14:52 10          MR. GRAIFMAN:  I would think that would be a
16:14:54 11   matter of discovery.  I mean, giving all reasonable
16:14:56 12   inferences to us on a motion to dismiss, we should certainly
16:15:00 13   be entitled to that inference.
16:15:02 14          But with regard to the class claims on price
16:15:05 15   premium, those would be against the manufacturer because
16:15:08 16   they're the ones making the allegation.  And I'm focusing,
16:15:11 17   I'm sorry -- for the consumer fraud claims here.
16:15:14 18          THE COURT:  Okay.  So just to make sure we're
16:15:17 19   clear then.  For the unjust enrichment for all of the states
16:15:21 20   except for California, only in California can you pursue
16:15:24 21   unjust enrichment based on a price premium?
16:15:28 22          MR. GRAIFMAN:  I believe so, yes.
16:15:31 23          THE COURT:  All right.  Hold on.  Okay.  Thank
16:15:31 24   you.
16:15:43 25          MR. GRAIFMAN:  Should I continue?

33

16:15:44 1    THE COURT:  Yes.

16:15:47 2    MR. GRAIFMAN:  I mean, with regard -- while
16:15:51 3    we're on the subject, with regard to the sticker price, I
16:15:53 4    mean, if there's an inflated amount on the sticker price,
16:15:57 5    then obviously the manufacturer is going to get a portion of
16:15:59 6    that.  That would be the argument.  Now discovery will tell
16:16:03 7    us whether, in fact, that was the case.

16:16:05 8    THE COURT:  Okay.

16:16:06 9    MR. GRAIFMAN:  With regard to damages, again,
16:16:07 10   focusing at the moment on the consumer fraud claims or the
16:16:10 11   consumer protection claims, typically in cases what we do is
16:16:13 12   what we call a conjoined analysis which tries to -- an
16:16:16 13   economic expert, through surveys, isolates the value of
16:16:21 14   this -- of the different material aspects of the vehicle.
16:16:24 15   And one of those aspects in this particular case would be
16:16:27 16   that this was a single-run, limited edition and the fact
16:16:32 17   that consumers put a value on that.  And that can be determined
16:16:36 18   through a conjoined-based analysis, which is very typical
16:16:39 19   and has been proved in these types of cases.  The reason we
16:16:43 20   use a conjoined analysis for damages is because that, again,
16:16:49 21   is not dependent on a particular person and it's this class
16:16:54 22   wide methodology of proving damages.  So the idea that, you
16:16:58 23   know, somebody may have driven the car one way or the other
16:17:02 24   doesn't really effect that.  So I just wanted to discuss a
16:17:06 25   couple of the issues that were raised with regard to a

34

16:17:09 1    portion of the motion to strike the class allegations,
16:17:11 2    because that is why courts don't strike the class
16:17:13 3    allegations at the beginning of the case unless it's very
16:17:16 4    clear from the face of the complaint, which is very unusual
16:17:19 5    that it would be, that those allegations can't proceed.  And
16:17:24 6    we would certainly contend that that's not the case here,
16:17:27 7    Your Honor.

16:17:29 8    So just if I can now move on to the arguments
16:17:35 9    with respect to the complaint itself.  So the CEO, Mr.
16:17:45 10   Kuniskis, presented the Hellcat Durango clearly stating
16:17:50 11   that, quote, "the Hellcat Durango will be a single model
16:17:54 12   year run."  That's not a prediction in the future.  That's a
16:17:59 13   statement of fact.  He was actually stating that this year's
16:18:02 14   run will be the last run.

16:18:03 15   THE COURT:  Is that a statement of fact or is
16:18:06 16   that a promise about something that's going to happen in the
16:18:09 17   future?

16:18:10 18   MR. GRAIFMAN:  Well, this was in July when they
16:18:11 19   were introducing their line, so this was the actual vehicle.

16:18:14 20   THE COURT:  Oh, yeah, no, absolutely.  If they
16:18:18 21   had never made one in 20 -- made the new one in 2023, we
16:18:23 22   wouldn't be here right now, right, because --

23   MR. GRAIFMAN:  Correct.

16:18:26 24   THE COURT:  So it's basically -- it has to do
16:18:29 25   with something that's going to happen in the future.

35

16:18:32 1    MR. GRAIFMAN:  No, no.  The misrepresentation,
16:18:33 2    though, was a misrepresentation that this vehicle that we
16:18:36 3    are producing is going to be the only that we're producing,
16:18:38 4    it's going to be a six-month run, we're producing 2,000,
16:18:42 5    eventually went to 3,000.  If you want one, you got to get
16:18:46 6    it now, and dealers are going to be selling out today.

16:18:50 7    THE COURT:  Right.  But that's talking about
16:18:51 8    something that's isn't going to happen in the future.

16:18:54 9    MR. GRAIFMAN:  It's not a prediction.  I mean,
16:18:56 10   the cases that they cite are --

16:18:56 11   THE COURT:  Agreed.  The cases they cite are
16:18:58 12   different because they weren't in control of what was going
16:19:01 13   to happen and here they're in control.  But they are in
16:19:02 14   control and it really is just a promise that we're not going
16:19:06 15   to make it again, because if they had never made it again,
16:19:07 16   there would be no problem with that statement.

16:19:09 17   MR. GRAIFMAN:  They wouldn't have lied then,
16:19:10 18   they would have told the truth.

16:19:12 19   THE COURT:  They would have made good on a
16:19:14 20   promise.

16:19:14 21   MR. GRAIFMAN:  They would have made good a
16:19:16 22   promise.

16:19:16 23   THE COURT:  Right.  You see where I'm going to
16:19:18 24   with this, though.  This is a promise.  Do you have any case
16:19:22 25   where someone has stated or made out a state law consumer

36

16:19:27 1    protection or false advertising claim when the statement has
16:19:30 2    to do with a promise to do or not do something in the
16:19:34 3    future, not a statement about the quality or the
16:19:38 4    characteristics of the goods?

16:19:40 5    MR. GRAIFMAN:  Yeah, I mean.  The reason we cite
16:19:46 6    the *Poullin v. Ford Motor Company* case, even though my
16:19:51 7    adversary point out it's a Vermont case, is because it's
16:19:53 8    exactly on point.  There a person was promised that he was
16:19:56 9    going to buy a limited edition pacer car that was a model
16:20:00 10   that was used for, you know, pace the Indianapolis 500,
16:20:05 11   he buys the car, pays full price for it, he pays what he
16:20:09 12   says was over the market value, it turns out that they
16:20:11 13   flooded the market with the same car, the price went down
16:20:15 14   and he sued.  And the Vermont Supreme Court said, yes, you
16:20:19 15   have a consumer fraud claim because they made a
16:20:22 16   representation that this was going to be a limited edition
16:20:25 17   model just like here.  And that was -- turned out to be
16:20:28 18   deceptive.  Deceptive.

16:20:30 19   THE COURT:  So, I recall that case.  You don't
16:20:33 20   have a Vermont plaintiff, though, do you?

21   MR. GRAIFMAN:  Well --

16:20:35 22   THE COURT:  No.

16:20:35 23   MR. GRAIFMAN:  It's a consumer fraud claim.
16:20:38 24   They're all based on reasonable consumer not -- what would a
16:20:41 25   reasonable consumer consider deceptive.

37

| | |
|---|---|
| 16:20:44 | 1    THE COURT:  Isn't counsel right, though, that |
| 16:20:46 | 2    reading between the lines in that case, that statement was |
| 16:20:49 | 3    false when it was made because it wasn't already rare, |
| 16:20:52 | 4    wasn't it?  I mean, I read that case.  It was the next month |
| 16:20:55 | 5    they saw a bunch of cars driving around suggesting that the |
| 16:20:59 | 6    statement was false when it was made, because it wasn't rare |
| 16:21:03 | 7    when it was built. |
| 16:21:03 | 8    MR. GRAIFMAN:  Well, in this case they make the |
| 16:21:04 | 9    statement and apparently in their own papers show this, that |
| 16:21:08 | 10   they engineers were working on getting over the evaporative |
| 16:21:12 | 11   emissions issue that they claim was going to prevent them |
| 16:21:15 | 12   from making the next model.  It took them a little while to |
| 16:21:19 | 13   do.  In fact, one of the things that Kuniskis says is that |
| 16:21:21 | 14   the engineers had some time to work on it. |
| 16:21:26 | 15   THE COURT:  That's actually interesting, right? |
| 16:21:29 | 16   So if you had facts about that alleged in the complaint that |
| 16:21:33 | 17   they were already starting to work on putting together a new |
| 16:21:36 | 18   model, this would be a different case, because then you |
| 16:21:39 | 19   would be saying he was telling people this is only going to |
| 16:21:43 | 20   be a one year model, meaning -- in other words, we're not |
| 16:21:47 | 21   going to make it again.  And if he, in fact, had the |
| 16:21:51 | 22   opposite intent that they intended on make it again, that |
| 16:21:54 | 23   actually could be a false statement.  You're saying we're |
| 16:21:57 | 24   going to in future, but you have that opposite intent.  But |
| 16:22:01 | 25   I didn't see those facts alleged. |

38

| | |
|---|---|
| 16:22:03 | 1    MR. GRAIFMAN:  Well, we do say in the complaint, |
| 16:22:05 | 2    actually multiple points, that defendants failed to disclose |
| 16:22:10 | 3    two class members and consumers who purchased the model year |
| 16:22:15 | 4    2021 Hellcat vehicles, that they were not a single -- a |
| 16:22:18 | 5    single-year limited edition run despite the fact that |
| 16:22:22 | 6    defendants were aware that the 2021 Hellcat vehicles would |
| 16:22:26 | 7    not be limited edition runs.  So we do allege that they knew |
| 16:22:30 | 8    that it wasn't going to be. |
| 16:22:31 | 9    THE COURT:  At the time that statement was made, |
| 16:22:33 | 10   that alleges that? |
| 16:22:34 | 11   MR. GRAIFMAN:  I'm looking at this particular |
| 16:22:36 | 12   one.  It's paragraph 64B.  So I mean, it's not as fleshed |
| 16:22:41 | 13   out.  I agree with Your Honor, it's not as fleshed out as it |
| 16:22:44 | 14   could be, but again, we would put out that we are entitled |
| 16:22:49 | 15   to reasonable inferences on a motion to dismiss.  And we |
| 16:22:51 | 16   certainly could amend the complaint to add it, because it's |
| 16:22:54 | 17   also in our brief that we say that, "given the ramp up for |
| 16:22:59 | 18   production is at least a year or more, planning for |
| 16:23:02 | 19   production of the 2023 vehicle would have commenced much |
| 16:23:06 | 20   earlier than the announcements.  And while FCA was selling |
| 16:23:09 | 21   the, quote, 'one year limited,' closed, quote, 2021 model." |
| 16:23:14 | 22   And that is something that we allege. |
| 16:23:16 | 23   THE COURT:  That would make it a different case. |
| 16:23:18 | 24   MR. GRAIFMAN:  Yeah. |
| 16:23:19 | 25   THE COURT:  Because I didn't take that from |

39

| | |
|---|---|
| 16:23:21 | 1    your -- |
| 16:23:21 | 2    MR. GRAIFMAN:  Yeah.  That was in the brief on |
| 16:23:22 | 3    page 3. |
| 16:23:23 | 4    THE COURT:  Instead you say in response to their |
| 16:23:29 | 5    argument that you haven't alleged a misrepresentation, you |
| 16:23:40 | 6    say, we did because they had a duty to disclose that the |
| 16:23:46 | 7    Hellcat was not a single-year production run, but nowhere do |
| 16:23:51 | 8    you say that they said that thinking it was false. |
| 16:23:54 | 9    MR. GRAIFMAN:  Well, again, "defendants, either |
| 16:23:56 | 10   directly or through agents, failed to disclose to class |
| 16:23:59 | 11   members and consumers who purchased the model year 2021 |
| 16:24:03 | 12   Hellcat vehicles that they were not a single-year, limited |
| 16:24:06 | 13   edition run despite the fact that defendants, either |
| 16:24:07 | 14   directly or through agents, were aware that the 2021 Hellcat |
| 16:24:11 | 15   vehicles would not be a limited edition single run that was |
| 16:24:14 | 16   limited to the model year 2021."  So we do allege that they |
| 16:24:19 | 17   knew it at the time.  But again, I think we could flesh it |
| 16:24:23 | 18   out with regard to the fact that they were working on and |
| 16:24:26 | 19   the general production chronology or span for production |
| 16:24:32 | 20   would require at least two years.  I mean, they were working |
| 16:24:35 | 21   on this emissions thing and he says they needed time in his |
| 16:24:39 | 22   own article. |
| 16:24:40 | 23   The other part of the omissions claim, though, |
| 16:24:44 | 24   that's related to that is that we allege that they made this |
| 16:24:48 | 25   representation and they hid the fact that they were |

40

| | |
|---|---|
| 16:24:53 | 1    reserving the right to renege on the promise that they made |
| 16:24:57 | 2    and that they could produce another version.  In other |
| 16:25:00 | 3    words, they said get this car now, it's the only one, we're |
| 16:25:04 | 4    closing the books after this year, if you don't get it |
| 16:25:06 | 5    you're not going to get a chance to get it.  That's what he |
| 16:25:10 | 6    was saying.  And he didn't say, and by the way, we're |
| 16:25:13 | 7    reserving the right.  We may do another on if we can figure |
| 16:25:16 | 8    out what it's doing.  And if he said that, what do you think |
| 16:25:17 | 9    would happen to the price? |
| 16:25:18 | 10   THE COURT:  I understand your view about what |
| 16:25:21 | 11   happened to the price.  I don't know that that's |
| 16:25:24 | 12   misstatement.  I understand that people are ticked and I |
| 16:25:26 | 13   understand why.  What I don't know if if it states deceptive |
| 16:25:32 | 14   trade practices, if what they said at the time they believed |
| 16:25:38 | 15   to be true.  And so that's where I'm struggling.  But if |
| 16:25:40 | 16   you've got other facts you can allege suggesting that may |
| 16:25:44 | 17   not be the case, maybe you have a case that can at least go |
| 16:25:48 | 18   forward in discovery. |
| 16:25:49 | 19   MR. GRAIFMAN:  And as I said, you know, the fact |
| 16:25:49 | 20   that we -- we say it in our brief, that given the ramp up |
| 16:25:50 | 21   for production is at least a year or more, planning for |
| 16:25:55 | 22   production of the 2023 model would commence earlier than the |
| 16:25:55 | 23   announcement.  So I mean, if we were to put that in the |
| 16:26:00 | 24   complaint -- by the way that is a subject of discovery, |
| 16:26:03 | 25   obviously.  I mean, we're going to depose their engineers |

41

```
16:26:06   1   and engineering department to find out when did they start
16:26:09   2   preparing this, when did they first start sending memos
16:26:13   3   about what they thought they could do to get this back into
16:26:13   4   production.  It's one thing for them to say in a brief,
16:26:16   5   yeah, we didn't start until after, we didn't know anything
16:26:19   6   about it.  It's another thing to actually do the discovery
16:26:22   7   and get to the bottom of it.  And we do believe that we'll
16:26:27   8   sufficiently allege it in the complaint.  And in the brief
16:26:30   9   we tried to flesh it out a little more.
16:26:34  10            With regard to reliance, I just want to -- my
16:26:37  11   colleague here talked about reliance.  Just to be clear,
16:26:41  12   reliance is not required under the New York GBL, it's not
16:26:45  13   required under the Florida -- the cases are very clear on
16:26:50  14   that and not required under the New Jersey consumer fraud
16:26:53  15   act.  So reliance, meaning that I saw an article and I
16:26:56  16   relied on that article, is not an issue.
16:26:59  17            Causation is an issue, but causation is the
16:27:03  18   broader concept, is not reliance.  Causation means that the
16:27:10  19   deceptive conduct caused me damage.  That's what we allege
16:27:12  20   in the complaint.  We allege that there was a deception,
16:27:15  21   this is going to be a one-year run, it's a limited edition,
16:27:20  22   pay your inflated price and then find out that, in fact,
16:27:24  23   that's not the case and as a result of that you were caused
16:27:27  24   damage, which is different than reliance, right?  So in
16:27:31  25   those states reliance is not required.  In California
```

42

```
16:27:35   1   reliance is required, but it can be presumed if a party has
16:27:39   2   a duty to speak.  And one of those basis is a partial
16:27:44   3   statement that the speaker knows there's a material fact
16:27:47   4   that would make the statement true, but is left out and is a
16:27:54   5   partial statement, like we're going to be producing this car
16:27:58   6   for six months, it's a limited edition, but we're probably
16:28:00   7   going to be doing another one in two years.  That would be
16:28:03   8   where reliance is presumed.  And particularly where the
16:28:06   9   person has superior knowledge, which obviously FCA would
16:28:10  10   have in this case and consumers would not know their
16:28:13  11   internal plans.  So that was the only thing that would be
16:28:19  12   with respect to reliance.
16:28:21  13            With respect to the misrepresentations.  So, I
16:28:26  14   mean, again, you know, if they knew and they were working on
16:28:32  15   the evaporative emissions problem at the same time, that
16:28:36  16   would be a misrepresentation, but there's also two omissions
16:28:40  17   we are alleging in the complaint.  The omission obviously is
16:28:43  18   that they failed to disclose that they were working on and
16:28:46  19   would be producing a second version and a third version.
16:28:51  20   They also did it in 2024, they produced more of these
16:28:54  21   vehicles.  And again, as I said earlier, that the omission
16:28:59  22   is that -- we allege alternatively an omission that they
16:29:03  23   didn't reveal that they were reserving the right to renege
16:29:06  24   on the promise that they were making everybody.
16:29:09  25            THE COURT:  That's an interesting way of saying
```

43

```
16:29:11   1   if you've got a non-enforceable promise, to plead it to say,
16:29:15   2   well, the promise may not have been enforceable, but they
16:29:18   3   omitted the fact that they might have reneged on the
16:29:22   4   promise.  That can't be, but --
16:29:24   5            MR. GRAIFMAN:  We're not talking about a
16:29:26   6   contract here, because we're talking about a deceptive
16:29:29   7   practice or deceptive conduct and is it deceptive conduct to
16:29:33   8   give it that kind of half truth.  The reason I'm raising
16:29:38   9   this is that because omissions under the consumer fraud
16:29:40  10   statute are treated slightly differently than affirmative
16:29:41  11   misrepresentations, because it's an omission that no
16:29:48  12   particular specific advertisement or marketing documents
16:29:52  13   that you need to demonstrate existed that you relied on,
16:29:56  14   because it is an absence of reliance on a particular
16:30:00  15   document that's the omission.  So there's a broader category
16:30:04  16   with omissions in terms of what the courts allow in terms of
16:30:08  17   reliance.
16:30:10  18            With regard to the 9B pleading with
16:30:13  19   particularity, I mean, the standard is the who, what, when,
16:30:17  20   where, and how, right?  So who is very obvious.  FCA.
16:30:24  21   Where, in the video, in the advertisements, in all of the
16:30:27  22   marketing that they did.  I mean, this was a very big event.
16:30:31  23   They had this video presentation.  It was covered
16:30:34  24   extensively.  That's the how.  And certainly my adversaries
16:30:40  25   didn't have a problem finding the articles, because they put
```

44

```
16:30:43   1   them in their own exhibits, so the how is certainly there.
16:30:47   2   The what, I think we kind of beat that horse dead.
16:30:50   3   Basically they demonstrated that this was going to be a
16:30:54   4   limited edition, a single run for 2021 get, your car now or
16:30:59   5   you'll never be able to get it.  The where -- who, what,
16:31:04   6   when, where, how.  Oh.  Well, how, by making a
16:31:06   7   misrepresentation.  Obviously we allege they violated -- so,
16:31:13   8   I would contend that we have demonstrated, you know, with
16:31:17   9   sufficient particularity a 9B pleading, which is also, as
16:31:25  10   was acknowledged, was not required in New York.  It's a Rule
16:31:28  11   8 pleading, so that doesn't even apply to New York.
16:31:35  12            And with regard to the breach of warranty, so my
16:31:45  13   adversary was referring to the warranty booklet, but the
16:31:50  14   warranty booklet relates to the operation, the functioning
16:31:52  15   and the maintenance of the vehicle.  It doesn't refer to
16:31:55  16   affirmations of fact that were made in the marketing of the
16:31:58  17   vehicle that induced them to buy the car in the first place.
16:32:01  18   Those occurred before they bought the car.  Once they buy
16:32:05  19   the car, this is what they are relying on as to what your
16:32:11  20   rights are with regard to the car brakes down, if a part
16:32:14  21   brakes down, typically the warranty covers the manufacturing
16:32:18  22   and workmanship of the components and it excludes certain
16:32:25  23   components and certain matter of driving the vehicle and has
16:32:25  24   nothing to do with marketing or advertising the vehicle
16:32:31  25   before you actually bought it, to induce you to buy it.
```

45

| | |
|---|---|
| 16:32:33 | 1 And, in fact, you don't even see -- or maybe now you can on |
| 16:32:36 | 2 the internet, but usually you don't see the warranty booklet |
| 16:32:40 | 3 anywhere until the you buy the car and it's in the glove |
| 16:32:44 | 4 compartment or they hand it to you when they give you the |
| 16:32:48 | 5 keys. So this is a red herring clearly. |
| 16:32:50 | 6 THE COURT: Oh, well, wait a second about that. |
| 16:32:51 | 7 I guess I'm trying to understand, you're saying that -- a |
| 16:32:57 | 8 warranty -- breach of warranty, that's a contract claim. |
| 16:33:00 | 9 You're trying to say that the statements in the |
| 16:33:02 | 10 advertisement became part of the sales contract for the car? |
| 16:33:07 | 11 MR. ROFFE: Well, under the UCC, statements |
| 16:33:09 | 12 of affirmations of -- you know, statements made to induce |
| 16:33:16 | 13 you to purchase the car can be considered an express |
| 16:33:22 | 14 warranty that you -- you know, that this car is going to be |
| 16:33:27 | 15 a limited run is a statement that we contend is an express |
| 16:33:31 | 16 warranty that this is going to be a limited run. That's the |
| 16:33:36 | 17 warranty, not the warranty that the car was defective, and |
| 16:33:40 | 18 that there was a problem with the windshield or a problem |
| 16:33:43 | 19 with the timing chain. That would be covered under the |
| 16:33:47 | 20 booklet warranty, the vehicle warranty. The warranty was |
| 16:33:52 | 21 created by the market. They made a warranty. They made a |
| 16:33:56 | 22 claim. That's our express warranty claim in this case. So |
| 16:34:00 | 23 it's not covered in this book is my point. |
| 16:34:04 | 24 THE COURT: Okay. |
| 16:34:05 | 25 MR. GRAIFMAN: I don't know if -- I'm not |

46

| | |
|---|---|
| 16:34:18 | 1 sure -- I think that's all I have right now unless Your |
| 16:34:21 | 2 Honor has any questions. |
| 16:34:22 | 3 THE COURT: All right. The negligent |
| 16:34:24 | 4 misrepresentation. |
| 16:34:25 | 5 MR. GRAIFMAN: Right. |
| 16:34:28 | 6 THE COURT: You agree that there is no such tort |
| 16:34:33 | 7 in Virginia? |
| 16:34:36 | 8 MR. GRAIFMAN: Yeah, I think there's a certain |
| 16:34:37 | 9 state. |
| 16:34:37 | 10 THE COURT: Is there really a negligent |
| 16:34:39 | 11 misrepresentation case? What's negligent about it? |
| 16:34:42 | 12 MR. GRAIFMAN: I think it's a consumer fraud |
| 16:34:44 | 13 claim. |
| 16:34:45 | 14 THE COURT: Yeah, okay. All right. |
| 16:34:46 | 15 MR. GRAIFMAN: Yeah. |
| 16:34:47 | 16 THE COURT: Thank you very much. |
| 16:34:50 | 17 MR. GRAIFMAN: All right. Thank you. |
| 16:34:56 | 18 MR. ROFFE: Your Honor, I'm going to try to keep |
| 16:34:59 | 19 this as brief as possible. |
| 16:35:02 | 20 First, Your Honor, with respect to plaintiffs' |
| 16:35:06 | 21 comments about price premium. FCA, as Your Honor noted, |
| 16:35:11 | 22 they sell to dealers, they don't sell to consumers and the |
| 16:35:15 | 23 dealers get the premium. Here, they don't allege that FCA |
| 16:35:21 | 24 got such a premiums that the dealers actually received. For |
| 16:35:25 | 25 that reason, that claim is -- that should not be deemed |

47

| | |
|---|---|
| 16:35:30 | 1 sufficient. |
| 16:35:30 | 2 With respect to *Poullin*, the Vermont case, Your |
| 16:35:34 | 3 Honor properly note that in that case it was a current |
| 16:35:38 | 4 misrepresentation because the market was flooded one month |
| 16:35:42 | 5 later. Here that's not the case, as they've -- |
| 16:35:46 | 6 THE COURT: But you agree the Court in that case |
| 16:35:48 | 7 didn't make that entirely clear, but you could read the |
| 16:35:51 | 8 facts. |
| 16:35:52 | 9 MR. ROFFE: Yeah, the facts speak for |
| 16:35:54 | 10 themselves, Your Honor, in that case. |
| 16:35:55 | 11 THE COURT: Yeah. |
| 16:35:56 | 12 MR. ROFFE: And then with respect to plaintiffs' |
| 16:35:58 | 13 comment that they were -- knew at the time that they made |
| 16:36:01 | 14 the statements that they were false because they |
| 16:36:05 | 15 acknowledged -- there was an acknowledgment that they were |
| 16:36:07 | 16 working on a problem. Working on a problem does not equate |
| 16:36:12 | 17 with knowledge that they knew they were going to produce |
| 16:36:14 | 18 more of the vehicle. Again, if no one bought the vehicle, |
| 16:36:17 | 19 they would not have produced more of the vehicle, because |
| 16:36:20 | 20 that goes exactly to the consumer demand that is noted in |
| 16:36:23 | 21 the *Torque Report* article. |
| 16:36:24 | 22 Also, if COVID had continued to ravage |
| 16:36:28 | 23 production capabilities for a decade, who knows how long, |
| 16:36:30 | 24 they would not have been able to produce it again for an |
| 16:36:33 | 25 unknown amount of time, if at all. And those were issues |

48

| | |
|---|---|
| 16:36:36 | 1 that, just on the face of it, they're clearly -- they're |
| 16:36:41 | 2 statements about the future that were unknown at the time. |
| 16:36:46 | 3 With respect to plaintiffs' statement that |
| 16:36:48 | 4 causation is not the same thing as reliance, plaintiffs |
| 16:36:51 | 5 still have to plead causation sufficiently to have a claim |
| 16:36:57 | 6 here and they don't do so. I refer Your Honor to *In re* |
| 16:37:02 | 7 *Toshiba America*, District of New Jersey, September 11, 2009, |
| 16:37:05 | 8 where the Court set forth that "causation is insufficiently |
| 16:37:08 | 9 pled when the plaintiffs fail to allege where and when they |
| 16:37:11 | 10 made purchasers, how much they paid, how much the product |
| 16:37:15 | 11 they received was worth, and what risk representations were, |
| 16:37:18 | 12 and when the plaintiffs were supposed to them." They don't |
| 16:37:21 | 13 plead that here, Your Honor. And I'll also refer Your Honor |
| 16:37:26 | 14 to *Chimienti v. Wendy's International*. This has been |
| 16:37:27 | 15 decided since we filed. Eastern District of New York 2023. |
| 16:37:31 | 16 I'll give the cite, 698 F. Supp 3d 549. There, the Court |
| 16:37:38 | 17 cited to *Gail* case which we've cited to in our motion, to |
| 16:37:42 | 18 show plaintiff alleging misleading advertisements must also |
| 16:37:43 | 19 allege that they saw the comments before purchasing |
| 16:37:50 | 20 defendant's product. They also stated that the courts |
| 16:37:54 | 21 within the Second Circuit, quote, "regularly dismissed GBL |
| 16:37:54 | 22 claims brought by plaintiffs who did not allege they ever |
| 16:37:56 | 23 saw the advertisements and that they claimed were misleading |
| 16:38:00 | 24 before purchasing the advertised products." The Court |
| 16:38:02 | 25 ultimately granted motion to dismiss on this basis among |

49

16:38:05 1    others.

16:38:06 2    And with respect to plaintiffs' argument

16:38:10 3    regarding omissions. This is not an omissions lawsuit, Your

16:38:14 4    Honor. This is regarding affirmative misrepresentations

16:38:17 5    that they allege occurred. There is no reference to

16:38:20 6    omissions in the pleadings, as far as I have seen to date.

16:38:25 7    And with respect to their analysis of the who,

16:38:27 8    what, when, where, how, why. Again, they do not connect the

16:38:31 9    dots of who saw what, when did they see it, and how were

16:38:37 10   they actually damaged as a result. Again, this is a puzzle

16:38:41 11   pleading. They do not connect the necessary dots and they

16:38:45 12   expect FCA and the Court to do so for them and that's not

16:38:48 13   permissible under Rule 9B.

16:38:50 14   And lastly, Your Honor, with respect to express

16:38:53 15   warranty, they said it wasn't available before the purchase,

16:38:56 16   but that's incorrect. It's available on line, the same way

16:39:01 17   they said we could look up any article online, they can look

16:39:03 18   up the express warranty online at the time of purchase.

16:39:06 19   They could have checked that before they purchased the

16:39:08 20   vehicle to see what terms were going to apply on their

16:39:12 21   warranty to see, hey, does this say they're never going to

16:39:16 22   build this again. They didn't do that, and because they

16:39:18 23   didn't, they don't have a claim on that.

16:39:20 24   THE COURT: All right. Thanks very much.

16:39:22 25   MR. GRAIFMAN: Can I, just briefly?

50

16:39:24 1    THE COURT: Sure.

16:39:27 2    MR. GRAIFMAN: Again, with regard to damages,

16:39:31 3    price premium claim exists where -- and there are a lot of

16:39:35 4    cases on this, including *Edelman v. Sun Products*, which is

16:39:41 5    Second Circuit case from 2021. E-I-D-E-L-M-A-N, Sun

16:39:47 6    Products. The allegation is plaintiff would not have paid

16:39:49 7    the price he paid nor would he have purchased the vehicle at

16:39:52 8    all if he had known defendants were not, in fact, producing

16:39:55 9    and selling the Hellcat vehicle as a one-year limited

16:39:58 10   edition run for 2021. That is the type of allegation that

16:40:06 11   courts approve of as an allegation of injury based on price

16:40:10 12   premium.

16:40:11 13   THE COURT: All right. Thank you very much.

16:40:14 14   MR. GRAIFMAN: Thank you.

16:40:14 15   THE COURT: All right. Let me just, as long as

16:40:17 16   we're sitting right here, I'm going to tell you what I'm

16:40:19 17   thinking. We're going to go back and dig into the various

16:40:23 18   state law claims and try to sort some of this out. But to

16:40:28 19   the extent the Court dismisses any of the claims, the Court

16:40:32 20   will grant to leave to replead, so we're going to see each

16:40:37 21   other again, I imagine.

16:40:40 22   But my thinking is that the breach of express

16:40:46 23   warranty claims will be dismissed because of the disclaimer

16:40:50 24   that there are no additional warranties aside those set

16:40:54 25   forth in the sales contract and the warranty booklet.

51

16:40:56 1    The unjust enrichment claims, they're all going

16:41:00 2    to be dismissed certainly except for the California claim

16:41:00 3    based on counsel's representation here in the oral argument

16:41:11 4    today. We'll take a look at the California one. My

16:41:13 5    thinking, though, is that there's not enough in the

16:41:17 6    complaint to show that defendant FCA was unjustly enriched.

16:41:23 7    To the extent there was a premium paid, it would have gone

16:41:26 8    to the dealership. Maybe there can be facts alleged in the

16:41:30 9    amended complaint that suggest something different, but

16:41:30 10   that's what I'm thinking on that right now.

16:41:33 11   Negligent misrepresentation claims will be

16:41:33 12   dismissed. And I think plaintiff doesn't seriously dispute

16:41:37 13   that this is more of a consumer fraud case. And I don't see

16:41:40 14   the negligence here.

16:41:42 15   With respect to the consumer fraud claims, what

16:41:48 16   I was hearing today from counsel is a little bit different

16:41:52 17   than what I read in the complaint. What I was hearing today

16:41:55 18   was there were statements that this was going to be a

16:41:56 19   one-year model run with knowledge that that was not true

16:42:01 20   when the statement is made. That's a different claim than

16:42:04 21   what I think is currently alleged in the complaint, which is

16:42:08 22   they reneged. And I actually think it said reneged either

16:42:12 23   in the complaint or in the briefing. That's reneging on a

16:42:15 24   promise. That kicks us into a whole different world,

16:42:18 25   because that's a promise about what going to happen in the

52

16:42:21 1    future. And I agree with defendant that I didn't see any

16:42:24 2    cases that stood for the proposition that a promise not to

16:42:29 3    do something in the future could be the basis for a consumer

16:42:32 4    fraud claim except potentially that Vermont case, which I

16:42:36 5    did read before I came out here and I do think it's

16:42:39 6    distinguishable.

16:42:41 7    So just so you all know that's what I'm

16:42:45 8    thinking. It occurs to me, though, you all are going to

16:42:50 9    spend some money on repleading and moving to dismiss again.

16:42:54 10   It's unlikely that I'm going to strike the class allegations

16:42:57 11   at this stage. I'm not saying that a class could be

16:43:00 12   certified, and, in fact, I have serious concerns that even a

16:43:03 13   state-wide class can be certified much less a nationwide

16:43:07 14   class. It also occurs to me that we have a relatively

16:43:10 15   defined class and relatively cabined damages given that the

16:43:15 16   product was actually delivered. So I don't know how much

16:43:21 17   money you all want to spend moving forward in litigating

16:43:24 18   this case, but this seems like not a huge value case that we

16:43:29 19   want to be going through multiple rounds of motions to

16:43:32 20   dismiss. And maybe if you wanted me to see if I could get

16:43:37 21   it referred for mediation, that might be a good idea.

16:43:40 22   Does anybody have anything they want to say

16:43:43 23   about anything that I've said?

16:43:43 24   MR. GRAIFMAN: I would just say, you know, we're

16:43:48 25   always open to mediating if the defendants are, but I don't

53

16:43:52 1  know what their position is.

16:43:56 2        MR. GRAHAM:  We've had early neutral evaluations

16:43:58 3  of multiples cases, so sometimes it works really well.  I

16:43:59 4  think this -- today was a very good, you know, flushing out

16:44:04 5  of the issues and where we think this case may not have legs

16:44:07 6  and so we'd welcome the opportunity to speak to counsel

16:44:10 7  about that.

16:44:11 8        THE COURT:  Well, what would you say if I,

16:44:16 9  instead of -- I'm just trying to think of the most efficient

16:44:24 10  way so no one gets too deep invested into this and we've got

16:44:28 11  some room to potentially get it resolved.  One possibility

16:44:32 12  what I could do is stay the case now and refer it with the

16:44:35 13  idea that plaintiff would have leave to replead.  Part of

16:44:41 14  this is selfish, because to the extent the Court doesn't

16:44:45 15  have to spend resources, I've got another 300 pending

16:44:48 16  motions besides this one that I need to do.  So I'm happy to

16:44:52 17  rule on it.  I told you what I'm thinking.  We'll go back

16:44:53 18  and do the work, but you kind of know what I'm thinking how

16:44:56 19  it's going to come out.  What are you thinking?

16:44:58 20        MR. GRAHAM:  Well, Your Honor, if we'd have an

16:45:02 21  opportunity, maybe a week or so, just to confer with our

16:45:05 22  clients and then get back to this court.

16:45:07 23        THE COURT:  Okay.

16:45:08 24        MR. GRAHAM:  Via e-mail or a status notice.

16:45:10 25        THE COURT:  Why don't you all meet and confer

54

16:45:12 1  and give us a status letter within a week and then what I'll

16:45:17 2  do is I'll put -- I'll put the work on this on hold.  We've

16:45:22 3  got a bunch of trails come up.  If I hear from you that you

16:45:27 4  want a ruling, we'll put the ruling together, have you dial

16:45:30 5  in, read you what the ruling is.  Whatever it's going to be,

16:45:34 6  plaintiff is going to be granted leave to replead.  So

16:45:37 7  that's the spoiler.

16:45:39 8        All right.  So we'll look forward to getting a

16:45:42 9  letter from you in a week and then we'll see where you go

16:45:44 10  from there.

16:45:46 11        MR. GRAHAM:  Should we set this for Monday close

16:45:49 12  of business then?

16:45:49 13        THE COURT:  That would be perfect.  It's good to

16:45:51 14  see you all.  Take care.

16:45:55 15        (Court adjourned at 4:45 p.m.)

16

17

--------------------------------

18

19

        I hereby certify the foregoing is a true and

20  accurate transcript from my stenographic notes in the

proceedings.

21

22              /s/ Stacy M. Ingram, RPR
            Official Court Reporter

23              U.S. District Court

24

25

**'**

'22 [3] - 14:15, 14:20, 14:21
'23 [1] - 23:5
'one [1] - 38:21

**/**

/s [1] - 54:22

**1**

1 [1] - 25:4
101 [1] - 10:22
11 [3] - 24:19, 28:9, 48:7
110,000 [1] - 21:3
115 [1] - 11:25
117 [1] - 12:1
12 [1] - 11:22
12.1 [1] - 11:25
12F [1] - 18:5
15 [1] - 23:25
1965 [1] - 9:23
1986 [1] - 10:8
1992 [1] - 9:8

**2**

2,000 [1] - 35:4
20 [1] - 34:21
2006 [1] - 23:21
2009 [1] - 48:7
2011 [1] - 8:3
2015 [1] - 23:20
2016 [1] - 18:20
2017 [1] - 23:23
2020 [4] - 11:22, 13:3, 17:11, 17:15
2021 [14] - 3:25, 4:7, 5:2, 9:25, 27:7, 38:4, 38:6, 38:21, 39:11, 39:14, 39:16, 44:4, 50:5, 50:10
2022 [5] - 8:10, 12:7, 12:13, 17:12, 23:24
2023 [5] - 24:16, 34:21, 38:19, 40:22, 48:15
2024 [3] - 1:10, 28:25, 42:20
23 [4] - 1:10, 5:14, 18:8, 19:15
23(b)(3 [2] - 18:21, 18:25

23-251 [1] - 2:15
23-251-JLH [1] - 1:4
23A [1] - 18:12
27 [2] - 19:24, 22:10

**3**

3 [1] - 39:3
3,000 [1] - 35:5
3.5 [1] - 20:2
300 [1] - 53:15
36 [1] - 14:25
3:30 [1] - 1:10
3d [1] - 48:16

**4**

40-minute [1] - 14:25
4:45 [1] - 54:15

**5**

500 [1] - 36:10
549 [1] - 48:16

**6**

60 [1] - 20:2
64B [1] - 38:12
698 [1] - 48:16
6D [1] - 1:11

**7**

7 [1] - 27:11
710 HP [1] - 19:25

**8**

8 [1] - 44:11
80,000 [1] - 21:2
844 [1] - 1:13

**9**

9B [14] - 4:16, 4:20, 6:1, 6:14, 6:19, 7:14, 7:19, 8:5, 8:15, 18:2, 28:10, 43:18, 44:9, 49:13

**A**

ability [2] - 5:13, 19:14
able [4] - 9:17, 16:5, 44:5, 47:24
absence [1] - 43:14
absolutely [2] - 3:21, 34:20
abundantly [1] - 5:15
accept [1] - 21:9
accurate [1] - 54:20
acknowledge [2] - 13:16, 27:13
acknowledged [1] - 44:10, 47:15
acknowledgment [1] - 47:15
act [4] - 28:2, 30:8, 30:14, 41:15
Act [2] - 6:15, 10:19
action [10] - 2:14, 5:10, 18:12, 19:8, 19:12, 22:22, 23:22, 25:7, 25:24, 29:2
actionable [2] - 4:24, 28:18
actual [3] - 6:11, 24:2, 34:19
ad [1] - 22:15
add [2] - 11:17, 38:16
additional [2] - 27:8, 50:24
additionally [3] - 5:4, 22:23, 28:15
address [1] - 28:5
adequacy [1] - 18:14
adjourned [1] - 54:15
adjudication [1] - 18:23
admitted [1] - 2:23
advanced [1] - 18:18
adversaries [1] - 43:24
adversary [2] - 36:7, 44:13
advertised [1] - 48:24
advertisement [4] - 7:8, 8:13, 43:12, 45:10
advertisements [4] - 14:8, 43:21, 48:18, 48:23
advertiser [1] - 16:17
advertising [5] - 7:8, 8:12, 11:1, 36:1, 44:24
affirmations [6] -

26:21, 26:22, 26:24, 44:16, 45:12
afternoon [7] - 2:12, 2:18, 2:25, 3:1, 3:16, 3:17, 29:15
agents [2] - 39:10, 39:14
ago [1] - 15:18
agree [6] - 6:14, 17:19, 38:13, 46:6, 47:6, 52:1
agreed [1] - 35:11
agreeing [1] - 3:19
ahead [1] - 2:16
al [3] - 1:3, 1:6, 2:14
allegation [8] - 17:13, 25:8, 29:18, 31:23, 32:16, 50:6, 50:10, 50:11
allegations [9] - 10:9, 18:4, 18:9, 21:21, 27:16, 34:1, 34:3, 34:5, 52:10
allege [23] - 7:23, 8:8, 9:5, 9:10, 11:11, 11:20, 19:19, 22:5, 38:7, 38:22, 39:16, 39:24, 40:16, 41:8, 41:19, 41:20, 42:22, 44:7, 46:23, 48:9, 48:19, 48:22, 49:5
alleged [12] - 3:24, 4:9, 9:4, 9:8, 9:9, 17:19, 23:4, 37:16, 37:25, 39:5, 51:8, 51:21
allegedly [1] - 4:5
alleges [1] - 38:10
alleging [4] - 31:14, 32:8, 42:17, 48:18
allow [2] - 29:24, 43:16
allowed [1] - 29:3
alone [3] - 14:4, 18:1, 28:7
alternatively [1] - 42:22
ambiguous [1] - 14:17
amend [3] - 11:17, 38:16
amended [1] - 51:9
America [3] - 8:8, 24:14, 48:7
amorphous [3] - 7:8, 8:12, 11:1
amount [2] - 33:4, 47:25
analysis [8] - 6:22,

20:17, 21:20, 24:6, 33:12, 33:18, 33:20, 49:7
announcement [1] - 40:23
announcements [1] - 38:20
announcing [1] - 14:25
anxious [1] - 3:13
appear [1] - 2:20
APPEARANCES [2] - 1:19, 2:1
appearances [1] - 2:16
Apple [1] - 11:13
applicable [3] - 6:21, 16:25, 25:12
applies [3] - 6:14, 8:7, 8:18
apply [4] - 6:16, 6:19, 44:11, 49:20
appreciated [1] - 3:20
appropriate [4] - 22:20, 22:22, 24:7, 31:6
approve [1] - 50:11
argument [13] - 3:7, 3:14, 14:5, 16:14, 20:6, 21:18, 28:22, 29:17, 30:8, 33:6, 39:5, 49:2, 51:3
arguments [3] - 24:8, 24:24, 34:8
article [12] - 11:22, 12:11, 13:9, 13:15, 13:17, 13:21, 21:19, 39:22, 41:15, 41:16, 47:21, 49:17
Article [6] - 5:19, 11:9, 23:12, 23:13, 24:22, 25:14
articles [6] - 4:23, 11:18, 11:21, 13:24, 26:22, 43:25
ascertainable [1] - 17:1
aside [3] - 9:16, 22:2, 50:24
aspects [2] - 33:14, 33:15
assert [2] - 4:4, 28:23
asserted [1] - 11:8
assertions [1] - 27:17
asserts [1] - 10:12
assess [1] - 19:7
attach [1] - 11:25
attached [2] - 11:23,

26:25
**attempted** [1] - 10:11
**authority** [1] - 18:9
**availability** [3] - 5:2, 17:4, 17:5
**available** [2] - 49:15, 49:16
**aware** [4] - 5:5, 7:9, 38:6, 39:14

**B**

**bald** [1] - 10:12
**barred** [1] - 5:22
**based** [8] - 14:6, 17:5, 32:21, 33:18, 36:24, 50:11, 51:3
**bases** [1] - 28:18
**basis** [8] - 13:23, 15:7, 28:7, 30:19, 31:24, 42:2, 48:25, 52:3
**beat** [3] - 15:25, 20:21, 44:2
**became** [1] - 45:10
**become** [1] - 23:2
**BEFORE** [1] - 1:16
**beginning** [1] - 34:3
**behalf** [3] - 2:19, 2:24, 25:5
**beneficiary** [1] - 31:11
**benefit** [3] - 13:18, 29:6, 29:9
**best** [1] - 16:13
**between** [4] - 10:22, 22:11, 26:23, 37:2
**BIANCA** [1] - 3:1
**big** [1] - 43:22
**Birdsong** [1] - 11:13
**bit** [1] - 51:16
**body** [1] - 20:3
**book** [1] - 45:23
**booklet** [6] - 27:3, 44:13, 44:14, 45:2, 45:20, 50:25
**books** [3] - 14:15, 14:19, 40:4
**bottom** [1] - 41:7
**bought** [13] - 7:7, 16:4, 19:20, 20:4, 20:9, 20:10, 20:12, 21:2, 21:3, 30:20, 44:18, 44:25, 47:18
**Brad** [1] - 2:18
**BRAD** [1] - 1:21
**brakes** [2] - 44:20, 44:21
**breach** [15] - 4:10,

23:15, 25:7, 25:9, 25:25, 26:4, 26:5, 26:8, 26:12, 26:20, 28:16, 28:19, 44:12, 45:8, 50:22
**brief** [6] - 38:17, 39:2, 40:20, 41:4, 41:8, 46:19
**briefing** [1] - 51:23
**briefly** [1] - 49:25
**bring** [7] - 3:22, 4:8, 24:18, 25:3, 25:24, 29:22, 32:4
**bringing** [2] - 25:5, 25:22
**broader** [2] - 41:18, 43:15
**brought** [5] - 21:13, 23:25, 25:20, 26:3, 48:22
**build** [4] - 11:20, 12:21, 12:23, 49:22
**built** [2] - 14:21, 37:7
**bunch** [2] - 37:5, 54:3
**business** [1] - 54:12
**buy** [13] - 9:17, 15:10, 15:18, 16:6, 21:5, 21:6, 30:25, 36:9, 44:17, 44:18, 44:25, 45:3
**buys** [1] - 36:11
**buzz** [1] - 15:3
**buzz-worthy** [1] - 15:3
**BY** [5] - 1:21, 1:23, 2:3, 2:3, 2:4

**C**

**C(1)(a** [1] - 18:8
**C.A** [1] - 1:4
**cabined** [1] - 52:15
**California** [11] - 8:22, 9:1, 11:6, 31:9, 31:25, 32:1, 32:20, 41:25, 51:2, 51:4
**campaign** [3] - 7:9, 8:12, 11:1
**cannot** [5] - 5:3, 5:10, 8:11, 18:12, 19:11
**capabilities** [1] - 47:23
**car** [35] - 9:25, 10:11, 13:8, 15:8, 15:17, 15:18, 16:6, 19:22, 20:3, 20:5, 21:3, 22:9, 30:9, 30:20, 30:25, 31:18, 32:1, 32:3, 33:23, 36:9,

36:11, 36:13, 40:3, 42:5, 44:4, 44:17, 44:18, 44:19, 44:20, 45:3, 45:10, 45:13, 45:14, 45:17
**care** [3] - 28:2, 30:22, 54:14
**carry** [1] - 20:1
**cars** [9] - 9:16, 9:17, 9:19, 9:23, 10:2, 16:2, 17:14, 32:9, 37:5
**case** [61] - 6:22, 8:3, 8:18, 8:21, 8:24, 9:24, 10:4, 10:8, 10:18, 10:23, 11:4, 11:6, 14:3, 16:15, 16:22, 16:24, 16:25, 17:3, 20:7, 24:21, 28:24, 28:25, 29:2, 30:11, 30:12, 30:13, 30:25, 31:5, 33:7, 33:15, 34:3, 34:6, 35:24, 36:6, 36:7, 36:19, 37:2, 37:4, 37:8, 37:18, 38:23, 40:17, 41:23, 42:10, 45:22, 46:11, 47:2, 47:3, 47:5, 47:6, 47:10, 48:17, 50:5, 51:13, 52:4, 52:18, 53:5, 53:12
**cases** [15] - 6:23, 7:25, 8:17, 8:19, 10:16, 25:18, 30:23, 33:11, 33:19, 35:10, 35:11, 41:13, 50:4, 52:2, 53:3
**Castrol** [1] - 16:25
**category** [1] - 43:15
**causation** [9] - 6:21, 7:21, 7:22, 41:17, 41:18, 48:4, 48:5, 48:8
**caused** [4] - 7:18, 27:21, 41:19, 41:23
**CEO** [2] - 17:20, 34:9
**certain** [6] - 6:8, 7:5, 9:23, 44:22, 44:23, 46:8
**certainly** [6] - 32:12, 34:6, 38:16, 43:24, 44:1, 51:2
**certification** [5] - 4:11, 18:10, 21:21, 24:8, 24:9
**certified** [4] - 30:14, 30:15, 52:12, 52:13
**certify** [1] - 5:17,

21:16, 54:19
**cetera** [2] - 30:22
**chain** [1] - 45:19
**chance** [1] - 40:5
**change** [1] - 12:16
**changes** [2] - 12:19, 12:21
**characteristics** [1] - 36:4
**cheaper** [1] - 21:8
**checked** [1] - 49:19
**Cherokee** [1] - 12:17
**Chicago** [1] - 3:5
**Chimienti** [1] - 48:14
**choice** [1] - 25:25
**chronology** [1] - 39:19
**Circuit** [11] - 11:13, 23:17, 23:20, 23:23, 24:5, 25:13, 48:21, 50:5
**circumstances** [3] - 17:8, 18:18, 22:1
**cite** [12] - 5:1, 10:16, 11:5, 11:18, 13:16, 16:24, 22:16, 24:14, 35:10, 35:11, 36:5, 48:16
**cited** [2] - 48:17
**City** [1] - 21:6
**civil** [1] - 2:14
**claim** [50] - 4:8, 4:13, 5:8, 5:18, 5:25, 7:15, 8:12, 10:19, 10:21, 11:19, 14:6, 16:16, 19:2, 20:8, 23:19, 25:8, 25:22, 25:24, 26:20, 27:8, 27:11, 27:14, 27:24, 28:8, 28:15, 28:17, 29:1, 29:10, 29:12, 30:1, 30:14, 31:13, 32:5, 36:1, 36:15, 36:23, 37:11, 39:23, 45:8, 45:22, 46:13, 46:25, 48:5, 49:23, 50:3, 51:2, 51:20, 52:4
**claimed** [1] - 48:23
**claiming** [1] - 11:3
**claims** [49] - 3:12, 3:23, 5:13, 5:21, 6:15, 7:1, 7:20, 8:1, 11:8, 13:24, 18:16, 21:12, 23:7, 23:10, 23:15, 23:17, 23:25, 24:3, 24:6, 24:18, 24:20, 25:20, 26:5, 26:8, 26:12, 26:14,

26:16, 27:22, 27:24, 28:13, 28:16, 28:17, 28:20, 29:22, 30:3, 31:6, 32:14, 32:17, 33:10, 33:11, 48:22, 50:18, 50:19, 50:23, 51:1, 51:11, 51:15
**clarity** [1] - 7:13
**CLARK** [1] - 2:2
**Clark** [2] - 3:2, 3:4
**class** [59] - 4:12, 5:8, 5:10, 5:12, 5:18, 10:20, 18:4, 18:10, 18:12, 18:15, 18:17, 19:1, 19:4, 19:8, 19:12, 19:14, 19:17, 19:19, 20:4, 20:7, 20:8, 20:10, 20:14, 20:15, 20:18, 21:16, 21:20, 22:5, 22:7, 22:11, 22:18, 22:22, 23:3, 23:7, 23:9, 23:10, 23:22, 23:25, 24:1, 24:3, 24:8, 24:9, 25:7, 25:24, 29:18, 30:19, 32:14, 33:21, 34:1, 34:2, 38:3, 39:10, 52:10, 52:11, 52:13, 52:14, 52:15
**classes** [1] - 18:22
**clear** [11] - 5:15, 6:5, 8:1, 21:23, 30:17, 31:1, 32:19, 34:4, 41:11, 41:13, 47:7
**clearly** [5] - 12:24, 15:4, 34:10, 45:5, 48:1
**CLERK** [1] - 2:10
**client** [1] - 17:13
**clients** [1] - 53:22
**close** [1] - 54:11
**closed** [1] - 38:21
**closing** [1] - 40:4
**cohesive** [1] - 18:23
**colleague** [3] - 29:19, 30:19, 41:11
**colleagues** [1] - 3:4
**collector** [1] - 9:23
**color** [1] - 30:10
**commence** [1] - 40:22
**commenced** [1] - 38:19
**comment** [1] - 47:13
**comments** [3] - 5:1, 46:21, 48:19
**common** [5] - 5:17, 18:24, 19:3, 19:16, 21:15, 21:22, 22:11,

**30:1, 30:12**

**commonality** [4] - 5:14, 18:14, 22:1, 22:2

**commonly** [1] - 30:15

**companies** [1] - 13:8

**Company** [2] - 10:18, 36:6

**compartment** [1] - 45:4

**complaint** [33] - 5:9, 6:5, 7:25, 9:4, 11:16, 11:19, 11:23, 13:10, 14:7, 17:13, 18:5, 18:9, 18:11, 19:23, 19:24, 20:2, 21:1, 22:10, 23:24, 34:4, 34:9, 37:16, 38:1, 38:16, 40:24, 41:8, 41:20, 42:17, 51:6, 51:9, 51:17, 51:21, 51:23

**complaints / allegations** [1] - 14:10

**completely** [1] - 16:20

**components** [2] - 44:22, 44:23

**concede** [1] - 27:13

**concept** [1] - 41:18

**concerning** [6] - 3:24, 5:12, 6:7, 13:25, 19:13, 24:6

**concerns** [2] - 13:7, 52:12

**conclusion** [1] - 10:12

**conclusory** [2] - 7:4, 27:17

**conditions** [1] - 17:6

**conduct** [5] - 29:25, 30:7, 41:19, 43:7

**confer** [4] - 29:6, 29:9, 53:21, 53:25

**conflicts** [1] - 8:24

**conjecture** [2] - 9:6, 10:15

**conjoined** [3] - 33:12, 33:18, 33:20

**conjoined -based** [1] - 33:18

**connect** [5] - 4:19, 6:3, 7:6, 49:8, 49:11

**connecting** [1] - 6:10

**consider** [1] - 36:25

**considerations** [1] - 23:1

**considered** [2] - 5:6, 45:13

**consistent** [1] - 11:9

**Consumer** [2] - 6:14, 10:19

**consumer** [37] - 3:23, 5:24, 7:20, 10:21, 12:18, 12:25, 16:16, 17:7, 23:17, 26:7, 27:22, 28:17, 28:19, 29:23, 30:3, 30:4, 30:6, 30:11, 30:12, 30:13, 30:16, 32:17, 33:10, 33:11, 35:25, 36:15, 36:23, 36:24, 36:25, 41:14, 43:9, 46:12, 47:20, 51:13, 51:15, 52:3

**consumers** [8] - 4:5, 29:5, 29:24, 33:17, 38:3, 39:11, 42:10, 46:22

**contained** [1] - 27:3

**contend** [3] - 34:6, 44:8, 45:15

**context** [8] - 5:1, 12:5, 13:25, 14:13, 14:24, 22:25, 23:22, 32:8

**continue** [1] - 32:25

**continued** [1] - 47:22

**CONTINUED** [1] - 2:1

**contract** [8] - 25:25, 28:13, 28:14, 43:6, 45:8, 45:10, 50:25

**contradict** [1] - 14:9

**contrast** [1] - 19:5

**control** [3] - 35:12, 35:13, 35:14

**controls** [1] - 28:15

**controversy** [1] - 24:22

**convinced** [1] - 8:14

**cool** [1] - 15:23

**Corp** [1] - 11:5

**correct** [2] - 16:21, 34:23

**correctly** [1] - 3:6

**Counsel** [2] - 1:25, 2:5

**counsel** [5] - 2:21, 3:3, 37:1, 51:16, 53:6

**counsel 's** [1] - 51:3

**Count** [3] - 25:4, 27:11, 28:9

**country** [6] - 13:4, 13:6, 13:8, 20:20, 21:5, 25:9

**couple** [1] - 33:25

**court** [5] - 2:10, 14:5,

**18:8, 28:24, 53:22**

**COURT** [70] - 1:1, 2:10, 2:12, 3:9, 3:17, 3:21, 4:3, 6:13, 6:25, 9:15, 14:12, 15:12, 15:25, 16:4, 16:13, 16:23, 17:9, 17:18, 17:24, 24:25, 25:3, 25:11, 25:18, 26:15, 29:13, 31:4, 31:14, 31:17, 31:21, 31:24, 32:1, 32:6, 32:18, 32:23, 33:1, 33:8, 34:15, 34:20, 34:24, 35:7, 35:11, 35:19, 35:23, 36:19, 36:22, 37:1, 37:15, 38:9, 38:23, 38:25, 39:4, 40:10, 42:25, 45:6, 45:24, 46:3, 46:6, 46:10, 46:14, 46:16, 47:6, 47:11, 49:24, 50:1, 50:13, 50:15, 53:8, 53:23, 53:25, 54:13

**Court** [39] - 1:16, 3:8, 4:19, 5:5, 8:4, 8:10, 9:8, 10:9, 10:18, 11:5, 11:6, 11:8, 11:14, 13:23, 14:21, 16:16, 18:6, 18:12, 19:7, 22:12, 23:21, 23:24, 24:8, 24:17, 25:21, 29:2, 29:4, 36:14, 47:6, 48:8, 48:16, 48:24, 49:12, 50:19, 53:14, 54:15, 54:22, 54:23

**courtroom** [1] - 16:1

**Courtroom** [1] - 1:11

**courts** [5] - 24:9, 34:2, 43:16, 48:20, 50:11

**covered** [5] - 27:17, 28:11, 43:23, 45:19, 45:23

**covers** [1] - 44:21

**COVID** [7] - 12:9, 12:18, 12:20, 13:2, 13:4, 17:6, 47:22

**CRA** [1] - 30:5

**created** [2] - 27:9, 45:21

**cross** [1] - 20:20

**Cuno** [1] - 23:21

**current** [2] - 17:8, 47:3

**customer** [3] - 12:8, 12:22, 23:7

**cycle** [1] - 12:17

## D

**DaimlerChrysler** [1] - 23:20

**damage** [5] - 30:25, 31:1, 31:2, 41:19, 41:24

**damaged** [3] - 4:18, 7:17, 49:10

**damages** [15] - 6:12, 9:3, 9:8, 10:16, 20:17, 21:12, 22:24, 23:6, 30:18, 30:22, 33:9, 33:20, 33:22, 50:2, 52:15

**Daniel** [1] - 3:4

**DANIEL** [1] - 2:3

**date** [1] - 49:6

**dated** [1] - 11:22

**DE** [3] - 1:20, 1:21, 2:18

**dead** [2] - 15:25, 44:2

**dealer** [1] - 23:1

**dealers** [4] - 35:6, 46:22, 46:23, 46:24

**dealership** [5] - 21:7, 31:7, 31:17, 32:9, 51:8

**dealerships** [1] - 32:2

**decade** [1] - 47:23

**deception** [2] - 30:24, 41:20

**deceptive** [10] - 29:25, 30:7, 36:18, 36:25, 40:13, 41:19, 43:6, 43:7

**decided** [3] - 24:15, 25:14, 48:15

**decision** [2] - 22:19, 29:5

**decreased** [1] - 10:13

**deem** [1] - 30:6

**deemed** [3] - 5:4, 25:14, 46:25

**deep** [1] - 53:10

**defective** [1] - 45:17

**defendant** [7] - 3:15, 8:7, 28:2, 31:5, 31:6, 51:6, 52:1

**defendant 's** [1] - 48:20

**Defendants** [2] - 1:7, 2:5

**defendants** [7] - 29:8, 38:2, 38:6, 39:9, 39:13, 50:8, 52:25

**Defenders** [1] - 9:7

**defense** [1] - 18:7

**defined** [1] - 52:15

**definitive** [1] - 13:11

**DELAWARE** [1] - 1:1

**Delaware** [3] - 1:13, 18:20, 23:23

**DeLeeuw** [2] - 2:19

**delivered** [1] - 52:16

**delve** [2] - 20:23, 21:10

**demand** [6] - 12:9, 12:18, 12:22, 13:1, 17:7, 47:20

**demonstrate** [4] - 23:19, 24:3, 28:6, 43:13

**demonstrated** [2] - 44:3, 44:8

**demonstrates** [2] - 5:9, 18:11

**department** [1] - 41:1

**dependent** [1] - 33:21

**depose** [1] - 40:25

**designed** [1] - 29:24

**despite** [2] - 38:5, 39:13

**detail** [2] - 6:10, 8:19

**details** [2] - 3:12, 28:12

**determination** [1] - 25:17

**determine** [3] - 19:8, 21:12, 30:20

**determined** [3] - 12:22, 17:2, 33:17

**determining** [3] - 22:10, 22:21, 23:6

**DI** [1] - 3:1

**dial** [1] - 54:4

**DiBianca** [2] - 2:3, 3:2

**differ** [1] - 3:13

**differences** [2] - 22:24, 28:5

**different** [17] - 3:11, 3:13, 3:23, 10:22, 20:22, 23:2, 27:25, 28:1, 33:14, 35:12, 37:18, 38:23, 41:24, 51:9, 51:16, 51:20, 51:24

**differentials** [1] - 20:25

**differently** [1] - 43:10

**difficult** [1] - 21:13

**dig** [1] - 50:17

**diminution** [4] - 10:6, 10:9, 10:17, 23:4

**direct** [1] - 29:9

**directly** [1] - 39:10,

39:14

**disagree** [1] - 21:18
**disclaimer** [1] - 50:23
**disclose** [4] - 38:2, 39:6, 39:10, 42:18
**discovery** [5] - 32:11, 33:6, 40:18, 40:24, 41:6
**discuss** [1] - 33:24
**discussed** [1] - 5:18
**discussion** [1] - 10:22
**dismiss** [7] - 2:13, 13:24, 32:12, 38:15, 48:25, 52:9, 52:20
**dismissal** [1] - 7:21
**dismissed** [17] - 4:13, 5:22, 5:25, 8:2, 11:16, 23:10, 23:24, 24:4, 27:9, 27:14, 28:7, 29:2, 29:12, 48:21, 50:23, 51:2, 51:12
**dismisses** [1] - 50:19
**dispute** [3] - 6:15, 6:16, 51:12
**distinct** [1] - 11:10
**distinguishable** [1] - 52:6
**DISTRICT** [2] - 1:1, 1:1
**District** [12] - 1:16, 8:3, 8:10, 10:8, 14:3, 18:20, 23:23, 24:16, 28:24, 48:7, 48:15, 54:23
**document** [1] - 43:15
**documents** [1] - 43:12
**Dodge** [2] - 3:25, 9:25
**done** [1] - 11:11
**dots** [4] - 4:19, 6:3, 49:9, 49:11
**down** [4] - 13:6, 36:13, 44:20, 44:21
**drive** [3] - 9:17, 20:19
**driven** [2] - 16:5, 33:23
**driving** [2] - 37:5, 44:23
**due** [1] - 32:7
**duplicative** [1] - 28:15
**Durango** [8] - 3:25, 9:25, 14:14, 14:15, 14:20, 14:21, 34:10, 34:11
**duty** [3] - 28:2, 39:6, 42:2
**Dzielak** [1] - 28:24

## E

**e-mail** [1] - 53:24
**e.g** [1] - 14:8
**early** [1] - 53:2
**ease** [1] - 4:2
**eastern** [1] - 48:15
**ECF** [1] - 11:25
**economic** [1] - 33:13
**edition** [14] - 4:6, 10:1, 10:3, 33:16, 36:9, 36:16, 38:5, 38:7, 39:13, 39:15, 41:21, 42:6, 44:4, 50:10
**effect** [2] - 12:7, 33:24
**effects** [2] - 5:13, 19:14
**efficient** [1] - 53:9
**Eidelman** [1] - 50:4
**EIDELMAN** [1] - 50:5
**either** [3] - 39:9, 39:13, 51:22
**element** [1] - 18:25
**elements** [2] - 5:12, 28:1
**emission** [3] - 12:7, 12:12, 12:14
**emissions** [3] - 37:11, 39:21, 42:15
**endeavor** [1] - 22:12
**enforceable** [3] - 27:6, 43:1, 43:2
**engine** [1] - 12:15
**engineering** [1] - 41:1
**engineers** [3] - 37:10, 37:14, 40:25
**enriched** [1] - 51:6
**enrichment** [15] - 4:9, 5:25, 23:16, 26:6, 26:13, 28:8, 28:23, 29:2, 29:10, 29:12, 31:6, 31:13, 32:19, 32:21, 51:1
**entirely** [1] - 47:7
**entitled** [2] - 32:13, 38:14
**equate** [1] - 47:16
**especially** [1] - 7:14
**ESQ** [5] - 1:21, 1:23, 2:3, 2:3, 2:4
**et** [5] - 1:3, 1:6, 2:14, 30:22
**evaluations** [1] - 53:2
**evaporative** [3] - 12:14, 37:10, 42:15
**event** [1] - 43:22

**eventually** [1] - 35:5
**evidence** [4] - 17:24, 19:1, 19:4, 19:6
**eviscerated** [1] - 14:6
**exact** [2] - 10:14, 25:17
**exactly** [5] - 10:2, 10:13, 27:2, 36:8, 47:20
**example** [1] - 19:18
**examples** [2] - 14:7, 14:9
**except** [3] - 32:20, 51:2, 52:4
**exception** [1] - 5:7
**excludes** [1] - 44:22
**Exhibit** [1] - 11:25, 26:25
**exhibits** [1] - 44:1
**exist** [3] - 19:17, 22:2, 23:8
**existed** [2] - 12:8, 43:13
**exists** [3] - 24:12, 28:14, 50:3
**expect** [1] - 49:12
**expected** [1] - 22:4
**expensive** [2] - 16:6, 21:7
**expert** [1] - 33:13
**exposed** [1] - 8:9
**express** [18] - 4:10, 5:23, 23:15, 26:5, 26:6, 26:8, 26:13, 26:20, 26:23, 27:3, 27:8, 28:14, 45:13, 45:15, 45:22, 49:14, 49:18, 50:22
**expressly** [1] - 26:24
**extensively** [1] - 43:24
**extent** [3] - 50:19, 51:7, 53:14
**extra** [1] - 32:2

## F

**face** [4] - 7:19, 8:15, 34:4, 48:1
**fact** [24] - 7:4, 7:7, 9:4, 10:16, 19:22, 21:23, 22:3, 33:7, 34:13, 34:15, 37:13, 37:21, 38:5, 39:13, 39:18, 39:25, 40:19, 41:22, 42:3, 43:3, 44:16, 45:1, 50:8, 52:12
**factfinder** [1] - 9:5

**factor** [1] - 5:24
**factors** [1] - 27:25
**facts** [12] - 5:16, 9:5, 10:21, 11:18, 21:15, 28:18, 37:16, 37:25, 40:16, 47:8, 47:9, 51:8
**factual** [3] - 18:18, 19:13, 20:22
**fail** [2] - 7:23, 13:16, 48:9
**failed** [12] - 4:15, 4:16, 6:2, 7:16, 8:8, 18:1, 24:2, 28:11, 29:1, 38:2, 39:10, 42:18
**fails** [1] - 6:9
**false** [9] - 3:24, 7:24, 10:25, 36:1, 37:3, 37:6, 37:23, 39:8, 47:14
**family** [5] - 15:22, 16:7, 20:3, 20:20, 22:8
**fancy** [2] - 15:2
**far** [5] - 5:11, 19:12, 49:6
**faster** [1] - 24:24
**FCA** [23] - 1:6, 2:14, 4:5, 4:8, 4:19, 6:8, 6:10, 7:5, 9:1, 11:19, 12:5, 12:19, 18:4, 22:17, 23:5, 27:4, 38:20, 42:9, 43:20, 46:21, 46:23, 49:12, 51:6
**FCA 's** [6] - 4:22, 12:2, 12:12, 18:3, 26:25, 27:1
**federal** [2] - 23:18, 28:23
**few** [1] - 13:3
**figure** [2] - 20:13, 40:7
**filed** [3] - 18:10, 24:15, 48:15
**fill** [1] - 4:15
**fine** [2] - 3:9, 4:3
**first** [12] - 2:20, 3:6, 3:18, 4:15, 5:23, 15:18, 22:14, 27:1, 27:11, 41:2, 44:17, 46:20
**fit** [1] - 15:22
**five** [2] - 4:13, 7:22
**flat** [1] - 14:9
**flesh** [2] - 39:17, 41:9
**fleshed** [2] - 38:12, 38:13
**flies** [2] - 7:19, 8:14

**flooded** [2] - 36:13, 47:4
**Florida** [6] - 6:15, 23:17, 26:7, 30:4, 31:12, 41:13
**flushing** [1] - 53:4
**focus** [1] - 16:14
**focused** [1] - 17:1
**focusing** [2] - 32:16, 33:10
**followed** [1] - 10:2
**following** [1] - 12:1
**FOR** [1] - 1:1
**Ford** [2] - 10:17, 10:23, 36:6
**foregoing** [1] - 54:19
**forth** [3] - 21:13, 48:8, 50:25
**forward** [4] - 13:7, 40:18, 52:17, 54:8
**four** [2] - 15:18, 18:13
**Fourth** [1] - 5:19
**Fraud** [1] - 10:19
**fraud** [31] - 3:23, 5:24, 7:15, 7:20, 10:21, 14:6, 14:10, 16:16, 23:17, 26:8, 27:15, 27:22, 28:10, 28:16, 28:19, 29:23, 30:1, 30:3, 30:4, 30:11, 30:12, 32:17, 33:10, 36:15, 36:23, 41:14, 43:9, 46:12, 51:13, 51:15, 52:4
**fraud-based** [1] - 14:6
**fraudulent** [3] - 4:25, 5:4, 5:6
**friends** [1] - 15:23
**front** [1] - 21:9
**fulfill** [2] - 19:11, 28:6
**full** [1] - 36:11
**functioning** [1] - 44:14
**fundamentally** [1] - 11:15
**furthermore** [1] - 14:22
**future** [19] - 3:25, 5:2, 5:5, 5:6, 12:25, 13:5, 13:13, 16:11, 16:19, 17:4, 34:12, 34:17, 34:25, 35:8, 36:3, 37:24, 48:2, 52:1, 52:3

## G

**Gail** [1] - 48:17

**garage** [1] - 20:18
**Garlough** [1] - 9:1
**Gary** [2] - 2:21, 29:15
**GARY** [1] - 1:23
**GBL** [3] - 30:3, 41:12, 48:21
**general** [4] - 10:8, 11:1, 11:2, 39:19
**generalized** [1] - 19:9
**generally** [1] - 18:16
**generation** [1] - 12:16
**geographical** [1] - 23:1
**geographically** [1] - 21:6
**given** [3] - 38:17, 40:20, 52:15
**glove** [1] - 45:3
**Gold** [1] - 18:20
**GOLDHAMER** [1] - 1:23
**Goldhamer** [2] - 2:22, 29:16
**goods** [1] - 36:4
**gosh** [1] - 25:18
**governed** [1] - 28:10
**Graham** [1] - 3:4
**GRAHAM** [5] - 2:3, 53:2, 53:20, 53:24, 54:11
**Graifman** [3] - 2:21, 2:22, 29:16
**GRAIFMAN** [42] - 1:23, 1:23, 2:25, 29:15, 31:9, 31:16, 31:19, 31:25, 32:4, 32:10, 32:22, 32:25, 33:2, 33:9, 34:18, 34:23, 35:1, 35:9, 35:17, 35:21, 36:5, 36:21, 36:23, 37:8, 38:1, 38:11, 38:24, 39:2, 39:9, 40:19, 43:5, 45:11, 45:25, 46:5, 46:8, 46:12, 46:15, 46:17, 49:25, 50:2, 50:14, 52:24
**Grand** [1] - 12:17
**grant** [1] - 50:20
**granted** [2] - 48:25, 54:6
**graphics** [2] - 15:2, 15:4
**ground** [2] - 28:2, 30:21
**Group** [1] - 24:14
**GT** [1] - 9:23
**guess** [5] - 14:23,

16:8, 16:14, 26:19, 45:7

## H

**hac** [1] - 2:23
**half** [1] - 43:8
**HALL** [1] - 1:16
**Hall** [1] - 2:11
**hand** [3] - 26:3, 45:4
**handful** [1] - 22:16
**handle** [1] - 2:23
**happy** [1] - 53:16
**Healthcare** [2] - 23:22, 25:16
**hear** [3] - 3:14, 5:7, 54:3
**heard** [1] - 27:19
**hearing** [3] - 3:19, 51:16, 51:17
**heightened** [1] - 8:15
**held** [5] - 10:9, 11:8, 11:14, 23:18, 24:10
**Hellcat** [15] - 3:25, 11:20, 12:15, 14:14, 14:16, 14:20, 23:6, 34:10, 34:11, 38:4, 38:6, 39:7, 39:12, 39:14, 50:9
**Hellcat 's** [1] - 19:25
**hereby** [1] - 54:19
**herring** [1] - 45:5
**hid** [1] - 39:25
**higher** [1] - 16:6
**highly** [1] - 20:10
**HILL** [1] - 2:2
**Hill** [2] - 3:2, 3:4
**hindsight** [1] - 27:16
**hit** [1] - 13:4
**hitting** [1] - 15:1
**hold** [2] - 32:23, 54:2
**holding** [1] - 8:7
**holds** [1] - 27:5
**Honor** [71] - 2:18, 2:20, 2:25, 3:1, 3:16, 3:22, 4:21, 5:8, 5:19, 5:24, 6:18, 6:24, 7:9, 7:13, 8:3, 8:17, 8:18, 8:25, 9:2, 9:22, 10:6, 11:13, 11:15, 12:10, 12:24, 13:2, 14:2, 14:18, 15:15, 16:9, 16:20, 17:8, 17:16, 17:23, 17:25, 18:3, 18:5, 18:15, 19:10, 20:7, 20:15, 21:17, 22:13,

24:13, 24:23, 25:10, 25:13, 25:15, 26:2, 26:8, 26:19, 27:12, 28:9, 28:21, 29:11, 29:14, 29:15, 34:7, 38:13, 46:2, 46:18, 46:20, 46:21, 47:3, 47:10, 48:6, 48:13, 49:4, 49:14, 53:20
**HONORABLE** [1] - 1:16
**Honorable** [1] - 2:11
**hopeless** [2] - 22:11, 23:8
**Horizon** [2] - 23:22, 25:16
**horse** [2] - 16:1, 44:2
**horsepower** [1] - 30:10
**huge** [1] - 52:18
**hypothetical** [3] - 9:7, 9:12, 10:15

## I

**ID** [1] - 11:25
**idea** [6] - 9:17, 15:19, 16:5, 33:22, 52:21, 53:13
**identical** [1] - 27:24
**identify** [1] - 8:5
**idiosyncratic** [3] - 21:24, 22:20, 22:21
**ignore** [1] - 13:15
**Ill** [6] - 5:19, 11:9, 23:12, 23:13, 24:22, 25:14
**imagine** [1] - 50:21
**immaterial** [1] - 18:7
**impacted** [1] - 22:19
**impertinent** [1] - 18:7
**important** [1] - 7:15
**importing** [1] - 12:11
**impossible** [2] - 20:24, 23:9
**IN** [1] - 1:1
**inapplicable** [1] - 17:7
**include** [1] - 26:5
**includes** [1] - 12:1
**including** [2] - 30:3, 50:4
**incorporated** [1] - 11:24
**incorrect** [2] - 11:3, 49:16
**Indianapolis** [1] - 36:10
**individual** [5] - 5:16,

21:14, 21:23, 22:11, 25:20
**individualized** [6] - 5:11, 19:5, 19:10, 19:13, 19:16, 20:12
**individuals** [1] - 21:11
**induce** [3] - 30:24, 44:25, 45:12
**induced** [1] - 44:17
**inequitable** [1] - 28:17
**inference** [1] - 32:13
**inferences** [3] - 32:12, 38:15
**inflated** [2] - 33:4, 41:22
**information** [3] - 4:22, 6:6, 6:7
**Ingram** [1] - 54:22
**injured** [1] - 7:4
**injury** [9] - 9:3, 9:6, 11:10, 11:12, 11:14, 24:2, 24:11, 24:12, 50:11
**inquiries** [3] - 5:11, 19:13, 20:22
**inquiry** [1] - 18:22
**instead** [3] - 4:18, 39:4, 53:9
**insufficient** [2] - 18:6, 27:16
**insufficiently** [1] - 48:8
**intend** [1] - 16:19
**intended** [1] - 37:22
**intent** [3] - 30:2, 37:22, 37:24
**intents** [1] - 20:21
**interesting** [2] - 37:15, 42:25
**interior** [2] - 21:4, 30:10
**internal** [1] - 42:11
**International** [1] - 48:14
**internet** [1] - 45:2
**interpretation** [1] - 11:7
**introducing** [1] - 34:19
**invested** [1] - 53:10
**investment** [7] - 9:9, 9:13, 9:15, 19:20, 20:5, 20:9, 22:6
**invite** [1] - 8:18
**involved** [2] - 3:12, 27:25
**isolates** [1] - 33:13
**issue** [8] - 19:3, 19:5,

20:24, 25:25, 26:1, 37:11, 41:16, 41:17
**issues** [14] - 5:16, 13:1, 19:8, 19:9, 20:12, 21:15, 21:23, 23:2, 23:8, 30:11, 30:12, 33:25, 47:25, 53:5
**itself** [1] - 34:9

## J

**Jeep** [1] - 12:16
**Jennifer** [1] - 2:11
**JENNIFER** [1] - 1:16
**Jersey** [10] - 8:3, 10:8, 23:17, 24:16, 26:7, 28:23, 28:24, 30:4, 41:14, 48:7
**Johnson** [3] - 8:4, 18:19
**joined** [1] - 3:3
**JONATHAN** [1] - 2:4
**Jonathan** [2] - 3:5, 3:7
**Judge** [1] - 1:16
**July** [3] - 11:22, 13:3, 34:18
**jurisdiction** [2] - 8:18, 23:19

## K

**Kansas** [1] - 21:6
**KANTROWITZ** [1] - 1:23
**Kantrowitz** [2] - 2:22, 29:16
**keep** [1] - 46:18
**keys** [1] - 45:5
**kicks** [1] - 51:24
**kind** [6] - 13:4, 19:21, 20:6, 43:8, 44:2, 53:18
**King** [1] - 1:13
**knowledge** [3] - 42:9, 47:17, 51:19
**known** [1] - 50:8
**knows** [5] - 18:5, 18:13, 21:3, 42:3, 47:23
**Kuniskis** [2] - 34:10, 37:13

## L

**Labs** [2] - 8:10, 14:3
**lack** [3] - 5:19, 23:13,

24:18
**lacked** [1] - 26:4
**language** [1] - 27:5
**large** [1] - 13:2
**last** [2] - 24:16, 34:14
**lastly** [2] - 5:21, 49:14
**Law** [1] - 2:19
**law** [11] - 3:11, 6:22, 8:21, 8:24, 25:4, 25:20, 25:25, 30:1, 30:12, 35:25, 50:18
**LAW** [1] - 1:20
**laws** [4] - 3:13, 24:7, 24:20, 25:6
**lawsuit** [1] - 49:3
**least** [4] - 38:18, 39:20, 40:17, 40:21
**leave** [3] - 50:20, 53:13, 54:6
**LEEUW** [3] - 1:20, 1:21, 2:18
**left** [1] - 42:4
**legal** [4] - 5:16, 18:18, 19:13, 21:15
**legitimate** [1] - 13:7
**legs** [1] - 53:5
**less** [1] - 52:13
**letter** [2] - 54:1, 54:9
**level** [1] - 8:23
**Lieberson** [1] - 8:3
**lied** [1] - 35:17
**likely** [7] - 7:9, 18:13, 19:3, 19:5, 20:4, 20:12, 22:7
**limited** [25] - 4:6, 5:2, 8:22, 10:1, 10:3, 11:7, 12:3, 17:21, 17:22, 20:5, 33:16, 36:9, 36:16, 38:5, 38:7, 38:21, 39:12, 39:15, 39:16, 41:21, 42:6, 44:4, 45:15, 45:16, 50:9
**limiting** [1] - 27:5
**line** [3] - 27:2, 34:19, 49:16
**lines** [1] - 37:2
**litany** [1] - 20:11
**litigating** [1] - 52:17
**LLC** [4] - 1:6, 1:20, 2:19, 27:4
**look** [8] - 4:23, 15:2, 15:8, 30:8, 49:17, 51:4, 54:8
**looked** [2] - 15:23, 25:19
**looking** [2] - 13:12, 38:11

**loss** [1] - 9:11
**lost** [1] - 9:13
**Lujan** [1] - 9:7
**luxury** [1] - 9:18

## M

**mail** [1] - 53:24
**main** [1] - 4:14
**maintain** [2] - 20:18, 23:9
**maintaining** [3] - 5:10, 18:11, 19:12
**maintenance** [1] - 44:15
**majority** [1] - 8:24
**mandated** [1] - 24:9
**manufactured** [1] - 23:5
**manufacturer** [15] - 16:18, 29:3, 29:7, 31:8, 31:10, 31:13, 31:18, 31:19, 32:2, 32:3, 32:5, 32:6, 32:15, 33:5
**manufacturing** [2] - 13:7, 44:21
**MARGARET** [1] - 2:3
**market** [8] - 9:21, 10:11, 10:13, 15:1, 36:12, 36:13, 45:21, 47:4
**marketed** [1] - 4:5
**marketing** [4] - 43:12, 43:22, 44:16, 44:24
**marketplace** [1] - 30:24
**material** [2] - 33:14, 42:3
**matter** [3] - 18:8, 32:11, 44:23
**matters** [1] - 13:20, 20:17
**mean** [15] - 9:15, 9:19, 32:11, 33:2, 33:4, 35:9, 36:5, 37:4, 38:12, 39:20, 40:23, 40:25, 42:14, 43:19, 43:22
**meaning** [3] - 18:25, 37:20, 41:15
**means** [1] - 41:18
**mediating** [1] - 52:25
**mediation** [1] - 52:21
**meet** [8] - 5:7, 5:13, 6:1, 12:15, 18:1, 19:14, 30:1, 53:25
**Mehta** [1] - 9:1

**member** [3] - 19:6, 19:7, 20:16
**members** [11] - 5:12, 18:17, 19:4, 19:14, 19:17, 20:14, 20:18, 22:18, 23:3, 38:3, 39:11
**memos** [1] - 41:2
**mention** [1] - 27:18
**mere** [1] - 9:6
**met** [2] - 5:11, 18:12
**methodology** [2] - 22:21, 33:22
**might** [6] - 3:12, 4:1, 9:12, 9:22, 43:3, 52:21
**million** [1] - 20:4
**mislead** [1] - 4:5
**misleading** [3] - 17:11, 48:18, 48:23
**misrepresentation** [17] - 4:9, 4:25, 22:15, 23:16, 26:7, 26:14, 27:11, 27:24, 35:1, 35:2, 39:5, 42:16, 44:7, 46:4, 46:11, 47:4, 51:11
**misrepresentations** [5] - 8:9, 14:8, 42:13, 43:11, 49:4
**misstatement** [1] - 40:12
**mix** [1] - 29:17
**model** [20] - 5:2, 10:2, 12:13, 14:14, 14:15, 14:20, 23:5, 27:7, 34:11, 36:9, 36:17, 37:12, 37:18, 37:20, 38:3, 38:21, 39:11, 39:16, 40:22, 51:19
**Molly** [1] - 3:2
**moment** [1] - 33:10
**Monday** [2] - 1:10, 54:11
**money** [6] - 15:12, 22:23, 32:2, 32:7, 52:9, 52:17
**month** [4] - 10:24, 35:4, 37:4, 47:4
**months** [2] - 13:3, 42:6
**months '** [2] - 12:6, 14:1
**most** [4] - 19:25, 22:4, 22:6, 53:9
**motion** [10] - 2:13, 11:25, 18:4, 18:10, 27:1, 32:12, 34:1, 38:15, 48:17, 48:25

**motions** [2] - 52:19, 53:16
**motivated** [2] - 22:6, 22:7
**Motor** [2] - 10:18, 36:6
**Motors** [1] - 10:8
**move** [3] - 3:19, 25:1, 34:8
**moved** [1] - 18:4
**moving** [8] - 9:2, 11:15, 13:7, 23:12, 26:19, 28:8, 52:9, 52:17
**MR** [71] - 2:18, 2:25, 3:16, 3:18, 3:22, 4:4, 6:18, 7:1, 9:22, 14:18, 15:15, 16:3, 16:9, 16:20, 16:24, 17:16, 17:23, 17:25, 25:2, 25:10, 25:13, 26:2, 26:16, 29:14, 29:15, 31:9, 31:16, 31:19, 31:23, 31:25, 32:4, 32:10, 32:22, 32:25, 33:2, 33:9, 34:18, 34:23, 35:1, 35:9, 35:17, 35:21, 36:5, 36:21, 36:23, 37:8, 38:1, 38:11, 38:24, 39:2, 39:9, 40:19, 43:5, 45:11, 45:25, 46:5, 46:8, 46:12, 46:15, 46:17, 46:18, 47:9, 47:12, 49:25, 50:2, 50:14, 52:24, 53:2, 53:20, 53:24, 54:11
**MS** [1] - 3:1
**multiple** [2] - 38:2, 52:19
**multiples** [1] - 53:3
**muscle** [2] - 20:3, 22:8
**must** [8] - 9:4, 11:9, 18:16, 19:7, 24:1, 24:3, 27:9, 48:18
**Mustang** [1] - 9:24

## N

**name** [1] - 3:5
**named** [1] - 22:3
**names** [1] - 6:6
**nationwide** [10] - 4:11, 23:15, 23:24, 24:3, 24:20, 25:7, 25:24, 26:5, 26:17, 52:13

**Neale** [2] - 23:20, 25:15
**near** [1] - 26:11
**necessarily** [4] - 6:20, 13:22, 21:18, 21:22
**necessary** [3] - 4:17, 19:1, 49:11
**need** [7] - 3:12, 20:13, 20:23, 28:1, 30:20, 43:13, 53:16
**needed** [1] - 39:21
**needing** [1] - 8:22
**negligence** [1] - 51:14
**negligent** [10] - 4:9, 23:16, 26:6, 26:13, 27:10, 27:23, 46:3, 46:10, 46:11, 51:11
**negotiate** [1] - 21:8
**negotiations** [1] - 23:1
**NeoGenis** [2] - 8:10, 14:3
**neutral** [1] - 53:2
**never** [9] - 7:18, 11:20, 15:9, 20:19, 30:13, 34:21, 35:15, 44:5, 49:21
**new** [4] - 12:7, 12:14, 34:21, 37:17
**New** [21] - 6:16, 6:18, 8:3, 10:8, 21:6, 23:16, 24:16, 25:4, 25:5, 26:7, 28:23, 28:24, 30:3, 30:4, 31:11, 41:12, 41:14, 44:10, 44:11, 48:7, 48:15
**next** [6] - 12:16, 16:6, 20:15, 20:23, 37:4, 37:12
**nine** [1] - 3:23
**Ninth** [1] - 11:12
**non** [1] - 43:1
**non-enforceable** [1] - 43:1
**note** [3] - 21:1, 29:1, 47:3
**noted** [2] - 46:21, 47:20
**notes** [2] - 3:10, 54:20
**nothing** [2] - 9:12, 44:24
**notice** [1] - 53:24
**nowhere** [1] - 39:7
**number** [2] - 2:14, 12:21
**numerosity** [1] - 18:13

# O

**objective** [2] - 30:5, 30:15
**obligated** [1] - 7:10
**obligations** [1] - 4:16
**obvious** [1] - 43:20
**obviously** [5] - 33:5, 40:25, 42:9, 42:17, 44:7
**occur** [1] - 21:22
**occurred** [4] - 9:4, 14:11, 44:18, 49:5
**occurs** [5] - 8:2, 29:25, 31:2, 52:8, 52:14
**October** [1] - 24:16
**OF** [1] - 1:1
**office** [1] - 3:5
**Official** [1] - 54:22
**omission** [5] - 42:17, 42:21, 42:22, 43:11, 43:15
**omissions** [7] - 39:23, 42:16, 43:9, 43:16, 49:3, 49:6
**omitted** [1] - 43:3
**once** [1] - 44:18
**one** [36] - 8:16, 9:16, 10:2, 10:24, 12:17, 13:5, 14:16, 15:17, 19:2, 19:3, 19:5, 21:8, 25:6, 29:8, 30:16, 33:15, 33:23, 34:21, 35:5, 37:13, 37:20, 38:12, 40:3, 41:4, 41:21, 42:2, 42:7, 47:4, 47:18, 50:9, 51:4, 51:19, 53:10, 53:11, 53:16
**one-year** [4] - 12:17, 41:21, 50:9, 51:19
**ones** [3] - 22:19, 25:11, 32:16
**online** [2] - 49:17, 49:18
**open** [1] - 52:25
**operation** [1] - 44:14
**opinion** [1] - 17:4
**opportunity** [2] - 53:6, 53:21
**opposite** [2] - 37:22, 37:24
**opposition** [3] - 21:17, 27:13, 27:21
**oral** [5] - 26:20, 26:21, 26:22, 26:23, 51:3
**order** [2] - 14:15,

21:11
**Organo** [1] - 18:19
**originally** [2] - 13:25, 29:20
**outside** [2] - 23:25, 24:19
**overlook** [1] - 22:12
**own** [4] - 19:23, 37:9, 39:22, 44:1

# P

**P.A** [1] - 2:2
**P.C** [1] - 1:23
**p.m** [2] - 1:10, 54:15
**pace** [1] - 36:10
**pacer** [1] - 36:9
**page** [2] - 11:25, 39:3
**paid** [9] - 22:24, 22:25, 29:7, 30:23, 31:19, 48:10, 50:6, 50:7, 51:7
**palpable** [1] - 11:10
**papers** [2] - 3:11, 37:9
**paragraph** [3] - 19:24, 22:10, 38:12
**parenthesis** [1] - 14:8
**part** [5] - 13:19, 39:23, 44:20, 45:10, 53:13
**partial** [2] - 42:2, 42:5
**partially** [1] - 13:18
**particular** [5] - 33:15, 33:21, 38:11, 43:12, 43:14
**particularity** [4] - 27:15, 27:23, 43:19, 44:9
**particularly** [1] - 42:8
**parties** [1] - 26:23
**parties '** [1] - 5:23
**Party** [1] - 29:4
**party** [3] - 23:18, 29:6, 42:1
**pay** [3] - 15:12, 15:15, 41:22
**paying** [2] - 31:15, 32:8
**pays** [1] - 36:11
**pending** [1] - 53:15
**Pennzoil** [1] - 16:25
**people** [16] - 9:17, 15:8, 15:10, 15:11, 15:12, 15:16, 15:19, 16:1, 19:22, 20:4, 22:5, 22:7, 30:23, 31:14, 37:19, 40:12
**perfect** [1] - 54:13
**period** [1] - 9:18

**permissible** [3] - 13:19, 28:13, 49:13
**permit** [1] - 9:5
**person** [6] - 30:5, 30:8, 30:20, 33:21, 36:8, 42:9
**personal** [1] - 24:2
**perspective** [1] - 23:3
**Phillips** [1] - 2:14
**PHILLIPS** [1] - 1:3
**place** [1] - 44:17
**plain** [1] - 19:10
**plaintiff** [21] - 8:4, 8:5, 8:6, 8:11, 10:10, 10:23, 11:8, 19:2, 22:17, 23:3, 24:11, 25:21, 28:4, 28:18, 29:7, 36:20, 48:18, 50:6, 51:12, 53:13, 54:6
**plaintiffs** [48] - 2:19, 2:24, 3:22, 4:4, 4:8, 4:15, 4:21, 5:19, 5:21, 5:24, 6:7, 7:10, 7:16, 7:23, 8:8, 8:21, 9:10, 10:13, 10:16, 11:11, 11:20, 11:24, 13:14, 13:20, 19:11, 19:18, 19:19, 20:7, 20:17, 21:1, 22:4, 22:5, 22:12, 22:16, 22:23, 23:9, 23:13, 24:18, 26:21, 27:12, 28:3, 28:11, 28:23, 29:1, 48:4, 48:9, 48:12, 48:22
**Plaintiffs** [3] - 1:4, 1:25, 13:14
**plaintiffs '** [15] - 4:13, 5:8, 6:9, 7:1, 9:9, 14:7, 19:23, 21:17, 23:7, 24:5, 27:10, 46:20, 47:12, 48:3, 49:2
**planning** [2] - 38:18, 40:21
**plans** [1] - 42:11
**plant** [2] - 12:20, 12:21
**platform** [1] - 12:15
**platforms** [1] - 12:16
**plausible** [2] - 9:20, 16:8
**plead** [4] - 28:11, 43:1, 48:5, 48:13
**pleading** [19] - 4:15, 4:18, 6:1, 6:4, 6:9, 7:11, 7:21, 8:15,

10:7, 18:1, 18:6, 19:11, 27:15, 28:6, 28:10, 43:18, 44:9, 44:11, 49:11
**pleadings** [4] - 9:3, 10:15, 24:15, 49:6
**pleads** [1] - 22:15
**pleased** [1] - 2:20
**pled** [6] - 4:22, 28:1, 28:9, 28:22, 29:1, 48:9
**point** [12] - 5:8, 13:4, 15:21, 24:5, 25:15, 28:21, 31:2, 36:7, 36:8, 45:23
**points** [2] - 27:22, 38:2
**portion** [2] - 33:5, 34:1
**portions** [1] - 13:18
**position** [2] - 28:25, 53:1
**possessed** [1] - 19:25
**possibility** [1] - 53:11
**possible** [1] - 46:19
**possibly** [1] - 26:17
**post** [1] - 12:20
**potential** [2] - 11:12, 11:14
**potentially** [2] - 52:4, 53:11
**Poulin** [1] - 10:17, 36:6, 47:2
**powerful** [1] - 19:25
**practice** [1] - 43:7
**practices** [1] - 40:14
**precluded** [1] - 26:24
**predicting** [1] - 16:12
**prediction** [2] - 34:12, 35:9
**predominance** [7] - 5:14, 18:21, 18:25, 19:7, 19:15, 20:24, 22:13
**predominate** [5] - 5:17, 18:24, 19:9, 21:15, 21:25
**premature** [1] - 21:19
**premised** [1] - 24:20
**premium** [11] - 31:1, 31:7, 31:20, 32:7, 32:15, 32:21, 46:21, 46:23, 50:3, 50:12, 51:7
**premiums** [2] - 30:23, 46:24
**preparing** [1] - 41:2
**present** [3] - 17:6,

24:11, 24:21
**presentation** [3] - 2:23, 3:3, 43:23
**presented** [1] - 34:10
**preserved** [1] - 20:16
**presiding** [1] - 2:11
**presumed** [2] - 42:1, 42:8
**presuming** [1] - 4:21
**pretty** [2] - 12:10, 14:4
**prevent** [1] - 37:11
**price** [21] - 20:25, 21:9, 29:8, 30:23, 31:1, 31:7, 31:11, 31:20, 32:14, 32:21, 33:3, 33:4, 36:11, 36:13, 40:9, 40:11, 41:22, 46:21, 50:3, 50:7, 50:11
**prices** [1] - 22:24
**pro** [1] - 2:23
**problem** [7] - 35:16, 42:15, 43:25, 45:18, 47:16
**proceed** [1] - 34:5
**proceeding** [1] - 5:16
**proceedings** [2] - 21:14, 54:20
**produce** [5] - 12:6, 14:1, 40:2, 47:17, 47:24
**produced** [4] - 4:7, 27:8, 42:20, 47:19
**producing** [6] - 35:3, 35:4, 42:5, 42:19, 50:8
**product** [8] - 8:14, 17:2, 17:5, 29:5, 48:10, 48:20, 52:16
**production** [11] - 3:25, 13:5, 38:18, 38:19, 39:7, 39:19, 40:21, 40:22, 41:4, 47:23
**productive** [1] - 30:4
**products** [1] - 48:24
**Products** [2] - 50:4, 50:6
**promise** [14] - 34:16, 35:14, 35:20, 35:22, 35:24, 36:2, 40:1, 42:24, 43:1, 43:2, 43:4, 51:24, 51:25, 52:2
**promised** [1] - 36:8
**pronounce** [1] - 3:6
**proof** [5] - 5:17, 19:9, 19:10, 21:16, 22:1

**proper** [1] - 24:6
**properly** [3] - 4:22, 28:9, 47:3
**proposed** [4] - 5:12, 18:22, 19:14, 19:17
**proposition** [1] - 52:2
**protection** [8] - 28:17, 28:19, 29:23, 30:14, 33:11, 36:1
**Protection** [1] - 6:15
**prove** [2] - 19:1, 19:3
**proved** [2] - 19:6, 33:19
**proven** [1] - 10:24
**provide** [11] - 4:16, 4:18, 5:1, 6:2, 6:3, 6:6, 6:9, 7:2, 7:4, 7:10, 13:25
**provided** [1] - 12:5
**provides** [4] - 14:4, 14:7, 18:5, 18:8
**providing** [2] - 6:23, 27:23
**proving** [1] - 33:22
**public** [1] - 11:2
**publications** [1] - 4:25
**puffery** [1] - 15:5
**pull** [1] - 3:10
**purchase** [21] - 6:7, 6:11, 7:12, 7:18, 8:14, 15:7, 15:16, 19:18, 19:19, 19:22, 21:1, 22:6, 22:19, 27:20, 29:5, 29:7, 31:3, 31:11, 45:13, 49:15, 49:18
**purchased** [9] - 7:5, 7:17, 13:14, 22:3, 30:9, 38:3, 39:11, 49:19, 50:7
**purchaser** [1] - 21:25
**purchasers** [3] - 4:12, 23:13, 48:10
**purchases** [1] - 15:17
**purchasing** [6] - 7:25, 15:8, 15:11, 21:24, 48:19, 48:24
**purported** [2] - 9:5, 24:20
**purposes** [4] - 19:20, 20:5, 20:9, 20:21
**pursue** [1] - 32:20
**put** [7] - 2:16, 9:16, 21:9, 30:24, 33:17, 38:14, 40:23, 43:25, 54:2, 54:4
**putting** [2] - 28:12,

37:17
**puzzle** [3] - 4:18, 6:4, 49:10

**Q**

**qualify** [2] - 4:24, 26:22
**quality** [2] - 17:2, 36:3
**quantity** [1] - 19:1
**quasi** [1] - 28:12
**questions** [6] - 12:8, 18:24, 19:16, 19:17, 21:10, 46:2
**Quickset** [1] - 11:5
**quote** [10] - 10:10, 12:2, 14:4, 18:16, 19:25, 22:9, 34:11, 38:21, 48:21
**quoted** [3] - 8:11, 12:19, 13:18
**quotes** [1] - 13:15
**quoting** [3] - 12:11, 14:5, 19:24

**R**

**raised** [2] - 28:16, 33:25
**raising** [2] - 24:6, 43:8
**ramp** [2] - 38:17, 40:20
**ranging** [1] - 21:2
**rare** [4] - 15:13, 16:6, 37:3, 37:6
**rarer** [1] - 9:18
**rather** [2] - 7:4, 11:11
**ravage** [1] - 47:22
**ravaging** [1] - 17:6
**re** [7] - 8:7, 23:22, 23:23, 24:17, 25:16, 48:6
**read** [11] - 3:11, 12:9, 13:9, 13:17, 13:20, 27:1, 37:4, 47:7, 51:17, 52:5, 54:5
**reading** [1] - 37:2
**reality** [1] - 31:24
**really** [10] - 8:22, 13:5, 13:20, 16:13, 16:24, 25:12, 33:24, 35:14, 46:10, 53:3
**reason** [11] - 11:16, 16:21, 17:10, 17:25, 20:11, 29:11, 30:9, 33:19, 36:5, 43:8, 46:25

**reasonable** [8] - 28:2, 30:5, 30:6, 30:16, 32:11, 36:24, 36:25, 38:15
**reasonably** [1] - 28:4
**reasons** [12] - 4:14, 10:14, 15:16, 15:23, 19:22, 19:24, 20:4, 20:11, 21:24, 22:8, 28:11
**received** [2] - 46:24, 48:11
**recognized** [1] - 27:12
**record** [2] - 2:17, 12:10
**red** [1] - 45:5
**redressable** [2] - 24:11, 24:12
**redundant** [1] - 18:7
**refer** [16] - 4:1, 7:8, 8:2, 8:11, 8:25, 10:7, 11:13, 12:4, 13:10, 14:2, 24:13, 25:15, 44:15, 48:6, 48:13, 53:12
**reference** [4] - 11:24, 19:23, 20:2, 49:5
**referenced** [4] - 7:24, 11:23, 13:15, 13:22
**references** [2] - 6:8, 8:17
**referred** [2] - 10:5, 52:21
**referring** [2] - 11:2, 44:13
**reflects** [1] - 23:7
**regard** [13] - 29:22, 30:18, 32:14, 33:2, 33:3, 33:9, 33:25, 39:18, 41:10, 43:18, 44:12, 44:20, 50:2
**regarding** [3] - 23:15, 49:3, 49:4
**regardless** [1] - 9:25
**regularly** [1] - 48:21
**relate** [1] - 9:9
**related** [2] - 10:18, 39:24
**relates** [1] - 44:14
**relatively** [2] - 52:14, 52:15
**released** [1] - 10:1
**relevant** [2] - 7:20, 27:4
**reliance** [22] - 6:20, 7:21, 7:22, 8:23, 20:13, 21:12, 21:23, 27:21, 30:2, 41:10, 41:11, 41:12, 41:15,

41:18, 41:24, 41:25, 42:1, 42:8, 42:12, 43:14, 43:17, 48:4
**relied** [7] - 7:2, 7:11, 13:21, 13:23, 28:4, 41:16, 43:13
**rely** [2] - 8:21, 13:10
**relying** [3] - 15:6, 17:4, 44:19
**remainder** [1] - 24:23
**remains** [2] - 10:1, 10:3
**remember** [1] - 16:10
**remind** [2] - 13:2, 14:21
**renege** [2] - 40:1, 42:23
**reneged** [3] - 43:3, 51:22
**reneging** [1] - 51:23
**replead** [3] - 50:20, 53:13, 54:6
**repleading** [1] - 52:9
**Report** [4] - 11:22, 12:11, 13:21, 47:21
**Reporter** [1] - 54:22
**represent** [2] - 25:21, 26:10
**representation** [4] - 18:24, 36:16, 39:25, 51:3
**representations** [1] - 48:11
**representative** [2] - 10:20, 12:12
**representative 's** [1] - 18:16
**representatives** [5] - 12:2, 20:8, 24:1, 26:10
**represented** [1] - 24:19
**require** [4] - 7:20, 27:15, 30:2, 39:20
**required** [10] - 7:14, 7:22, 23:21, 41:12, 41:13, 41:14, 41:25, 42:1, 44:10
**requirement** [2] - 18:15, 19:11
**requirements** [10] - 5:10, 6:20, 7:19, 12:7, 12:13, 12:14, 18:11, 18:13, 19:15, 28:6
**requires** [1] - 23:18
**resale** [3] - 9:16, 9:19, 9:20

**research** [1] - 15:10
**reserving** [3] - 40:1, 40:7, 42:23
**resided** [1] - 24:1
**residents** [1] - 23:14
**resolved** [1] - 53:11
**resorting** [1] - 9:6
**resources** [1] - 53:15
**respect** [41] - 5:23, 6:18, 6:23, 7:1, 8:23, 9:2, 9:3, 10:6, 10:15, 11:4, 12:12, 12:18, 13:2, 14:18, 14:22, 15:5, 15:11, 18:3, 18:14, 18:21, 20:15, 20:25, 21:11, 21:12, 22:13, 24:23, 26:4, 26:11, 27:10, 27:14, 34:9, 42:12, 42:13, 46:20, 47:2, 47:12, 48:3, 49:2, 49:7, 49:14, 51:15
**response** [1] - 39:4
**rest** [3] - 6:23, 13:24, 14:22
**result** [4] - 7:18, 11:10, 41:23, 49:10
**resulted** [1] - 23:6
**resulting** [1] - 6:11
**retailer** [1] - 29:8
**retailers** [1] - 29:4
**reveal** [1] - 42:23
**review** [1] - 8:19
**rights** [1] - 44:20
**rise** [1] - 2:10
**risk** [1] - 48:11
**road** [1] - 19:21
**robinhood** [1] - 9:1
**ROFFE** [27] - 2:4, 3:16, 3:18, 3:22, 4:4, 6:18, 7:1, 9:22, 14:18, 15:15, 16:3, 16:9, 16:20, 16:24, 17:16, 17:23, 17:25, 25:2, 25:10, 25:13, 26:2, 26:16, 29:14, 31:23, 46:18, 47:9, 47:12
**Roffe** [2] - 3:5, 3:7
**room** [1] - 53:11
**rounds** [1] - 52:19
**RPR** [1] - 54:22
**Rule** [18] - 4:16, 4:20, 5:14, 6:1, 6:14, 6:19, 7:14, 7:19, 8:5, 8:15, 18:2, 18:5, 18:8, 18:21, 19:15, 28:10, 44:10,

49:13

**rule** [2] - 18:12, 53:17

**ruling** [4] - 24:10, 54:4, 54:5

**run** [19] - 14:14, 17:21, 17:22, 30:21, 33:16, 34:12, 34:14, 35:4, 38:5, 39:7, 39:13, 39:15, 41:21, 44:4, 45:15, 45:16, 50:10, 51:19

**runs** [1] - 38:7

## S

**sake** [2] - 4:2, 7:13

**sale** [1] - 9:11

**sales** [2] - 45:10, 50:25

**salesman** [1] - 15:5

**Sansipar** [1] - 25:16

**satisfy** [2] - 8:5, 26:17

**saw** [18] - 4:17, 7:2, 7:3, 7:6, 7:7, 7:11, 7:16, 7:24, 13:20, 13:22, 22:16, 22:18, 27:19, 37:5, 41:15, 48:19, 48:23, 49:9

**scandalous** [1] - 18:8

**scientific** [1] - 17:2

**seated** [1] - 2:13

**Second** [2] - 48:21, 50:5

**second** [4] - 4:21, 11:16, 42:19, 45:6

**seconds** [1] - 20:2

**section** [1] - 29:18

**see** [16] - 4:17, 16:15, 17:12, 35:23, 37:25, 45:1, 45:2, 49:9, 49:20, 49:21, 50:20, 51:13, 52:1, 52:20, 54:9, 54:14

**seek** [3] - 4:11, 13:17, 28:4

**seeking** [2] - 22:23, 23:18

**seem** [1] - 13:14

**selfish** [1] - 53:14

**sell** [4] - 10:11, 15:9, 46:22

**selling** [3] - 35:6, 38:20, 50:9

**send** [1] - 32:2

**sending** [1] - 41:2

**Sensipar** [2] - 23:23, 24:17

**sentences** [1] - 14:23

**September** [2] - 1:10, 48:7

**sequencing** [1] - 12:20

**serialized** [1] - 12:3

**serious** [1] - 52:12

**seriously** [1] - 51:12

**session** [1] - 2:11

**set** [3] - 48:8, 50:24, 54:11

**seven** [1] - 3:22

**Sharifan** [3] - 8:9, 8:25, 14:3

**shoes** [1] - 26:11

**shot** [1] - 14:16

**show** [6] - 11:9, 24:2, 24:11, 37:9, 48:18, 51:6

**shut** [1] - 13:6

**side** [1] - 28:12

**significantly** [1] - 19:2

**similar** [1] - 10:4

**simply** [4] - 6:3, 8:11, 10:12, 27:22

**single** [11] - 14:14, 22:15, 22:17, 33:16, 34:11, 38:4, 38:5, 39:7, 39:12, 39:15, 44:4

**single -run** [1] - 33:16

**single -year** [3] - 38:5, 39:7, 39:12

**sitting** [1] - 50:16

**situation** [1] - 10:25

**six** [4] - 12:6, 14:1, 35:4, 42:6

**six-month** [1] - 35:4

**slightly** [1] - 43:10

**Sobel** [1] - 10:4

**softball** [1] - 17:19

**sold** [3] - 9:10, 16:5, 23:4

**sole** [1] - 15:7

**someone** [1] - 35:25

**sometimes** [1] - 53:3

**sorry** [2] - 17:16, 32:17

**sort** [1] - 50:18

**sorts** [1] - 6:4

**Southern** [2] - 8:10, 14:3

**spacing** [1] - 12:21

**span** [1] - 39:19

**speaker** [1] - 42:3

**specific** [9] - 7:2, 7:7, 7:24, 13:17, 22:9, 24:18, 27:18, 27:21, 43:12

**specifically** [4] - 4:4, 12:1, 12:4, 23:14

**specificity** [2] - 7:10, 8:23

**spend** [3] - 52:9, 52:17, 53:15

**split** [1] - 24:5

**spoiler** [1] - 54:7

**sports** [1] - 9:18

**SRT** [1] - 3:25

**Stacy** [1] - 54:22

**stage** [7] - 5:15, 15:2, 21:14, 21:22, 24:8, 24:9, 52:11

**stand** [1] - 26:11

**standard** [6] - 10:7, 28:10, 30:1, 30:6, 30:16, 43:19

**standards** [3] - 6:1, 8:15, 18:1

**standing** [10] - 5:20, 23:12, 23:13, 23:18, 23:19, 24:10, 24:18, 25:14, 26:1, 26:4

**start** [6] - 3:15, 26:20, 29:18, 41:1, 41:2, 41:5

**starting** [1] - 37:17

**State** [2] - 10:18, 11:6

**state** [17] - 3:11, 3:23, 5:24, 6:14, 6:21, 7:20, 24:7, 24:18, 25:6, 25:8, 25:20, 27:22, 28:19, 35:25, 46:9, 50:18, 52:13

**state -wide** [1] - 52:13

**statement** [24] - 11:21, 16:17, 16:18, 17:20, 27:5, 27:21, 28:3, 30:7, 34:13, 34:15, 35:16, 36:1, 36:3, 37:2, 37:6, 37:9, 37:23, 38:9, 42:3, 42:4, 42:5, 45:15, 48:3, 51:20

**statements** [42] - 3:24, 4:22, 4:24, 5:3, 5:4, 5:5, 5:6, 6:8, 6:10, 7:2, 7:3, 7:4, 7:5, 7:11, 7:24, 8:6, 10:24, 12:1, 12:24, 13:3, 13:11, 13:13, 14:22, 15:5, 16:10, 16:11, 17:1, 17:10, 17:12, 17:15, 22:9, 22:16, 22:18, 27:18, 28:4, 45:9, 45:11, 45:12, 47:14, 48:2, 51:18

**STATES** [1] - 1:1

**states** [13] - 7:22, 8:1, 8:24, 23:14, 23:25, 24:19, 24:21, 26:10, 27:15, 27:25, 32:19, 40:13, 41:25

**States** [1] - 1:16

**states '** [1] - 3:13

**stating** [2] - 34:10, 34:13

**status** [3] - 26:18, 53:24, 54:1

**statute** [4] - 25:22, 30:4, 30:5, 43:10

**statutes** [3] - 25:20, 29:23, 29:24

**statutory** [1] - 30:11

**stay** [1] - 53:12

**stemming** [2] - 3:24, 11:6

**stenographic** [1] - 54:20

**sticker** [3] - 31:15, 33:3, 33:4

**still** [4] - 10:1, 10:3, 11:9, 48:5

**stood** [1] - 52:2

**straight** [1] - 29:21

**Street** [1] - 1:13

**stricken** [1] - 5:9

**strike** [7] - 18:4, 18:6, 18:9, 34:1, 34:2, 52:10

**striking** [1] - 21:21

**struggling** [1] - 40:15

**stuff** [1] - 15:3

**suable** [1] - 31:13

**subclass** [1] - 25:5

**subject** [4] - 19:8, 19:9, 33:3, 40:24

**subjective** [1] - 30:9

**substance** [1] - 18:25

**substantially** [1] - 10:22

**sue** [3] - 23:13, 29:24, 31:9

**sued** [1] - 36:14

**suffered** [3] - 9:11, 11:10, 23:5

**sufficient** [12] - 4:20, 5:17, 6:10, 7:20, 9:14, 11:12, 11:14, 21:16, 27:23, 28:12, 44:9, 47:1

**sufficiently** [7] - 6:1, 18:23, 28:22, 28:25, 29:9, 41:8, 48:5

**suggest** [1] - 51:9

**suggesting** [2] - 37:5, 40:16

**Sun** [2] - 50:4, 50:5

**superior** [2] - 11:5, 42:9

**Supp** [1] - 48:16

**support** [6] - 6:22, 10:17, 11:19, 24:17, 28:22, 29:10

**supports** [1] - 28:25

**supposed** [2] - 14:7, 48:12

**Supreme** [3] - 9:8, 23:21, 36:14

**surrounding** [1] - 5:1

**surveys** [1] - 33:13

**survive** [3] - 7:15, 7:21, 29:4

**SUV** [3] - 19:25, 20:3, 22:8

**swamp** [1] - 19:16

**switched** [1] - 12:13

## T

**table** [2] - 2:21, 3:3

**tanks** [1] - 9:20

**tarp** [1] - 20:19

**terms** [6] - 5:22, 18:17, 26:24, 43:16, 49:20

**testing** [1] - 17:2

**tests** [1] - 18:22

**Texas** [6] - 8:9, 8:10, 8:22, 8:25, 14:3, 25:21

**THE** [71] - 1:1, 1:1, 1:16, 2:12, 3:9, 3:17, 3:21, 4:3, 6:13, 6:25, 9:15, 14:12, 15:12, 15:25, 16:4, 16:13, 16:23, 17:9, 17:18, 17:24, 24:25, 25:3, 25:11, 31:4, 31:14, 31:17, 31:21, 31:24, 32:1, 32:6, 32:18, 32:23, 33:1, 33:8, 34:15, 34:20, 34:24, 35:7, 35:11, 35:19, 35:23, 36:19, 36:22, 37:1, 37:15, 38:9, 38:23, 38:25, 39:4, 40:10, 42:25, 45:6, 45:24, 46:3, 46:6, 46:10, 46:14, 46:16, 47:6,

47:11, 49:24, 50:1, 50:13, 50:15, 53:8, 53:23, 53:25, 54:13
**themselves** [1] - 47:10
**theory** [2] - 18:18, 18:19
**therefore** [4] - 5:3, 6:21, 22:24, 23:10
**therein** [2] - 5:1, 15:6
**they've** [2] - 18:1, 47:5
**thinking** [9] - 39:8, 50:17, 50:22, 51:5, 51:10, 52:8, 53:17, 53:18, 53:19
**third** [4] - 5:8, 29:6, 42:19
**Third** [6] - 23:17, 23:20, 23:23, 24:5, 25:13, 29:4
**three** [2] - 7:23, 15:18
**throughout** [1] - 8:1
**ticked** [1] - 40:12
**tie** [1] - 22:17
**Tijerina** [1] - 24:13
**timing** [1] - 45:19
**today** [11] - 2:21, 2:24, 3:3, 3:7, 4:1, 15:10, 35:6, 51:4, 51:16, 51:17, 53:4
**today 's** [1] - 3:19
**together** [2] - 37:17, 54:4
**took** [1] - 37:12
**topic** [1] - 27:17
**Torque** [4] - 11:22, 12:11, 13:21, 47:21
**tort** [1] - 46:6
**Toshiba** [2] - 8:7, 48:7
**totally** [1] - 17:7
**tow** [1] - 20:1
**town** [1] - 21:7
**trade** [1] - 40:14
**trails** [1] - 54:3
**transcript** [1] - 54:20
**treading** [1] - 19:21
**treated** [1] - 43:10
**tried** [1] - 41:9
**tries** [1] - 33:12
**trips** [1] - 20:20
**true** [8] - 9:23, 28:3, 31:21, 31:22, 40:15, 42:4, 51:19, 54:19
**truth** [2] - 35:18, 43:8
**try** [4] - 21:8, 29:20, 46:18, 50:18
**trying** [6] - 25:3, 25:24, 26:9, 45:7,

45:9, 53:9
**turn** [2] - 14:15, 14:19
**turned** [1] - 36:17
**turns** [1] - 36:12
**two** [7] - 7:6, 11:3, 14:23, 38:3, 39:20, 42:7, 42:16
**type** [2] - 5:7, 50:10
**types** [1] - 33:19
**typical** [2] - 20:8, 33:18
**typicality** [6] - 5:14, 18:14, 18:15, 19:15, 20:6, 22:2
**typically** [2] - 33:11, 44:21

## U

**U.S** [3] - 9:8, 23:21, 54:23
**UCC** [1] - 45:11
**UCL** [2] - 11:6, 11:7
**ultimately** [2] - 31:10, 48:25
**unconscionable** [1] - 29:25
**under** [20] - 3:23, 4:16, 4:20, 5:14, 7:14, 11:12, 18:1, 19:15, 20:18, 24:6, 24:22, 25:20, 25:22, 41:12, 41:13, 41:14, 43:9, 45:11, 45:19, 49:13
**underlying** [3] - 4:23, 5:13, 18:19
**understandable** [1] - 13:9
**uniform** [1] - 22:14
**unique** [1] - 15:17
**UNITED** [1] - 1:1
**United** [1] - 1:16
**unjust** [15] - 4:9, 5:25, 23:16, 26:6, 26:13, 28:8, 28:22, 29:2, 29:10, 29:11, 31:6, 31:13, 32:19, 32:21, 51:1
**unjustly** [1] - 51:6
**unknown** [5] - 12:25, 13:12, 17:7, 47:25, 48:2
**unless** [3] - 5:6, 34:3, 46:1
**unlikely** [2] - 20:10, 52:10
**unrepresented** [1] -

24:21
**unspecified** [2] - 8:13
**unsupported** [1] - 10:10
**unusual** [1] - 34:4
**up** [8] - 3:10, 12:20, 29:17, 38:17, 40:20, 49:17, 49:18, 54:3
**US** [3] - 1:6, 2:14, 27:4

## V

**valid** [1] - 24:21
**value** [16] - 9:5, 9:9, 9:13, 9:16, 9:19, 9:20, 10:7, 10:9, 10:12, 10:17, 16:6, 23:5, 33:13, 33:17, 36:12, 52:18
**varies** [1] - 19:6
**various** [5] - 13:1, 15:1, 22:8, 23:8, 50:17
**vary** [1] - 19:2
**vehicle** [47] - 4:1, 4:6, 4:12, 5:3, 6:8, 6:9, 7:6, 7:25, 9:10, 9:11, 9:13, 10:1, 10:3, 11:20, 12:2, 12:4, 13:14, 15:11, 15:13, 19:19, 20:16, 20:18, 21:2, 21:24, 21:25, 22:6, 22:20, 23:4, 27:4, 27:7, 27:20, 33:14, 34:19, 35:2, 38:19, 44:15, 44:17, 44:23, 44:24, 45:20, 47:18, 47:19, 49:20, 50:7, 50:9
**vehicles** [10] - 6:11, 12:6, 14:1, 15:1, 22:3, 38:4, 38:6, 39:12, 39:15, 42:21
**Vermont** [9] - 10:18, 10:19, 10:20, 36:7, 36:14, 36:20, 47:2, 52:4
**version** [3] - 40:2, 42:19
**via** [1] - 53:24
**vice** [1] - 2:23
**video** [14] - 4:23, 11:18, 11:21, 14:12, 14:13, 14:19, 14:24, 14:25, 15:8, 16:11, 26:22, 43:21, 43:23
**view** [1] - 40:10
**viewed** [2] - 8:6, 8:13

**violated** [1] - 44:7
**violation** [2] - 25:4, 30:7
**Virginia** [3] - 25:22, 27:12, 46:7
**virtually** [1] - 30:2
**Volkswagen** [1] - 24:14
**Volvo** [2] - 23:20, 25:16

## W

**wait** [4] - 15:4, 21:20, 24:9, 45:6
**warrant** [1] - 18:23
**warranties** [3] - 27:2, 27:3, 50:24
**warranty** [39] - 4:10, 5:23, 23:15, 25:7, 25:9, 26:5, 26:6, 26:9, 26:13, 26:20, 26:23, 26:25, 27:2, 27:6, 27:8, 28:14, 28:16, 28:19, 44:12, 44:13, 44:14, 44:21, 45:2, 45:8, 45:14, 45:16, 45:17, 45:20, 45:21, 45:22, 49:15, 49:18, 49:21, 50:23, 50:25
**week** [3] - 53:21, 54:1, 54:9
**welcome** [2] - 3:9, 53:6
**Wendy 's** [1] - 48:14
**whereas** [1] - 19:4
**Whirlpool** [4] - 28:24, 29:3, 29:8, 29:10
**whole** [1] - 51:24
**wide** [3] - 30:19, 33:22, 52:13
**Wildlife** [1] - 9:7
**Wilmington** [1] - 1:13
**windshield** [1] - 45:18
**WL** [1] - 12:16
**words** [2] - 37:20, 40:3
**workmanship** [1] - 44:22
**works** [2] - 15:8, 53:3
**world** [5] - 13:1, 15:17, 17:6, 20:1, 51:24
**worth** [3] - 12:6, 14:1, 48:11
**worthy** [1] - 15:3
**written** [4] - 26:25,

27:6, 28:13, 28:14

## Y

**year** [24] - 5:2, 10:2, 12:13, 12:17, 14:14, 14:15, 14:20, 23:5, 24:16, 34:12, 37:20, 38:3, 38:5, 38:18, 38:21, 39:7, 39:11, 39:12, 39:16, 40:4, 40:21, 41:21, 50:9, 51:19
**year 's** [1] - 34:13
**years** [4] - 11:3, 15:18, 39:20, 42:7
**York** [11] - 6:16, 6:19, 21:6, 25:4, 25:5, 30:3, 31:11, 41:12, 44:10, 44:11, 48:15
**Yost** [1] - 10:8

## Z

**zero** [1] - 20:1